## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY BROKERAGE SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:20-cv-2133 |
| | ) | |
| JENNIFER TAYLOR, | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Defendant Jennifer Taylor ("Taylor"), by and through her undersigned counsel, respectfully submits this Response Brief in opposition to the Motion for Expedited Discovery (Dkt. Nos. 6-7) filed by Plaintiff, Fidelity Brokerage Services, LLC ("Fidelity" or the "Company").

## PRELIMINARY STATEMENT

Fidelity seeks emergency relief in the form of expedited discovery to support a preliminary injunction. The alleged "emergency" occurred five weeks ago, when Fidelity constructively discharged Ms. Taylor, one of the longest-tenured employees at the Company and the most successful financial advisor in its Oak Brook office.  Ms. Taylor joined a small, independent firm called Fairhaven Wealth Management, where she used nothing but *her own mind* – not "client lists" or any type of "Confidential Information" – to remember generalized knowledge about the names and telephone numbers of certain clients.  She then called those clients for the sole purpose of announcing her only career move in 25 years.  In making those calls, Ms. Taylor was careful not to "solicit" any of her clients; instead, she stuck to the same basic "call script" the Company uses with its own newly-hired advisors to call their former clients and announce their move to Fidelity.  This conduct is not actionable, let alone an "emergency" justifying extraordinary relief.

Ms. Taylor's employment agreement with Fidelity did not include a customer "no-contact" restriction, nor even a non-compete. The Company's employment agreement merely prohibits the use of Confidential Information to solicit clients for one year following her termination. General knowledge about publicly available information (names and phone numbers) does not constitute "Confidential Information," and calling former clients for the limited purpose of announcing a new job does not constitute an improper "solicitation." For example, the plaintiff-employer in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D. Ill. 2000), sought an injunction that would have prevented a financial advisor from calling his former clients to provide them with his new contact information. The court found this to be such "an extreme position" that it constituted an "indicia of bad faith on the part of Merrill Lynch." *Id.* at 619. As the court explained:

> It would be unlawful, as well as unreasonable, for Merrill Lynch to seek to prohibit [its former employee] from giving his former customers an announcement of his intent to move to other employment and notice where he could be reached should the customers wish to contact him …. otherwise customers with longstanding trust in their brokers with immediate need of advice would not be able to contact them.

(*Id.*).

That same rationale is particularly apt in this case. Not only are the financial markets in turmoil due to the global "COVID-19" pandemic, but Fidelity has *refused to provide* Ms. Taylor's contact information to the customers who have called looking for her (even though FINRA regulations and Fidelity's own compliance guidelines require the Company to provide that information).

Moreover, even if Ms. Taylor's conduct was actionable (and it is not), it poses no threat. Fidelity serves as the "qualified custodian" for her new employer, Fairhaven Wealth Management, LLC ("Fairhaven") – a small independent registered investment adviser ("RIA"). Consequently, any clients that follow Ms. Taylor to Fairhaven continue to maintain their accounts at Fidelity.

Fidelity has not lost a single account, nor a single dollar in assets under management, as a result of Ms. Taylor's move to Fairhaven.

In the Seventh Circuit, courts allow expedited discovery only when it is reasonable, considering all surrounding circumstances. Courts examine five factors, none of which support expedited discovery in this case. *First*, Fidelity's decision to seek a preliminary injunction instead of a temporary restraining order is nothing more than procedural gamesmanship designed to circumvent FINRA's discovery restrictions. *Second*, Fidelity has failed to establish that its requested discovery is reasonable; on the contrary, its document requests are facially overbroad, it failed to attach the subpoena it seeks to issue, and it seeks deposition testimony – a discovery device that is both logistically impractical given the current circumstances, and procedurally unavailable under FINRA rules. *Third*, Fidelity has failed to establish any legitimate need for expedited discovery; this is simply a fishing expedition designed to determine whether Fidelity has a viable claim before heading into a "Rule 13804" injunction hearing before a FINRA panel. *Fourth*, the burden of complying with expedited discovery is far greater than normal due to the COVID-19 pandemic. And, *fifth*, Fidelity requested expedited discovery as far in advance of typical discovery as possible: on the same date it filed this action. For all of these reasons, expedited discovery is plainly unreasonable and Fidelity is not entitled to such extraordinary relief.

## LEGAL STANDARD

"Expedited discovery is not the norm." *O'Connor,* 194 F.R.D. at 623 (denying motion for expedited discovery under similar circumstances). "Courts must … protect defendants from unfair expedited discovery." *Id.* Accordingly, "it is implicit that some showing of good cause should be made to justify" expedited discovery. 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE, § 2046.1 (3d ed. 1998).

"[W]here a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request … on the entirety of the record to date and the ***reasonableness*** of the request in light of all of the surrounding circumstances…." *O'Connor*, 194 F.R.D. at 624 (emphasis in original). The factors courts consider include: "'(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011), quoting *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010) (denying expedited discovery).

## BACKGROUND FACTS

Ms. Taylor is an investment consultant who joined Fidelity in 1994, when she was still in college. After more than 23 years with the firm, she suddenly found herself in an adverse and hostile relationship with a new branch manager. She received a number of verbal and written warnings for poor performance, even though she was the highest-revenue producer in her office and among the top 10% of producers for the entire region. The relationship became so antagonistic, that when her branch manager placed her on a "final warning" and told her she could be fired at any time, Ms. Taylor had no choice but to seek alternate employment.

On March 6, 2020, Ms. Taylor resigned from Fidelity to begin a new job with Fairhaven. Upon her departure, Ms. Taylor returned all Company property and "Confidential Information" (as defined in her employment agreement) to Fidelity. Prior to her arrival at Fairhaven, Ms. Taylor never informed a single client or co-worker that she was leaving the Company, or that she would be joining Fairhaven.

Once at Fairhaven, Ms. Taylor received calls from several former clients who informed her that Fidelity had refused to provide them with her new contact information when they asked for it. This violated both Fidelity's internal compliance procedures and FINRA Regulatory Notice 19-10.[1]  Moreover, it posed a significant risk to Ms. Taylor's professional reputation and to the economic welfare of the clients to whom she owed fiduciary duties (especially considering the need for those clients to speak to their trusted financial advisor during the current economic crisis).[2]

After her employment at Fairhaven had begun, Ms. Taylor called some of her clients to announce that she was no longer employed with Fidelity, and to provide them with her new contact information.  In making these calls, Ms. Taylor did not utilize or disclose any documents, materials or "Confidential Information" from Fidelity.  On the contrary, because she regularly speaks with her clients (especially long-term clients and those with larger or highly-active accounts), she possesses a general knowledge of their names and telephone numbers.[3]

Moreover, Ms. Taylor was extremely careful during these phone calls to avoid any "solicitation" or "inducement" of her clients.  She stuck to a short and carefully worded "announcement script" that conveyed *only* the following limited information: (a) as of March 6th, she was no longer with Fidelity; and (b) she now works at Fairhaven.  After providing that

---

[1] *See* https://www.finra.org/rules-guidance/notices/19-10.

[2] "[T]he relationship between broker and client is, in many cases at least, personal and, particularly in a time of uncertain markets, they may be harmed, or feel that they will be harmed, by being deprived of that relationship."  *O'Connor*, 194 F.R.D. at 619 (internal quotations omitted).

[3] Plaintiff falsely accuses Ms. Taylor of "pre-soliciting" clients for Fairhaven when she was still employed with Fidelity.  Fidelity has its facts wrong.  Ms. Taylor ***never*** scheduled a single Fairhaven appointment when she was employed with Fidelity; indeed, Ms. Taylor never told anyone she was planning to leave the Company.  Several months ago – before she had even started looking for alternate employment – Ms. Taylor scheduled some client meetings to occur ***at Fidelity*** (not Fairhaven) in March and April of this year.  After tracking Ms. Taylor down at her new firm, a couple of those clients asked if they could meet with her at Fairhaven on the same date that they were previously scheduled to meet at Fidelity.  The only "support" for Fidelity's baseless accusations is hearsay (and hearsay devoid of any detail) included in the declaration of Scott Marshall, the branch manager who constructively discharged her. (*See* Dkt. No. 5-1).

information, Ms. Taylor answered any follow-up questions. This is the same "announcement" process that newly-hired financial advisors at Fidelity use to provide their updated (Fidelity) contact information to their former clients.

Ultimately, twelve (12) of Ms. Taylor's clients – representing just 2.4% of her book of business – followed her to Fairhaven. Importantly, these clients followed her to Fairhaven by way of their own, unilateral requests; they were not solicited by Ms. Taylor, or by anyone acting on her behalf. Perhaps more importantly, Fairhaven uses Fidelity as its qualified custodian.[4] Accordingly, the clients that followed Ms. Taylor to Fairhaven *still maintain their accounts at Fidelity*; the accounts have simply moved to a different column on Fidelity's balance sheet (i.e., from Fidelity's "retail brokerage" channel to its "institutional investor" channel). Fidelity has not lost a single client account, nor a single dollar of assets under management.

## PROCEDURAL HISTORY

On April 3, 2020, Fidelity filed its Statement of Claim against Taylor before FINRA, asserting causes of action for breach of contract, misappropriation of trade secrets under federal and state law, unfair competition, breach of loyalty, tortious interference, and unjust enrichment. Regardless of the legal theory, each of Fidelity's claims is based on the (false) accusation that Ms. Taylor absconded with "Confidential Information" or "client lists" from Fidelity, which she is now using to solicit her former clients.

Fidelity filed this parallel action for immediate injunctive relief, pending a "Rule 13804" preliminary injunction hearing before a FINRA arbitration panel. On April 3, 2020, Fidelity filed

---

[4] The U.S. Securities and Exchange Commission requires RIA's like Fairhaven to use a "qualified custodian" like a bank or a registered broker-dealer to hold client assets. Thus, for example, Fairhaven does not (and cannot) hold any client accounts or assets; rather, the clients have accounts at broker-dealers (such as Fidelity), and the advisor at Fairhaven is given discretionary authority by the client to manage that account on their behalf.

its Complaint (Dkt. 1), Motion for Preliminary Injunction (Dkt. 4-5), and Motion for Expedited Discovery (Dkt. 6-7).[5]  Fidelity filed the Motion for Preliminary Injunction and Motion for Expedited Discovery as "emergency motions" in Case No. 20-cv-01792, per the Court's Second Amended General Order 20-0012.[6]

Fidelity served Ms. Taylor with a copy of its motion papers on April 8, 2020; the next day, the Court ordered Ms. Taylor to respond to the Motion for Expedited Discovery by April 13, 2020, and ordered the parties to file a joint status report proposing a briefing schedule for the preliminary injunction motion.  (Dkt. No. 14).

## ARGUMENT

Expedited discovery is patently unreasonable under the circumstances of this case.  Ms. Taylor's conduct – calling former clients simply to announce her career move – is not actionable and does not pose any threat.  None of the elements required for expedited discovery are met.

## I.  FIDELITY'S "PRELIMINARY INJUNCTION" MOTION IS THE PRODUCT OF BAD-FAITH PROCEDURAL GAMESMANSHIP

The first "reasonableness" factor is whether a preliminary judgment motion is pending. *Ibarra*, 816 F. Supp. 2d at 554.  In this case, Fidelity's preliminary injunction motion is the product of bad-faith procedural gamesmanship, designed to circumvent FINRA's limitations on discovery.

---

[5] Motions for expedited discovery fall under Rule 26(d)(1).  Local Rule 37.2 provides that "this court shall hereafter ***refuse to hear*** any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's."  LR37.2 (emphasis added).  Because the Motion for Expedited discovery includes no such statement, it does not comply with Local Rule 37.2, and can be stricken on that ground alone.

[6] There is no emergency.  Under Local Rule 77.2, an "emergency matter" is one in which delay would cause "serious and irreparable harm."  Here, even if Ms. Taylor were improperly soliciting Fidelity's clients (and she is not), no harm – let alone "serious" ***and*** "irreparable" harm – is threatened.  Again, the assets of all clients that move to Fairhaven *stay with Fidelity.*

Fidelity is a member of FINRA and Taylor was registered with FINRA during her employment with Fidelity; consequently, this dispute must be submitted to binding arbitration before a FINRA arbitration panel.  (Dkt. No. 1 at ¶ 12; *see also*, FINRA Rule 13200).  On April 3, 2020 – nearly a month after Ms. Taylor had left the Company – Fidelity filed its Statement of Claim before FINRA.  Ordinarily, the parties' first hearing before an arbitration panel would occur several months from now.[7]

### A.  FINRA Rule 13804(b) "Preliminary Injunction Hearing" Mechanism

In cases where a party seeks injunctive relief, FINRA Rule 13804 provides a mechanism for the parties to proceed with an expedited preliminary injunction hearing before the arbitration panel, prior to a full merits hearing on damages and other relief.  That rule allows a party to seek a "temporary injunction" in court; and if the court grants the temporary injunction, the arbitration panel will schedule a "Rule 13804(b)" preliminary injunction hearing within 15 days.  The sole purpose of the Rule 13804(b) hearing is to determine whether the court's temporary injunction should remain in effect through the remainder of the arbitration, until there is a full hearing on the merits as to damages and other relief.  Once the Rule 13804(b) hearing is complete, the Panel will schedule a date for the full hearing on the merits, as set forth in Rule 13804(c).  More specifically, FINRA Rule 13804 reads in relevant part:

> **Rule 13804.   Temporary Injunctive Orders; Requests for Permanent Injunctive Relief**
>
> **(a) Temporary Injunctive Orders**
>
> > (1) In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction.
>
> > \*       \*       \*

---

[7] *See,* FINRA Rule 13303 (Respondent's Answer due 45 days from date of service); Rule 13403(c)(1) (arbitrator selection lists generated 30 days following deadline to file Answer); Rule 13404(d) (parties' arbitrator selection rankings due within 20 days after receipt of arbitrator lists); Rule 13500(b) (after panel appointed, Initial Pre-Hearing Conference scheduled upon 20 days' notice).

**(b) Hearing on Request for Permanent Injunctive Relief**

    (1) Scheduling of Hearing.

    If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order….

            \*      \*      \*

**(c) Hearing on Damages or Other Relief**

    (1) Upon completion of the hearing on the request for permanent relief, the panel may, if necessary, set a date for any subsequent hearing on damages or other relief, which shall be held before the same panel and which shall include, but not be limited to, the same record.

Regardless of which side prevails at the Rule 13804(b) hearing – i.e., whether the Court's temporary injunction is extended, or allowed to expire – the Panel will schedule a "subsequent hearing on damages or other relief," which is "not be limited to" the same evidentiary record. (FINRA Rule 13804(c)(1)). While it refers to a "permanent" injunction, the Rule 13804(b) hearing is FINRA's procedural equivalent of a preliminary injunction hearing, after which the panel will schedule a full merits hearing based on evidence developed through FINRA's discovery process.

      **B.  <u>FINRA Does Not Allow the Discovery Plaintiff Seeks</u>**

Importantly, FINRA allows for very limited discovery. ***Prior to a Rule 13804(b) hearing, FINRA allows no discovery whatsoever***. *See*, FINRA Rule 13506(b) (discovery may not be issued until 45 days after Statement of Claim has been served). The FINRA arbitration panel is meant to decide the Rule 13804(b) hearing based *solely* on the allegations in the Statement of Claim and the testimony developed during the hearing itself – *not* with the benefit of any pre-hearing discovery. Similarly, during the normal course of an arbitration (*i.e.*, prior to the merits hearing), the parties: (a) are not allowed to engage in "fact finding," and (b) are ***prohibited from taking depositions,*** absent "extraordinary circumstances." (*See*, FINRA Rules 13506, 13510). More specifically, the FINRA discovery rules provide:

> **Rule 13506.   Discovery Requests**
>
> **(a) Requests for Documents or Information**
>
> Parties may request documents or information from any party by serving a written request on the party. Requests for information are generally limited to identification of individuals, entities, and time periods related to the dispute; ***such requests should*** be reasonable in number and ***not require narrative answers or fact finding.*** Standard interrogatories are generally not permitted in arbitration.

> **Rule 13510.   Depositions**
>
> Depositions are strongly discouraged in arbitration. Upon motion of a party, the panel may permit depositions, but ***only under very limited circumstances***, including:
>
> - To preserve the testimony of ill or dying witnesses;
>
> - To accommodate essential witnesses who are unable or unwilling to travel long distances for a hearing and may not otherwise be required to participate in the hearing;
>
> - To expedite large or complex cases;
>
> - In cases involving claims of statutory employment discrimination, if necessary and consistent with the expedited nature of arbitration; and
>
> - If the panel determines that extraordinary circumstances exist.

(FINRA Rules 13506(a) & 13510) (emphasis added).

Here, Fidelity is seeking to circumvent FINRA's discovery restrictions under the guise that such discovery is needed to "prepare" for a preliminary injunction hearing.  Ordinarily, when a plaintiff-employer seeks "emergency relief" to enforce a post-employment restrictive covenant, the plaintiff files a motion for temporary restraining order, which would be decided without discovery.  If the emergency temporary injunctive relief ("TRO") were granted, the parties would conduct a Rule 13804(b) injunction hearing before a FINRA panel within fifteen days.  If the request for a TRO were denied, then the parties would proceed to arbitrate their claims under FINRA's typical arbitration procedures.  Regardless of the ruling on the TRO, however, the parties would not be entitled to the type of discovery that Fidelity seeks.

In this case, Fidelity chose not to seek a TRO, but instead moved for a preliminary injunction.[8] This was a procedural maneuver designed to increase the likelihood that this Court would allow discovery before the matter is moved to arbitration. Fidelity hopes to proceed with a Rule 13804(b) injunction hearing with the benefit of much greater discovery than the FINRA Rules contemplate, thereby placing Taylor at a disadvantage to which she did not contractually agree.

The plaintiff-employer in *Merrill Lynch v. O'Connor* attempted a similar gambit:

> Given that empanelment of a National Association of Securities Dealers arbitration panel is imminent, and the fact that interrogatories and depositions are not permitted in such arbitration proceedings, expedited discovery is all the more inappropriate on this record, because it appears that Merrill Lynch is attempting the proverbial "end-run" around the arbitration process to which it is contractually bound.

194 F.R.D. at 623.[9]

The court considered the tactic to be in "bad faith," and, thus, denied the expedited discovery request. *Id.* ("Merrill Lynch … seeks expedited discovery, and a preliminary injunction hearing ***before*** the empaneling of an NASD arbitration panel. …[I]ts pursuit in this regard is further *indicia* of bad faith.") (emphasis added). Fidelity has engaged in the same bad-faith tactic, and it should fare no better than Merrill Lynch. The Court should prohibit Fidelity from making an "end-run" around FINRA's limited discovery rules.

## II. THE PROPOSED DISCOVERY REQUESTS ARE OVERBROAD

The second "reasonableness" factor is whether the discovery is overbroad. *Ibarra*, 816 F. Supp. 2d at 554. Far from establishing the reasonableness of its proposed discovery, Fidelity:

---

[8] Fidelity asserts that it moved for a preliminary injunction instead of a TRO to accommodate the COVID-19 pandemic. (Dkt. No. 5 at p. 2). This is mere pretext. If Fidelity were truly interested in streamlining this litigation and limiting the burdens (and risk of person-to-person contact) on the Court and the parties, then Fidelity would have filed for a TRO without seeking any discovery.

[9] The National Association of Securities Dealers, Inc. ("NASD") was a predecessor to FINRA. In 2007, the NASD and the regulation, enforcement and arbitration functions of the New York Stock Exchange ("NYSE") were consolidated into "FINRA," the Financial Industry Regulatory Authority.

(a) seeks to issue requests for production that are facially overbroad; (b) seeks to issue a document subpoena it does not attach; and (c) seeks a deposition with no ground rules, and to which it would not be entitled under FINRA rules.

### A.  Fidelity's Document Requests are Overbroad

Fidelity attaches to its motion the Requests for Production that it proposes to serve upon Ms. Taylor.  (Dkt. No. 7 at p. 8).  These requests are overbroad to the point of harassment.

**Request No. 1:**  This request seeks communications between Ms. Taylor and Fidelity customers.  As explained above, Fairhaven uses Fidelity as its "qualified custodian," and therefore Fairhaven's clients are also Fidelity customers.  This discovery request would, therefore, capture essentially all of Ms. Taylor's communications with or about Fairhaven clients, regardless of whether she worked with them (or even knew of their existence) when she was at Fidelity. Also, the request is overbroad because it is not limited to communications that might be viewed as a "solicitation."

**Request Nos. 2 - 4:**  These requests seek documents containing the names of Fidelity customers, and documents concerning the use or disclosure of that information.  These requests are overbroad for the same reason as Request No. 1.  Moreover, it is irrelevant whether Taylor is in possession of customer names, unless she obtained those names from a "client list" or document that she improperly took from Fidelity.  But Ms. Taylor returned all Confidential Information to Fidelity upon her departure.  There is nothing actionable (and, thus, nothing relevant) about Taylor having remembered her clients' names or accessing publicly-available information about them. *See, e.g., Capstone Fin. Advisors, Inc. v. Plywaczynski*, 46 N.E. 3d 419, 420-21 (Ill. App. 2d Dist. 2015) (upholding denial of TRO for failure to show likelihood of success on merits where

defendant reached out to former clients based on contact information that he "'retained, partially in [his] head, and partially from handwritten notes'").

**Request No. 5:** This request is overbroad because Fairhaven's hiring of Taylor and the terms of her employment with Fairhaven are irrelevant to any issue in this case. In *Merrill Lynch v. O'Connor*, as here, the plaintiff sought information concerning the defendant's hiring at another brokerage firm. The Court called this request "pure harassment" because the new employer was "not a party to the lawsuit" and "no issue or potential issue in the case could possibly center or focus on [the new employer's] hiring of the defendant." 194 F.R.D. at 621. The Court continued, "Even if [the defendant] received an increase in salary due to the number of individuals he soundly expects to follow him from Merrill Lynch to [the new employer], such evidence would not be probative of whether or not he had unlawfully solicited Merrill Lynch's clients. That some clients will follow him to his new employment is to be expected...." *Id*. at 622. That same logic applies in this case.

In sum, Fidelity's proposed document requests are either overbroad or seek documents that do not exist. Fidelity does not need this discovery, let alone on an expedited basis.

**B.** **Fidelity does not attach its subpoena to Fairhaven, nor does it propose any limits on deposition testimony**

Fidelity is seeking extraordinary relief. To obtain that relief, it bears the burden of establishing that the discovery it seeks is not overbroad. *Ibarra*, 816 F. Supp. 2d at 554. Yet, Fidelity did not bother to provide Ms. Taylor or the Court with a copy the document subpoena it wishes to serve upon Fairhaven, a non-party. We are left to guess exactly what documents Fidelity seeks, how burdensome compliance might be, and whether the documents are even relevant.

Similarly, Fidelity has not explained how the deposition testimony it seeks will remain narrowly tailored to the issues before the Court on the preliminary injunction motion. Fidelity has

provided no list of topics, and has proposed no ground rules or other limitations on the scope or breadth of its proposed oral discovery. Moreover, *any* deposition is overbroad given that Fidelity is attempting an "end-run" around FINRA's discovery rules, which generally prohibit depositions. *See*, FINRA Rule 13510 (depositions permitted "only under very limited circumstances," that do not exist here). Fidelity has not filed any motion with the FINRA panel to permit depositions, and there has been no "Rule 13510 Order" granting such a request. The Court should not allow Fidelity to expand the universe of discovery beyond that which is permitted under FINRA arbitration rules.

### III. FIDELITY HAS NOT ESTABLISHED ANY NEED FOR EXPEDITED DISCOVERY

The third "reasonableness" factor is "the purpose of the expedited discovery." *Ibarra*, 816 F. Supp. 2d at 554. Fidelity has not established any need for the expedited discovery. Fidelity implies that the purpose of the expedited discovery is to avoid the need for the Court to hold a preliminary injunction hearing. Fidelity asserts:

> facts developed through expedited discovery will likely provide more than sufficient evidence to allow the Court to decide the motion for preliminary injunction on the papers based on written submissions of fact and law and testimonial evidence (via deposition transcript excerpts) developed by counsel during the remotely conducted expedited discovery.

(Dkt. No. 7 at p. 2).

But if Fidelity wanted to avoid a preliminary injunction hearing, and if there was any need for "emergency" relief, the Company would have filed for a TRO. As it stands, an evidentiary hearing almost certainly will be required for any preliminary injunction. *See, e.g., Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002) ("An evidentiary hearing is required if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction."). As noted above, that evidentiary hearing is the Rule 13804(b) hearing before the FINRA panel.

14

Fidelity also contends that "[w]ithout expedited discovery, Fidelity will be unable to determine the full scope and nature of injunctive relief necessary to protect its contractual and trade secret rights." (Dkt. No. 7 at p. 5). Yet, Fidelity has already moved for a preliminary injunction and submitted a proposed order specifying the scope of the relief it seeks. (Dkt. No. 5-2). Accordingly, either Fidelity is being disingenuous here, or the Company is seeking relief to which it is not entitled.

In addition, Fidelity claims it seeks expedited discovery "to develop a full record of the nature and extent of the misappropriation, misuse and breaches that are present in this case." (Dkt. No. 7 at p. 3). As an initial matter, this does not speak to why Fidelity needs the discovery on an "expedited" basis. More importantly, the reason Fidelity seeks this discovery is to determine *whether it has a viable claim at all.* Indeed, Fidelity admits that it filed this action without knowing any of the particulars underlying its claim:

> only Taylor knows exactly what Fidelity customer information she has in her possession, who she has disclosed it to, and how she has used that information to divert Fidelity business, including which clients Taylor has solicited, what she said to them, how many times she solicited them, and who at Fairhaven is acting in concert or participation with her.
>
> (*Id.*).

Fidelity concedes this lawsuit is speculative, based on nothing more than mere suspicion and conjecture: "Taylor's conduct strongly **suggests** that she has violated … her contractual and other legal duties to Fidelity…." (Dkt. No. 7 at p. 2) (emphasis added). Fidelity concedes that it has no idea whether Ms. Taylor:

- possesses any Fidelity "Confidential Information" (she doesn't);

- has disclosed any such "Confidential Information" (she hasn't); or

- has solicited any Fidelity clients (she hasn't).

15

This is information Fidelity should have verified in the weeks ***before*** filing this lawsuit. FED. R. CIV. P. 11. The Court should not allow Fidelity to embark upon a fishing expedition to determine whether it has a viable claim, much less allow Fidelity to do so on an expedited basis.

Fidelity also argues that courts "consistently" allow expedited discovery in similar cases. (Dkt. 7 at 4). Yet, Fidelity is forced to rely on an unreported case from Florida in which the parties ***jointly stipulated*** to expedited discovery. *Thyssenkrupp Elevator Corp. v. Hubbard*, No. 2:13-CV-202-FTM-29, 2013 WL 1953346, at *1 (M.D. Fla. May 10, 2013). Fidelity also cites an unreported "computer hacking" case, and one that is particularly irrelevant – unlike here, there did not appear to be any dispute whether the conduct occurred, only a question as to its scope. *Steel Warehouse Co., LLC v. Luying Yang*, 2011 U.S. Dist. LEXIS 23445 (S.D. Ill. Mar. 8, 2011). And, although the third case Fidelity cites does concern restrictive covenants, it does not include sufficient facts to understand why expedited discovery was necessary. *Hospitality Staffing Solutions, LLC v. Reyes*, 736 F. Supp. 2d 192 (D.D.C. 2010).

In any event, all three decisions are inapposite because they do not involve expedited discovery prior to a pending arbitration action – let alone an arbitration pending in a forum (like FINRA) that does not permit the type of discovery being sought.

## IV. EXPEDITED DISCOVERY WILL IMPOSE A GREAT BURDEN

The fourth "reasonableness" factor is the burden of expedited discovery. *Ibarra*, 816 F. Supp. 2d at 554. Engaging in expedited discovery will impose an even greater burden than usual.

Depending on the scope of discovery the Court allows, Ms. Taylor may need to bring her computer to an e-discovery vendor to collect the responsive documents and prepare them for production. Similarly, Fidelity may need to employ the services of an e-discovery vendor to conduct search terms of its computer systems. This would likely require the parties (certainly Ms.

16

Taylor, and perhaps representatives of Fidelity) to leave their residences in the face of Illinois's shelter-in-place order, potentially exposing them to COVID-19. In addition, if the Court were to allow expedited depositions, counsel may have to prepare Ms. Taylor without the benefit of in-person preparation – admittedly, a lesser burden, but nonetheless a legitimate one, especially given the fact that Ms. Taylor has never been deposed.

As to third-party discovery, it would be patently unreasonable to force a small business like Fairhaven to comply with a document subpoena on an expedited basis in current conditions. Because Fidelity did not provide Ms. Taylor with the proposed subpoena to Fairhaven, we do not know what discovery the Company may seek from Fairhaven. It would not be surprising, however, if the document subpoena would require Fairhaven to retain the services of an e-discovery vendor to physically inspect and access its computer systems. This would risk infecting any Fairhaven employee required to work with the e-discovery vendor, as well as the e-discovery vendor.

Finally, any discovery dispute would further strain the limited resources of the Court.

## V. FIDELITY REQUESTED EXPEDITED DISCOVERY ON THE DAY IT FILED THIS ACTION

The fifth "reasonableness" factor is how far in advance of the typical discovery process the expedited discovery request was made. *Ibarra*, 816 F. Supp. 2d at 554. The earlier in the litigation process – and the farther in advance of normal discovery – that expedited discovery is requested, the less likely it will be allowed. *See, e.g., Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (denying expedited discovery because, *inter alia*, the request "comes far in advance of normal discovery, as the defendants have not yet responded to the Amended Complaint.").

In this case, Fidelity has requested expedited discovery at the earliest possible moment: the same day it filed this lawsuit, before Ms. Taylor had even been served with process. (*See*, Dkt. Nos. 1, 6, 10, 13). This factor strongly mitigates against allowing expedited discovery.

## CONCLUSION

For all of these reasons, expedited discovery is unreasonable. This case will be arbitrated under FINRA's mandatory arbitration rules. Plaintiff should not be allowed to use this Court to circumvent FINRA's restrictions on discovery. The Court should not allow any discovery – let alone the "expedited" discovery that Plaintiff requests. Accordingly, Ms. Taylor respectfully requests that the Court deny Plaintiff's Motion for Expedited Discovery.


Dated: April 13, 2020                                    Respectfully submitted,

                                                         **JENNIFER TAYLOR, Defendant**

                                                         By: /s/ *Christopher S. Griesmeyer*
                                                                 One of Her Attorneys

Christopher S. Griesmeyer (# 6269851)
Zachary Mulcrone (# 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle Street, Suite 1601
Chicago, Illinois 60602
(312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

18

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2020, I electronically filed the foregoing ***Defendant's Response Brief in Opposition to Plaintiff's Motion for Expedited Discovery,*** with the Clerk of the Court via the CM/ECF System, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them including Plaintiff's counsel listed below:

Joel W. Rice
Franklin Z. Wolf
FISHER & PHILLIPS, LLP
10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
jrice@fisherphillips.com
fwolf@fisherphillips.com

/s/ Christopher S. Griesmeyer
Christopher S. Griesmeyer (# 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
Bus: (312) 428-2750
Fax: (312) 332-2781
cgriesmeyer@grglegal.com