**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, | ) ) ) |
| Plaintiff, | ) ) ) No. 20 CV 2133 |
| v. | ) ) Judge John J. Tharp, Jr. |
| JENNIFER TAYLOR, | ) ) |
| Defendant. | ) |

**ORDER**

Plaintiff's motion for limited expedited discovery [6] is granted in part. Expedited discovery will be conducted on the schedule set forth in the parties' joint status report [17]. See Statement below for details.

**STATEMENT**

In a complaint filed on April 3, 2020, plaintiff Fidelity Brokerage Services LLC claims that defendant Jennifer Taylor, who was until March 6, 2020, a vice president and financial consultant with Fidelity, is misusing Fidelity's confidential and trade secret customer information to solicit Fidelity customers to follow her to her new employer, Fairhaven Wealth Management. Taylor denies misusing Fidelity information and soliciting investment management business from her former Fidelity customers.

Both parties agree that this dispute is subject to arbitration before a FINRA (Financial Industry Regulatory Authority) Arbitration Panel. They also agree that FINRA arbitration rules permit parties to seek a "temporary injunctive order" from a court, in advance of a hearing on "permanent" injunctive relief before an arbitration panel. FINRA Rule 13804. Citing this rule, Fidelity filed a motion for a preliminary injunction along with its complaint and seeks "limited expedited discovery" in connection with that motion.

Taylor opposes Fidelity's request for discovery for several reasons. She first argues that Fidelity is operating in bad faith by seeking discovery in connection with a motion for a preliminary injunction because FINRA rules generally allow only limited discovery and do not provide for discovery at all prior to a hearing on "permanent" injunctive relief. Taylor maintains that the temporary injunctive order that Rule 13804 permits is a temporary restraining order and that the hearing on permanent injunctive relief that follows entry of a TRO is—notwithstanding its description in the Rule—akin to a preliminary injunction hearing. This matters, says Taylor, because TRO motions are typically decided without discovery whereas it is more likely that discovery would be permitted in connection with a preliminary injunction motion. By eschewing a TRO motion in favor of a preliminary injunction motion, Taylor asserts that Fidelity is trying to obtain discovery that is not authorized by the FINRA rules.

This argument is not persuasive. Not only does it contravene the seemingly clear meaning of FINRA's rules—"permanent" is not typically understood to mean preliminary or temporary—but the FINRA rules expressly define "temporary injunctive order" to include not only temporary restraining orders but also preliminary injunction orders. *See* FINRA Rule 13100(dd). Moreover, Taylor's argument ignores the import of FINRA's rule permitting parties to seek such relief in court, where discovery is not subject to FINRA's discovery limitations. Permitting parties to go to court to litigate concerning a request for temporary injunctive relief necessarily also permits those parties to employ the rules and procedures of those courts in ruling on that request. FINRA has no authority to modify the rules of procedure that govern this or any other court's evaluation of a request for temporary injunctive relief. It makes no sense to say FINRA allows parties to seek temporary injunctive relief in court while also maintaining that FINRA does not permit discovery in connection with seeking temporary injunctive relief. To permit the one is to countenance the other.

Taylor also objects that by waiting five weeks to file its complaint and seeking a preliminary injunction without first seeking a TRO, Fidelity has shown that there is no need for expedited discovery. Again, the Court finds the argument to be unpersuasive. As her brief otherwise acknowledges, expedited discovery is often permitted in connection with motions for preliminary injunctions; as a motion for temporary injunctive relief premised, in part, on a claim that irreparable harm is occurring, there is a clear temporal urgency to the need to permit some limited discovery of information central to the allegations of the complaint. That Fidelity waited five weeks to file its complaint and motion, and opted not to seek an immediate TRO, may have some relevance to its claim that Taylor's conduct is causing irreparable harm, but that is a question to consider in the context of the preliminary injunction motion. Irreparable harm is not the standard for obtaining discovery.

Taylor's argument that Fidelity does not need discovery because it should already know the information that its discovery requests seek is specious. The filing of a complaint does not require complete knowledge of the facts bearing on the nature, scope, and form of the defendant's alleged misconduct; rather, it requires nothing more than allegations made in good faith that plausibly suggest that the plaintiff has a viable claim. Taylor has not yet answered the complaint, and it remains open to her to seek to dismiss the complaint for failure to state a claim, but she has not made such an argument in opposing discovery; at this juncture, there is no reason to believe that discovery cannot yield relevant and material information bearing on Fidelity's claim (or on Taylor's defenses).

The Court also agrees with Fidelity that conducting some limited discovery will diminish the need for an evidentiary hearing on the motion. That is a particularly salient point given the ongoing burdens and restrictions imposed on litigants, attorneys, and witnesses (as well as the courts) by the COVID-19 pandemic. Discovery or no, a hearing may be necessary, but discovery may obviate the need for a hearing or streamline the evidentiary presentation required at a hearing. To that end, permitting limited expedited discovery will serve Taylor's interests as well as Fidelity's.

The parties have filed a joint status report setting forth the scope and schedule for expedited discovery should the Court permit it. The one area of disagreement noted in that regard is whether 30(b)(6) depositions of Fidelity and Fairview will be permitted. In the Court's view, the burdens

associated with those depositions outweigh their utility in the context of this case. "Limited expedited discovery" is just that. It is not intended to leave no stone unturned, but rather to provide an opportunity to develop the evidence that is most relevant and material to the dispute. In that regard, Ms. Taylor will be able to depose the two individuals central to Fidelity's claim, and Fidelity will be able to depose Ms. Taylor. Depositions of Fidelity and Fairhaven would require substantial and exhaustive document searches and reviews that are not consistent with a limited and expedited process and would not likely produce significant information that is not already known to, and available from, the individual witnesses who are central to this dispute.

Finally, the Court expects each party to cooperate in good faith in conducting this discovery. All document requests should be narrowly targeted and described to obtain information at the heart of this dispute—that is, whether Ms. Taylor has used Fidelity's information improperly to solicit her former clients at Fidelity to follow her to Fairhaven. Any disputes about the breadth and burden of discovery requests will be evaluated in that light.

Dated: May 22, 2020

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge