**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FIDELITY BROKERAGE SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-2133 |
| v. | ) | |
| | ) | |
| JENNIFER TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendant, Jennifer Taylor ("Taylor"), by and through her undersigned counsel, respectfully submits this response brief in opposition to the Motion for Leave to Amend Complaint filed by Plaintiff, Fidelity Brokerage Services, LLC ("Fidelity") (Dkt. 56).

## I.    THIS IS AN ANCILLARY INJUNCTION PROCEEDING – LIMITED IN SCOPE, AND FILED IN AID OF FINRA ARBITRATION

This is a preliminary injunction proceeding, ancillary to a pending arbitration action before the Financial Industry Regulatory Authority ("FINRA"), which Fidelity filed against Ms. Taylor – a former Fidelity employee – based on her alleged breach of a client non-solicitation agreement. As Fidelity clearly states in its Complaint, the purpose of this proceeding is to obtain "[p]reliminary injunctive relief … to preserve the *status quo* until the merits of this case can be adjudicated by FINRA." (Dkt. 1 at ¶ 13). Thus, the purpose of this action is not to determine the merits of the underlying dispute, or to consider the issue of damages; rather, the sole purpose of this proceeding is to determine whether injunctive relief is proper. (*Id.* at ¶ 11). Indeed, as Fidelity acknowledges in its Complaint, "the merits of this case will be resolved in arbitration before FINRA" – ***not*** in this proceeding. (*Id*. at ¶ 13). This ancillary proceeding is not the proper forum for Fidelity to adjudicate its purported claims against Ms. Taylor's new employer, Fairhaven Wealth Management, LLC ("Fairhaven").

More than six months after filing its Complaint and pursuing expedited discovery, Fidelity now claims it would be "in the interest of justice to permit Fidelity to amend its Complaint so that this litigation can proceed and be resolved *on the merits against both parties*…." (Dkt. 56 at 7-8) (emphasis added). However, Fidelity has repeatedly represented to Ms. Taylor – and, more importantly, to this Court – that this action is merely an ancillary injunction proceeding in aid of a pending FINRA arbitration, such that substantive claims cannot be resolved here. Fidelity, for instance, has stated, "[t]his matter has been brought for the limited purpose of seeking injunctive relief to preserve the status quo pending a *FINRA arbitration which will fully and finally address the parties' claims as to permanent injunctive relief, damages, and any counterclaims*." (Dkt. 49 at 15) (emphasis added). Fidelity even acknowledges in the proposed Amended Complaint that "Fidelity and Taylor are *obligated to arbitrate the merits of this dispute*," and they are obligated to do so "*before FINRA*." (Dkt. 56-1 at ¶¶ 12-13 (emphasis added); *see also* Dkt. 1 at ¶ 13).

Having clearly defined the narrow scope of this limited proceeding, Fidelity cannot now be allowed to suddenly expand it by amending its Complaint to pursue substantive claims against an additional party. This is not the proper forum for Fidelity to adjudicate the merits of its purported dispute against Fairhaven, any more so than it would be permissible for Fidelity to litigate the merits of its claims against Ms. Taylor outside of FINRA.

## II.   FIDELITY – AND THE COURT – HAVE NOT ALLOWED MS. TAYLOR TO PURSUE ANY SUBSTANTIVE DISCOVERY IN THIS ACTION

Fidelity should not be allowed to amend its Complaint to assert substantive claims against another party when both Fidelity and the Court have repeatedly cited the limited scope of this proceeding to restrict the discovery available to Ms. Taylor. For example, when Ms. Taylor filed a motion to compel (Dkt. 42), Fidelity argued the scope of discovery must be limited, because the scope of this proceeding is limited to its motion for preliminary injunction:

> Fidelity sought expedited discovery limited to the issues presented in Plaintiff's Motion [for Preliminary Injunction], ***as that is the only aspect of the case to be decided in this Court,*** after which the question of Fidelity's claims for permanent injunctive relief and damages will be decided by an arbitration panel at FINRA….

> (Dkt. 49 at 2) (emphasis added).

Fidelity also took the remarkable step of requiring Ms. Taylor to "pre-clear" her proposed deposition topics in advance, to ensure she did not ask any questions that would exceed "the limited scope" of this case. Indeed, Fidelity refused to allow Ms. Taylor to ask any deposition questions that could potentially be relevant to her substantive Title VII discrimination and retaliation claims:

> From your document requests it appears that Ms. Taylor intends to use the present expedited discovery process to seek information related to her threatened EEOC/discrimination claim. Fidelity does not believe those matters are appropriate for expedited discovery and would be beyond the scope of the Order issued by the Court. We would therefore object to such matters being the subject of any interrogation at the upcoming depositions. Please let us know whether Ms. Taylor intends to try to inquire into matters related to her EEO/discrimination claim at the upcoming depositions so that we can seek a ruling from the court as to the scope of appropriate questioning given the limited scope of expedited discovery in this case, which is targeted only to aid in the preliminary injunction hearing, not for all matters that are or may be part of the overall ultimate dispute(s) among these parties. Please let us know Ms. Taylor's position on this matter by the close of business on Tuesday, June 2. Thank you.

> (*See* **Exhibit A** – 06/01/2020 S. Guerette e-mail) (emphasis added).

Moreover, Fidelity used the limited scope of this proceeding to oppose Ms. Taylor's request for a Rule 30(b)(6) deposition, even though the topics were expressly limited to the pending preliminary injunction motion. As Ms. Taylor explained to the Court:

> She [Taylor] also requires testimony from a Rule 30(b)(6) corporate representative that – unlike the testimony from fact witnesses Meyers and Marshall – will be binding on Fidelity, and ***will address issues relevant to her defenses to the PI Motion,*** including inter alia: ***contract formation***, ***waiver*** and ***estoppel.***

> (Dkt. 17, PageID # 126, at ¶ 4(b)(ii)) (emphasis added).

Fidelity opposed this request on the ground that "this is limited expedited discovery in aid of a preliminary injunction hearing…." (*Id.*, at ¶ 4(a)). The Court adopted Fidelity's rationale and denied Ms. Taylor this discovery, explaining it was beyond the limited scope of this proceeding:

> The parties have filed a joint status report setting forth the scope and schedule for expedited discovery should the Court permit it. The one area of disagreement noted in that regard is whether 30(b)(6) depositions of Fidelity and Fairview will be permitted. In the Court's view, the burdens associated with those depositions outweigh their utility in the context of this case. 'Limited expedited discovery' is just that. It is not intended to leave no stone unturned, but rather to provide an opportunity to develop the evidence that is most relevant and material to the dispute….

(Dkt. 29 at pp. 2-3).

That same rationale applies to Fidelity's request to amend the Complaint in order to include Fairhaven as an additional defendant – doing so would go far beyond the limited scope of this ancillary injunction proceeding. Just as the Court denied Ms. Taylor's request for a limited Rule 30(b)(6) deposition, so too should the Court deny Fidelity's request to assert substantive claims against Fairhaven.

### III. IT IS NOT IN THE INTEREST OF JUSTICE TO EXPAND THE LIMITED SCOPE OF THIS ANCILLARY INJUNCTION PROCEEDING

Fidelity chose to limit the scope of this proceeding to its preliminary injunction motion against Ms. Taylor. From the very onset of the case, in its motion for expedited discovery, Fidelity represented to the Court that "requested discovery is narrowly-tailored to seek only evidence directly relevant to Fidelity's request for a preliminary injunction." (Dkt. 7 at 4). Yet, Fidelity now states that its proposed claims against Fairhaven in the Amended Complaint are "based on documents produced as a result of the subpoena directed to Fairhaven." (Dkt. 56 at 5). It would appear that Fidelity's representations about the limited scope of discovery may have been mere pretext, designed to allow Fidelity to embark upon a fishing expedition to identify claims against Fairhaven, while simultaneously preventing Ms. Taylor from going beyond the scope of the preliminary injunction motion. This ploy is made apparent by the fact that – five months after the Court allowed expedited discovery – Fidelity *still* has not presented its employees for deposition, yet it has made the time to move to amend the Complaint to assert claims against Fairhaven. It

would not be in the interest of justice to expand the scope of these proceedings; to the contrary, justice dictates that Fidelity should not be allowed to use third-party discovery for anything other than its stated purpose: the preliminary injunction hearing against Ms. Taylor.

If Fidelity believes that it has a viable damages claim against Fairhaven based on Ms. Taylor's conduct, it should pursue that claim in the FINRA arbitration, not here. Allowing Fidelity to litigate the merits of its claim against Fairhaven in this ancillary proceeding, parallel to the pending FINRA arbitration, would severely prejudice Ms. Taylor. Were this Court and FINRA to address the same allegations, at the same time, but in separate proceedings, that would lead to duplicative discovery, unnecessarily increased costs, the possibility of inconsistent rulings, and issues of collateral estoppel. Accordingly, it is not in the interest of justice to allow Fidelity to sue Fairhaven here; instead, Fidelity should simply amend its statement of claim in arbitration.

Similarly, justice does not require the Court to grant Fidelity leave to seek injunctive relief against Fairhaven. Regardless of whether Fairhaven is named as an additional defendant, any injunction that Fidelity obtains against Ms. Taylor would automatically enjoin Fairhaven as well. As the Federal Rules of Civil Procedure make clear, every restraining order binds not only the parties and their officers, agents, servants, employees, and attorneys, but also any "other persons who are in active concert or participation with [them]." FED. R. CIV. P. 65(d)(2)(C). Thus, Fidelity does not need to amend the Complaint in order to enjoin Ms. Taylor's employer; Fidelity would simply need to provide Fairhaven a copy of the preliminary injunction order (if any) entered in this case.

Simply put, there is no good reason to include Fairhaven as an additional defendant in this ancillary injunction proceeding. Instead, Fidelity seeks to name Fairhaven as an additional defendant for purposes that are plainly improper.

## IV.    FIDELITY SEEKS LEAVE TO AMEND FOR IMPROPER PURPOSES

Because adding Fairhaven as a defendant would serve no legitimate purpose, Fidelity must wish to do so for an improper purpose – *i.e.*, (a) for undue delay; (b) to gain improper settlement leverage by harassing Ms. Taylor's employer; and/or (c) to tortiously interfere with her current employment in retaliation for her Title VII discrimination and retaliation claims.  Either way, the Court should not countenance Fidelity's bad faith litigation tactics.

### A.  Fidelity Seeks to Delay these "Expedited" Proceedings

Fidelity filed its Complaint, preliminary injunction motion, and expedited discovery motion on April 3, 2020.  On May 22, 2020, the Court, over Ms. Taylor's objections, granted Fidelity's request for expedited discovery.  (Dkts. 17, 29, 30).  The Court allowed the parties three days to serve document requests, seven days to respond to document requests, and ten days after the completion of written discovery to take depositions.  (*Id.*).  On June 2, 2020, Ms. Taylor timely satisfied all of her discovery obligations, and produced the documents Fidelity had requested.[1]

Fidelity, however, did not respond in kind.  Indeed, Fidelity refused to produce nearly all of the documents Ms. Taylor requested:  it timely produced just ***five (5) documents***, forcing Ms. Taylor to file a motion to compel.  (Dkt. 42).  After the parties briefed the issue, the Court ordered Fidelity to produce most of the documents it was withholding, and to do so by July 2, 2020.  (Dkt. 53).  Although Fidelity produced some additional documents on July 2, 2020, its production was incomplete.  Fidelity, for instance, did not produce any calendar entries from Ms. Taylor's "Fidelity" outlook account which were dated *after* March 6, 2020 (Ms. Taylor's resignation date), even though Fidelity has accused Ms. Taylor of pre-soliciting clients by advance-scheduling meetings that she planned to conduct after her March 6, 2020 departure.  Indeed, the Supplemental

[1] Fidelity later clarified its requests, and Ms. Taylor timely supplemented her production days later, on June 5, 2020 and June 9, 2020.

Declaration of Scott Marshall that Fidelity submitted in this matter attaches several calendar entries – *never produced in discovery* – for meetings after March 6, 2020. (Dkt. 27-1 at 2, 4). On July 28, 2020, following a lengthy Rule 37.2 discovery conference, Fidelity eventually agreed to produce all calendar entries post-dating March 6, 2020. (*See* **Exhibit B**). It is now late October and Fidelity *still* has not produced those documents.

Similarly, Fidelity has continually delayed the depositions of its employees. On May 29, 2020, Ms. Taylor noticed the depositions of Fidelity's affiants, Charles Meyers and Scott Marshall, for June 9 and June 11, 2020. (**Exhibit C**). On June 1, 2020, Fidelity began its campaign of deposition delay and avoidance by demanding that Ms. Taylor "pre-clear" her intended deposition topics with Fidelity's counsel in advance, before either Mr. Meyers or Mr. Marshall would be produced. (**Exhibit D**). Fidelity's unjustified demand necessitated a series of more than a dozen e-mails between June 1, 2020 and June 8, 2020, as well as another Local Rule 37.2 discovery conference. (*Id.*; **Exhibit E**). During this back-and-forth, Ms. Taylor agreed to postpone her depositions of Messrs. Meyers and Marshall until the resolution of her pending motion to compel.

After the Court's ruling on the motion to compel, and Fidelity's supplemental (yet still incomplete) production on July 2, 2020, Fidelity *still* refused to allow the depositions of either Mr. Meyers or Mr. Marshall to proceed. Instead, Fidelity pressured Ms. Taylor's employer (Fairhaven) to require her to agree to a stipulated injunction which, in turn, prompted a settlement dialogue. After still more back-and-forth with Fidelity's counsel, Ms. Taylor's counsel finally wrote on September 11, 2020: "[i]f Fidelity is not interested in discussing settlement, then ignore the attached [proposal] and let me know when you and Messrs. Meyers and Marshall are available for depositions."[2] Fidelity refused to provide dates. Instead, Fidelity continued (and continues) to

---

[2] Because these exchanges were part of settlement communications under FED. R. EVID. 408, Ms. Taylor does not attach them here.

postpone the depositions of its employees while it pursues third-party discovery against Fairhaven. Fidelity's gambit to prevent Ms. Taylor from deposing its employees has caused "expedited discovery" in support of a preliminary injunction motion to morph into nearly six (6) months of intense third-party discovery against Fairhaven.

Fidelity's proposed amendment would only cause further delay. Ms. Taylor would be forced to spend time (and money) filing an amended answer and affirmative defenses. In addition, given that Fidelity's claims against Fairhaven are utterly baseless, Fairhaven will likely move to dismiss, causing more delay. But even if Fairhaven does not move to dismiss, it will likely seek its own discovery before any preliminary injunction hearing (and Fidelity will likely seek expanded first-party discovery). There is no reason to allow Fidelity to continue delaying these "expedited" proceedings, when it could have easily named Fairhaven in its original Complaint.

### B. Fidelity is Harassing Ms. Taylor's Employer to Force an "Agreed Injunction"

Fidelity's delay tactic is an issue because the company has been using it to improperly strongarm (some might say "extort") Ms. Taylor's employer, Fairhaven, into forcing her to resolve this ancillary proceeding by: (i) agreeing to have an injunction entered against her, and (ii) allowing Fidelity to then continue pursuing its claims against her in the FINRA arbitration. More specifically, over the past several weeks, Fidelity has repeatedly threatened Fairhaven, stating that if Ms. Taylor did not voluntarily agree to the entry of an injunction against her, then Fidelity would sue Fairhaven and drag them into this lawsuit:

> Fairhaven and Fidelity are valued business partners, and Fairhaven remains committed to being a cooperative partner going forward. However, your September 14, 2020 letter assumes the existence of documents that do not exist and makes many incorrect assumptions. Additionally, Fidelity has indicated to Fairhaven that it may drag Fairhaven into the lawsuit between Fidelity and Ms. Taylor in an effort to threaten Fairhaven into forcing Ms. Taylor into a settlement. To the extent Fidelity is bringing Fairhaven in as a party to the existing litigation, please advise us immediately.

(**Exhibit F**) (emphasis added).

When Ms. Taylor refused to accede to Fidelity's demands, Fidelity followed through on its threats and moved for leave to amend its Complaint. Even more egregiously, Fidelity has threatened to kick Fairhaven off of its investment platform if Ms. Taylor does not voluntarily agree to the entry of an injunction against her. This would be a significant blow to Fairhaven's business, and to its clients (nearly all of whom custody their assets at Fidelity). Threatening to kick Fairhaven off of Fidelity's platform based on whether Ms. Taylor agrees to a voluntary injunction is a gross breach of the fiduciary duties that Fidelity owes to the Fairhaven clients whose assets are custodied at Fidelity.

### C. Fidelity Is Tortiously Interfering with Ms. Taylor's Employment at Fairhaven in Retaliation for Her EEOC Charge

Fidelity's threats, and following through on those threats by moving to join Fairhaven in this proceeding, constitute both tortious interference with Ms. Taylor's current employment relationship, and continued Title VII post-employment retaliation against her. As Ms. Taylor explains in her Affirmative Defenses to the Complaint, her manager at Fidelity, Scott Marshall made it clear that he harbored a discriminatory animus against Ms. Taylor because of her age and gender. (Dkt. 55 at pp. 27-42). He continually harassed Ms. Taylor, and embarked upon a pretextual campaign to terminate her employment. When Ms. Taylor complained, Mr. Marshall retaliated against Ms. Taylor by giving her an extended "final warning," and letting her know that her employment would likely be terminated. On June 16, 2020, Ms. Taylor filed a formal Charge of Discrimination with the EEOC, asserting claims for sex and age discrimination, and retaliatory discharge. (**Exhibit G**).

Since then, Fidelity has continued to retaliate against Ms. Taylor by threatening and pressuring Fairhaven, in order to coerce Ms. Taylor into agreeing to a stipulated injunction. On September 11, 2020, the undersigned reminded Fidelity's counsel that threatening Fairhaven would constitute tortious interference and further Title VII retaliation. The undersigned reminded

9

Fidelity's counsel of this again on September 17, 2020, and yet again on October 6, 2020.[3]
Fidelity, however, ignored these warnings. Granting Fidelity leave to sue Fairhaven in this
proceeding would reward Fidelity for its improper coercion, tortious interference, and retaliation.

### CONCLUSION

At every turn, Fidelity has limited the scope of this proceeding, the type of discovery
available to Ms. Taylor, the topics Ms. Taylor can raise during depositions, and the parties Ms.
Taylor can depose. Fidelity should not be allowed to now expand the scope of this limited,
ancillary proceeding in order to adjudicate the merits of substantive claims against Fairhaven.
Instead, this matter should be allowed to proceed apace for its sole, limited purpose: determining
whether preliminary injunctive relief against Ms. Taylor is warranted before Fidelity's case-in-
chief proceeds, on the merits, before FINRA.

WHEREFORE, for the reasons set forth above, Defendant Jennifer Taylor respectfully asks
this Court to enter an Order:

A. Denying Plaintiff's Motion for Leave to Amend the Complaint (Dkt. 56);

B. Compelling Plaintiff to produce Charles Meyers and Scott Marshall for their
depositions at defense counsel's office, regardless of the status of Fairhaven's
compliance with Plaintiff's third-party subpoena; and

C. Awarding to Defendant any such other and further relief as this Court deems just,
including her actual costs and attorneys' fees incurred in responding to the instant
motion.

Dated: October 29, 2020                    Respectfully submitted,

                                           **JENNIFER TAYLOR, Defendant**

                                           By: /s/ *Christopher S. Griesmeyer*
                                                    One of Her Attorneys

---

[3] These communications, too, were each made in the context of discussing settlement. Accordingly, Ms.
Taylor does not attach them here, but would be happy to provide them to the Court upon request.

Christopher S. Griesmeyer (# 6269851)
Zachary Mulcrone (# 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
(312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

---

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2020, I electronically filed the foregoing **_Defendant's_**

**_Response Brief in Opposition to Plaintiff's Motion for Leave to Amend Complaint,_** with the

Clerk of the Court via the CM/ECF System, which will send notification of such filing to those

registered to receive electronic notices via email transmission, including Plaintiff's counsel listed

below:

Joel W. Rice
Franklin Z. Wolf
FISHER & PHILLIPS, LLC
10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
jrice@fisherphillips.com
fwolf@fisherphillips.com

Susan M. Guerette
FISHER & PHILLIPS, LLC
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
sguerette@fisherphillips.com


/s/ Christopher S. Griesmeyer
Christopher S. Griesmeyer (# 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Bus: (312) 428-2750
Fax: (312) 332-2781
cgriesmeyer@grglegal.com

# EXHIBIT A

## Zachary Mulcrone

| | |
|---|---|
| **From:** | Chris Griesmeyer |
| **Sent:** | Wednesday, June 3, 2020 10:03 AM |
| **To:** | Guerette, Susan |
| **Cc:** | Rice, Joel; Wolf, Franklin; Zachary Mulcrone |
| **Subject:** | RE: Taylor |

Good morning, Susan.

First, please copy my colleague, Zach Mulcrone, on all correspondence going forward.

Second, your inquiry about our potential "lines of deposition questioning" below is far more expansive than your original query, and unquestionably invades the attorney work product doctrine. Nevertheless, I <u>once again confirm</u> that we do not intend to seek deposition testimony on Ms. Taylor's employment discrimination and retaliation claims; instead, we intend to limit our depositions to those issues relevant to the claims that Plaintiff has asserted against Ms. Taylor. I believe that answers your question, and should provide you with all the assurances you require. However, if you would like to discuss the issue in a good faith attempt to resolve any differences that you believe exist, then we can schedule a Rule 37.2 conference.

Finally, please let me know your availability this afternoon (or tomorrow morning) for a telephone call to discuss Plaintiff's improper objections and insufficient document production in response to Defendant's Rule 34 Requests.

Thank you,

Chris Griesmeyer

**Please note our <u>new</u> <u>address</u>:**

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street | Suite 2300**
**Chicago, Illinois 60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



---

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Tuesday, June 2, 2020 7:12 PM
**To:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Cc:** Rice, Joel <jrice@fisherphillips.com>; Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** Taylor

Chris,

We disagree with your assertion that "none of [y]our expedited discovery requests are intended to seek information related to Ms. Taylor's employment discrimination and retaliation claims". To the contrary, document requests 3 and 5 clearly seek information about Ms. Taylor's treatment as an employee relative to other allegedly similarly situated employees – essentially comparator evidence, which are prototypical questions that relate to alleged discrimination. We

1

do not believe that these subjects are appropriately within the scope of the limited expedited discovery ordered and authorized by the Court in this case.

Can you please confirm that Ms. Taylor is not going to inquire at the upcoming expedited depositions of Fidelity's managers into (a) the topics contained in her document requests 3 and 5, (b) any other lines of questioning relating to alleged discriminatory treatment of Ms. Taylor during her employment, (c) information about other Fidelity employees or Fidelity's treatment of them, or (d) any alleged retaliation against Ms. Taylor during her employment with Fidelity? If you cannot confirm this, then we will need to move for a protective order. Thank you.


Regards,
Susan

---

**From:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Sent:** Tuesday, June 2, 2020 4:35 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Rice, Joel <jrice@fisherphillips.com>; Wolf, Franklin <fwolf@fisherphillips.com>; Zachary Mulcrone <zmulcrone@grglegal.com>; April Bernath <abernath@grglegal.com>
**Subject:** RE: Taylor

Hi, Susan.

First, regarding written discovery, below is a link to Defendant's Rule 34 Responses and accompanying document production. Many of the documents have been designated "Confidential" under the parties' soon-to-be-entered Stipulated Confidentiality Order (as a reminder, we're still waiting to receive your counter-signed copy, and for your office to submit the Stipulated Order for entry by the Court). Accordingly, the link is password-protected, and I will forward the password under separate cover:

https://www.dropbox.com/sh/2hqedqvzwubpipw/AABqkmIFIemIKmQ1ruVbklLva?dl=0

Second, regarding your below inquiry concerning Defendant's anticipated deposition topics, please note that, consistent with Judge Tharp's ruling on your motion for expedited discovery (Dkt. No. 29), we have not issued a Rule 30(b)(6) deposition notice to Plaintiff (and, you have made it clear that neither Mr. Meyers nor Mr. Marshall are being produced in their capacity as a Rule 30(b)(6) corporate representative of Fidelity). Accordingly, Defendant is under no obligation to "describe with reasonable particularity the matters for examination," and there is no basis for you to ask us to divulge our anticipated deposition topics. That said, I can assure you that: (a) none of our expedited discovery requests are intended to seek information related to Ms. Taylor's employment discrimination and retaliation claims, and (b) we are not intending to pursue discovery on those claims at this time. Fidelity's treatment of Ms. Taylor relative to other departing financial advisors is, however, relevant to her challenge of Plaintiff's assertions regarding (*inter alia*) irreparable harm, a likelihood of success on the merits, the existence of a protectable right, and a balancing of the equities.

If you have any questions, or would like to further discuss this issue, please let me know and we can schedule a Rule 37.2 conference.

Regards,

Chris Griesmeyer


**Please note our new address:**

Christopher S. Griesmeyer

GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street | Suite 2300**
**Chicago, Illinois 60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



---

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Monday, June 1, 2020 12:51 PM
**To:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Cc:** Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** Taylor

Chris,

From your document requests it appears that Ms. Taylor intends to use the present expedited discovery process to seek information related to her threatened EEOC/discrimination claim. Fidelity does not believe those matters are appropriate for expedited discovery and would be beyond the scope of the Order issued by the Court. We would therefore object to such matters being the subject of any interrogation at the upcoming depositions. Please let us know whether Ms. Taylor intends to try to inquire into matters related to her EEO/discrimination claim at the upcoming depositions so that we can seek a ruling from the court as to the scope of appropriate questioning given the limited scope of expedited discovery in this case, which is targeted only to aid in the preliminary injunction hearing, not for all matters that are or may be part of the overall ultimate dispute(s) among these parties. Please let us know Ms. Taylor's position on this matter by the close of business on Tuesday, June 2. Thank you.

Regards,
Susan

**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website | *On the Front Lines of Workplace Law℠*

---

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

# EXHIBIT B

## Zachary Mulcrone

| | |
|---|---|
| **From:** | Guerette, Susan <sguerette@fisherphillips.com> |
| **Sent:** | Tuesday, July 28, 2020 10:27 AM |
| **To:** | Zachary Mulcrone |
| **Cc:** | Chris Griesmeyer; Guerette, Susan |
| **Subject:** | RE: Fidelity Brokerage Services LLC v. Taylor |

Zach,

I have consulted with Fidelity and responses are below.  Let me know if you have any questions.

Regards,

Susan


1. As to Ms. Taylor's calendar entries, we disagreed as to the meaning and scope of the Court's order. You agreed to ask Fidelity whether it is willing to expand its production to include all of Ms. Taylor's calendar entries with "Start Dates" on or after March 6, 2020.

  Yes, we disagreed as to whether the court order covered calendar entries that were to have occurred (to start and end) during the time period ordered.  You have requested that Fidelity also produce calendar entries that Ms. Taylor created to occur after her departure day of March 6, 2020.  While Fidelity does not agree that this is what was ordered, Fidelity is willing to search the calendar entries already pulled, which were either created or set to occur during the time period ordered, and produced any calendar entries with a "Start Date" after March 6, 2020.


2. You agreed to inquire as to why certain calendar entries have "Date Created" and "Date Modified" fields post-dating March 6, 2020, when Ms. Taylor no longer had access to her calendar. As you requested, the document Bates numbered FID_TAYLOR000573 is an example of a "Date Modified" field post-dating March 6, 2020, and the document Bates numbered FID_TAYLOR000672 is an example of a "Date Created" field post-dating March 6, 2020.

  The "Date Modified" and "Date Created" dates can both be modified automatically by the system when Microsoft archives or re-indexes a calendar item, such as when Microsoft moves the item to a preservation hold folder in connection with a litigation hold.  This is part of Microsoft's storage process, and is not a result of a manual change by an individual.


3. As to Request No. 5, we disagreed as to the meaning and scope of the Court's order. With respect to the comparative performance spreadsheet Fidelity produced, I explained that the information in the spreadsheet is very unlikely to be the raw data. You agreed to ask Fidelity whether it is willing to produce the raw information it used to create the spreadsheet, and whether it is willing to expand the produced information to include Financial Consultants (as opposed to including only Vice President Financial Consultants). You also said that you would ask Fidelity whether it would be willing to produce documents showing Ms. Taylor's compensation compared to other FCs and VPFCs in the Oak Brook office. You indicated, however, that Fidelity would not be willing to produce documents showing Ms. Taylor's comparative performance on a cumulative basis for the entire period of Scott Marshall's tenure (as opposed to the monthly performance metrics Fidelity produced).

  Fidelity stands on its objections as I outlined in my July 15, 2020 letter.  We have produced responsive documents as directed in the Court's Order and are unwilling to produce more than required.  Further, there is no relevance to the additional documents you are seeking as Ms. Taylor was not a Financial Consultant, she was in a higher

role as a Vice President Financial Consultant, therefore information comparing her to employees in other positions would not be relevant and is not how she would have been compared in the Dashboard – where VPFC's are compared against VPFC's, and FC's are compared against FC's. That is in addition to our belief that none of the information sought on this topic is relevant to whether Taylor solicited customers.

Fidelity is also not willing to produce the compensation amounts paid to every other Financial Consultant and VP Financial Consultant in the Oak Brook office. Not only is that highly confidential, but it is completely irrelevant to whether Taylor solicited Fidelity customers. The Court's directive was limited to the documents in paragraph 5 of Taylor's Motion and we have produced those.

Finally, Fidelity is unwilling to produce additional information regarding the spreadsheet. It has already gone above and beyond by providing information when the documents directed were no longer available. It is not willing to provide detailed performance information broken down by each employee in the Oakbrook office. Fidelity has provided the information about other employees so that Taylor is able to see the average performance in the office and region for each category over time. That enables her to determine, and make an argument, that she was better or worse than the average to the extent that is relevant. Fidelity does not see any basis to provide detailed information regarding the specific performance of every other employee, and it does not believe that it has been directed to do so by the court.

Accordingly, Fidelity declines to produce more than has been ordered.


4. You are checking whether Fidelity's production ends at FID_TAYLOR014005.

Yes, that is the last document that has been produced.





**Susan M. Guerette**

**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*


**From:** Zachary Mulcrone <zmulcrone@grglegal.com>
**Sent:** Monday, July 27, 2020 3:34 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Subject:** RE: Fidelity Brokerage Services LLC v. Taylor

Susan,

During our call last Monday, you said that you expected to hear back from your client within a couple of days. When can we expect a response?

On a related note, we understand that Fairhaven produced some documents directly to Fidelity (*i.e.*, not through the Polsinelli firm) several weeks ago. Please provide us with copies of those documents.

Thanks,
Zach

---

**From:** Zachary Mulcrone
**Sent:** Monday, July 20, 2020 3:56 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Subject:** RE: Fidelity Brokerage Services LLC v. Taylor

Susan,

This will confirm today's discussion.

1. As to Ms. Taylor's calendar entries, we disagreed as to the meaning and scope of the Court's order. You agreed to ask Fidelity whether it is willing to expand its production to include all of Ms. Taylor's calendar entries with "Start Dates" on or after March 6, 2020.

2. You agreed to inquire as to why certain calendar entries have "Date Created" and "Date Modified" fields post-dating March 6, 2020, when Ms. Taylor no longer had access to her calendar. As you requested, the document Bates numbered FID_TAYLOR000573 is an example of a "Date Modified" field post-dating March 6, 2020, and the document Bates numbered FID_TAYLOR000672 is an example of a "Date Created" field post-dating March 6, 2020.

3. As to Request No. 5, we disagreed as to the meaning and scope of the Court's order. With respect to the comparative performance spreadsheet Fidelity produced, I explained that the information in the spreadsheet is very unlikely to be the raw data. You agreed to ask Fidelity whether it is willing to produce the raw information it used to create the spreadsheet, and whether it is willing to expand the produced information to include Financial Consultants (as opposed to including only Vice President Financial Consultants). You also said that you would ask Fidelity whether it would be willing to produce documents showing Ms. Taylor's compensation compared to other FCs and VPFCs in the Oak Brook office. You indicated, however, that Fidelity would not be willing to produce documents showing Ms. Taylor's comparative performance on a cumulative basis for the entire period of Scott Marshall's tenure (as opposed to the monthly performance metrics Fidelity produced).

4. You are checking whether Fidelity's production ends at FID_TAYLOR014005.

We look forward to hearing back from you once you speak to your client.

Thanks,
Zach

---

**From:** Zachary Mulcrone
**Sent:** Friday, July 17, 2020 9:17 AM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Subject:** RE: Fidelity Brokerage Services LLC v. Taylor

Sure. I will call you then.

---

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Friday, July 17, 2020 9:16 AM
**To:** Zachary Mulcrone <zmulcrone@grglegal.com>

**Cc:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Subject:** RE: Fidelity Brokerage Services LLC v. Taylor

Zach, would you like to talk at 1 pm CT on Monday?

Regards,
Susan



**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

---

**From:** Zachary Mulcrone <zmulcrone@grglegal.com>
**Sent:** Thursday, July 16, 2020 11:14 AM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Subject:** RE: Fidelity Brokerage Services LLC v. Taylor

Susan,

I am available for a Local Rule 37.2 telephone conference to discuss these issues today from 1 to 3:30, tomorrow from 9:30 to 4:00, and Monday from 12:00 to 4:30. Please let me know which time works best for you.

Thanks,
Zach

**Zachary Mulcrone**
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Main: (312) 428-2750
Direct: (312) 428-2746
Fax: (312) 332-2781
Cell: (847) 567-4556
zmulcrone@grglegal.com



**GREIMAN, ROME & GRIESMEYER, LLC**
business advisors. litigation professionals.
www.grglegal.com

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

**From:** Przybyszewski, Cheryl <cprzybyszewski@fisherphillips.com>
**Sent:** Wednesday, July 15, 2020 7:56 AM
**To:** Zachary Mulcrone <zmulcrone@grglegal.com>
**Cc:** Chris Griesmeyer <cgriesmeyer@grglegal.com>; Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** Fidelity Brokerage Services LLC v. Taylor

Good Morning,

On behalf of Susan Guerette, please find the attached correspondence in connection with the above-referenced matter.

Thank you.



**Cheryl Przybyszewski**
**Legal Secretary**
Fisher & Phillips LLP
Two Logan Square, 12th Floor | 100 N. 18th Street | Philadelphia, PA 19103
cprzybyszewski@fisherphillips.com | O: (610) 230-2177

Website | *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FIDELITY BROKERAGE SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-2133 |
| | ) | |
| JENNIFER TAYLOR, | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED NOTICE OF DEPOSITIONS

PLEASE TAKE NOTICE that the Defendant, Jennifer Taylor, by and through her undersigned counsel, and pursuant to Rule 30 of the Federal Rules of Civil Procedure and the Court's May 22, 2020 Order (Dkt. No. 29; *see also*, Dkt. No. 17), hereby notifies the Plaintiff, Fidelity Brokerage Services, LLC, that Defendant shall take the following depositions at the law offices of Greiman, Rome & Griesmeyer, LLC, 205 West Randolph Street, Suite 2300, Chicago, Illinois, 60606, starting on the date(s) and time(s) indicated below:

| DEPONENT | DATE | TIME |
|---|---|---|
| **Charles Meyers** | **June 9, 2020** | **9:00 a.m.** |
| **Scott Marshall** | **June 11, 2020** | **9:00 a.m.** |

PLEASE TAKE FURTHER NOTICE that you are required by this notice to have said deponent(s) present for oral examination on the date(s) and time(s) stated above; that the testimony provided by the deponent(s) shall be given under oath before an officer duly authorized to administer oaths and take depositions, and shall be recorded by stenographic, audio and/or

audiovisual means; and that the depositions shall be conducted in accordance with the Federal Rules of Civil Procedure and shall continue until completed.

Dated: May 29, 2020

Respectfully submitted,

**JENNIFER TAYLOR, Defendant**

By: _/s/ Christopher S. Griesmeyer_
          One of Her Attorneys

Christopher S. Griesmeyer (# 6269851)
Zachary Mulcrone (# 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle Street, Suite 1601
Chicago, Illinois 60602
(312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 29, 2020, I caused the foregoing Defendant's **Amended**

**Notice of Depositions** to be served upon the Plaintiff and all counsel of record via electronic mail:

Joel W. Rice
Franklin Z. Wolf
FISHER & PHILLIPS, LLC
10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
jrice@fisherphillips.com
fwolf@fisherphillips.com

Susan M. Guerette
FISHER & PHILLIPS, LLC
150 N. Radnor Chester Road, Suite C300
Radnor, PA 19087
sguerette@fisherphillips.com

Dated: May 29, 2020

By: _/s/ Christopher S. Griesmeyer_
    Christopher S. Griesmeyer (# 6269851)
    GREIMAN, ROME & GRIESMEYER, LLC
    Two North LaSalle, Suite 1601
    Chicago, Illinois 60602
    (312) 428-2750
    cgriesmeyer@grglegal.com

EXHIBIT D

## Zachary Mulcrone

| | |
|---|---|
| **From:** | Guerette, Susan <sguerette@fisherphillips.com> |
| **Sent:** | Wednesday, June 3, 2020 7:18 PM |
| **To:** | Chris Griesmeyer |
| **Cc:** | Rice, Joel; Zachary Mulcrone |
| **Subject:** | RE: Taylor |

That sounds great, I will call in then.

Regards,
Susan



**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website    *On the Front Lines of Workplace Law ℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Sent:** Wednesday, June 3, 2020 8:17 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Rice, Joel <jrice@fisherphillips.com>; Zachary Mulcrone <zmulcrone@grglegal.com>
**Subject:** RE: Taylor

Susan, we could do 1:30pm (2:30pm Eastern) tomorrow. Please confirm that works for you. Assuming it does, call-in information is as follows:

Number: 1-888-296-6828
Passcode: 169090#

Thank you,

Chris Griesmeyer

**Please note our new address:**

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street | Suite 2300**
**Chicago, Illinois 60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



---

**From:** Guerette, Susan <[sguerette@fisherphillips.com](mailto:sguerette@fisherphillips.com)>
**Sent:** Wednesday, June 3, 2020 6:53 PM
**To:** Chris Griesmeyer <[cgriesmeyer@grglegal.com](mailto:cgriesmeyer@grglegal.com)>
**Cc:** Rice, Joel <[jrice@fisherphillips.com](mailto:jrice@fisherphillips.com)>; Zachary Mulcrone <[zmulcrone@grglegal.com](mailto:zmulcrone@grglegal.com)>
**Subject:** RE: Taylor

Chris, can you please let me know your availability for a call tomorrow? I do not want to delay our meet and confer further. If you are not available, let me know if you would like me to contact Mr. Mulcrone.

Regards,
Susan



**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C430 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

---

**From:** Guerette, Susan
**Sent:** Wednesday, June 3, 2020 5:11 PM
**To:** Chris Griesmeyer <[cgriesmeyer@grglegal.com](mailto:cgriesmeyer@grglegal.com)>
**Cc:** Rice, Joel <[jrice@fisherphillips.com](mailto:jrice@fisherphillips.com)>; Wolf, Franklin <[fwolf@fisherphillips.com](mailto:fwolf@fisherphillips.com)>; Zachary Mulcrone <[zmulcrone@grglegal.com](mailto:zmulcrone@grglegal.com)>
**Subject:** RE: Taylor

Would sometime between 12 – 2 CST work for you?



**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C430 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

---

**From:** Chris Griesmeyer <[cgriesmeyer@grglegal.com](mailto:cgriesmeyer@grglegal.com)>
**Sent:** Wednesday, June 3, 2020 5:05 PM
**To:** Guerette, Susan <[sguerette@fisherphillips.com](mailto:sguerette@fisherphillips.com)>
**Cc:** Rice, Joel <[jrice@fisherphillips.com](mailto:jrice@fisherphillips.com)>; Wolf, Franklin <[fwolf@fisherphillips.com](mailto:fwolf@fisherphillips.com)>; Zachary Mulcrone

<[zmulcrone@grglegal.com](mailto:zmulcrone@grglegal.com)>
**Subject:** RE: Taylor

Susan, we also need to discuss Plaintiff's discovery responses and document production.  Can you please let me know what your schedule is tomorrow afternoon for a conference call?

Thank you,

Chris Griesmeyer

**Please note our new address:**

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street | Suite 2300**
**Chicago, Illinois 60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



---

**From:** Guerette, Susan <[sguerette@fisherphillips.com](mailto:sguerette@fisherphillips.com)>
**Sent:** Wednesday, June 3, 2020 2:28 PM
**To:** Chris Griesmeyer <[cgriesmeyer@grglegal.com](mailto:cgriesmeyer@grglegal.com)>
**Cc:** Rice, Joel <[jrice@fisherphillips.com](mailto:jrice@fisherphillips.com)>; Wolf, Franklin <[fwolf@fisherphillips.com](mailto:fwolf@fisherphillips.com)>; Zachary Mulcrone <[zmulcrone@grglegal.com](mailto:zmulcrone@grglegal.com)>
**Subject:** RE: Taylor

Chris,

We are happy to have a call to discuss the issues but we understand your email to be saying that you are not going to ask questions on the subjects we have listed below and therefore we are in agreement.  If that is not the case, then let me know and we can meet and confer on that further.

Regards,
Susan

**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website | *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

---

**From:** Chris Griesmeyer <[cgriesmeyer@grglegal.com](mailto:cgriesmeyer@grglegal.com)>
**Sent:** Wednesday, June 3, 2020 11:03 AM
**To:** Guerette, Susan <[sguerette@fisherphillips.com](mailto:sguerette@fisherphillips.com)>
**Cc:** Rice, Joel <[jrice@fisherphillips.com](mailto:jrice@fisherphillips.com)>; Wolf, Franklin <[fwolf@fisherphillips.com](mailto:fwolf@fisherphillips.com)>; Zachary Mulcrone

<zmulcrone@grglegal.com>
**Subject:** RE: Taylor

Good morning, Susan.

First, please copy my colleague, Zach Mulcrone, on all correspondence going forward.

Second, your inquiry about our potential "lines of deposition questioning" below is far more expansive than your original query, and unquestionably invades the attorney work product doctrine.  Nevertheless, I <u>once again confirm</u> that we do not intend to seek deposition testimony on Ms. Taylor's employment discrimination and retaliation claims; instead, we intend to limit our depositions to those issues relevant to the claims that Plaintiff has asserted against Ms. Taylor.  I believe that answers your question, and should provide you with all the assurances you require.  However, if you would like to discuss the issue in a good faith attempt to resolve any differences that you believe exist, then we can schedule a Rule 37.2 conference.

Finally, please let me know your availability this afternoon (or tomorrow morning) for a telephone call to discuss Plaintiff's improper objections and insufficient document production in response to Defendant's Rule 34 Requests.

Thank you,

Chris Griesmeyer

**Please note our <u>new</u> <u>address</u>:**

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street  |  Suite 2300**
**Chicago, Illinois  60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



---

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Tuesday, June 2, 2020 7:12 PM
**To:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Cc:** Rice, Joel <jrice@fisherphillips.com>; Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** Taylor

Chris,

We disagree with your assertion that "none of [y]our expedited discovery requests are intended to seek information related to Ms. Taylor's employment discrimination and retaliation claims".  To the contrary, document requests 3 and 5 clearly seek information about Ms. Taylor's treatment as an employee relative to other allegedly similarly situated employees – essentially comparator evidence, which are prototypical questions that relate to alleged discrimination. We do not believe that these subjects are appropriately within the scope of the limited expedited discovery ordered and authorized by the Court in this case.

Can you please confirm that Ms. Taylor is not going to inquire at the upcoming expedited depositions of Fidelity's managers into (a) the topics contained in her document requests 3 and 5, (b) any other lines of questioning relating to alleged discriminatory treatment of Ms. Taylor during her employment, (c) information about other Fidelity employees

or Fidelity's treatment of them, or (d) any alleged retaliation against Ms. Taylor during her employment with Fidelity? If you cannot confirm this, then we will need to move for a protective order. Thank you.

Regards,
Susan

---

**From:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Sent:** Tuesday, June 2, 2020 4:35 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Rice, Joel <jrice@fisherphillips.com>; Wolf, Franklin <fwolf@fisherphillips.com>; Zachary Mulcrone <zmulcrone@grglegal.com>; April Bernath <abernath@grglegal.com>
**Subject:** RE: Taylor

Hi, Susan.

First, regarding written discovery, below is a link to Defendant's Rule 34 Responses and accompanying document production. Many of the documents have been designated "Confidential" under the parties' soon-to-be-entered Stipulated Confidentiality Order (as a reminder, we're still waiting to receive your counter-signed copy, and for your office to submit the Stipulated Order for entry by the Court). Accordingly, the link is password-protected, and I will forward the password under separate cover:

https://www.dropbox.com/sh/2hqedqvzwubpipw/AABqkmIFIemIKmQ1ruVbklLva?dl=0

Second, regarding your below inquiry concerning Defendant's anticipated deposition topics, please note that, consistent with Judge Tharp's ruling on your motion for expedited discovery (Dkt. No. 29), we have not issued a Rule 30(b)(6) deposition notice to Plaintiff (and, you have made it clear that neither Mr. Meyers nor Mr. Marshall are being produced in their capacity as a Rule 30(b)(6) corporate representative of Fidelity). Accordingly, Defendant is under no obligation to "describe with reasonable particularity the matters for examination," and there is no basis for you to ask us to divulge our anticipated deposition topics. That said, I can assure you that: (a) none of our expedited discovery requests are intended to seek information related to Ms. Taylor's employment discrimination and retaliation claims, and (b) we are not intending to pursue discovery on those claims at this time. Fidelity's treatment of Ms. Taylor relative to other departing financial advisors is, however, relevant to her challenge of Plaintiff's assertions regarding (*inter alia*) irreparable harm, a likelihood of success on the merits, the existence of a protectable right, and a balancing of the equities.

If you have any questions, or would like to further discuss this issue, please let me know and we can schedule a Rule 37.2 conference.

Regards,

Chris Griesmeyer


**Please note our new address:**

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street | Suite 2300**
**Chicago, Illinois 60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



**From:** Guerette, Susan <[sguerette@fisherphillips.com](mailto:sguerette@fisherphillips.com)>
**Sent:** Monday, June 1, 2020 12:51 PM
**To:** Chris Griesmeyer <[cgriesmeyer@grglegal.com](mailto:cgriesmeyer@grglegal.com)>
**Cc:** Guerette, Susan <[sguerette@fisherphillips.com](mailto:sguerette@fisherphillips.com)>
**Subject:** Taylor

Chris,

From your document requests it appears that Ms. Taylor intends to use the present expedited discovery process to seek information related to her threatened EEOC/discrimination claim. Fidelity does not believe those matters are appropriate for expedited discovery and would be beyond the scope of the Order issued by the Court. We would therefore object to such matters being the subject of any interrogation at the upcoming depositions. Please let us know whether Ms. Taylor intends to try to inquire into matters related to her EEO/discrimination claim at the upcoming depositions so that we can seek a ruling from the court as to the scope of appropriate questioning given the limited scope of expedited discovery in this case, which is targeted only to aid in the preliminary injunction hearing, not for all matters that are or may be part of the overall ultimate dispute(s) among these parties. Please let us know Ms. Taylor's position on this matter by the close of business on Tuesday, June 2. Thank you.

Regards,
Susan

**Susan M. Guerette**
**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website | *On the Front Lines of Workplace Law*SM

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

EXHIBIT E

## Zachary Mulcrone

| | |
|---|---|
| **From:** | Guerette, Susan <sguerette@fisherphillips.com> |
| **Sent:** | Monday, June 8, 2020 4:39 PM |
| **To:** | Chris Griesmeyer; Zachary Mulcrone |
| **Cc:** | Guerette, Susan; Rice, Joel |
| **Subject:** | RE: Taylor |

Chris,

I have put our responses to your email below in blue after each section.

Regards,
Susan

**From:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Sent:** Friday, June 5, 2020 1:25 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Cc:** Zachary Mulcrone <zmulcrone@grglegal.com>; Rice, Joel <jrice@fisherphillips.com>; Wolf, Franklin <fwolf@fisherphillips.com>; April Bernath <abernath@grglegal.com>
**Subject:** RE: Taylor

Susan,

To address you points below:

1. We confirm that neither party will be pursuing discovery on Ms. Taylor's employment discrimination claims at this time, and we do not intend to cover the topics you've listed below in points 1(a)-1(d), below.  However, this would not preclude Ms. Taylor from: (i) later seeking discovery on those issues (including through additional depositions of Fidelity employees, including Scott Marshall and Charles Meyers) - We just want to clarify that the present agreement only is with respect to the limited expedited discovery ordered by the Court in aid of the preliminary injunction proceedings, and our agreements in that regard have no impact on the parties' rights to take discovery later in the dispute, whether in arbitration or elsewhere, all of which rights are whatever the applicable forum specifies them to be, and are unaffected in any way by the present agreement.
; (ii) questioning Mr. Marshall and/or Mr. Meyers about any documents Fidelity may produce in response to Defendant's document request nos. 3 and 5 – Agree; and (iii) developing testimony concerning other aspects of her general employment at Fidelity.  - Agree

2. Understood.  You also stated Fidelity would be producing the 2020 calendar entries from Ms. Taylor's Fidelity Outlook Account today.  You should have received those on Friday.

3. Agreed with respect to depositions.  Regarding your proposal to take depositions "virtually" – can you please explain in greater detail what you mean by that?  We propose using Veritext which provides for virtual depositions (see details at this link https://www.veritext.com/services/veritext-virtual/) and has more sophisticated options for sharing exhibits.

1

Finally, we advised you yesterday that we would be supplementing Ms. Taylor's production with her text messages and handwritten notes, based on the parties' agreement to treat the Stipulated Protective Order as enforceable *nunc pro tunc* to June 2nd.  Below is a link to those documents.  I will forward the password under separate cover:

https://www.dropbox.com/sh/l9f9hattm829s80/AAATUqRfVuTGKqrEko0tSwtKa?dl=0

Regards,

Chris Griesmeyer

**Please note our new address:**

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
**205 W. Randolph Street | Suite 2300**
**Chicago, Illinois 60606**
(312) 428-2741 (Direct)
(312) 339-7439 (Mobile)



---

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Friday, June 5, 2020 9:38 AM
**To:** Chris Griesmeyer <cgriesmeyer@grglegal.com>
**Cc:** Zachary Mulcrone <zmulcrone@grglegal.com>; Rice, Joel <jrice@fisherphillips.com>; Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** Taylor

Chris,

Following up on our meet and confer call yesterday,

1) Fidelity agrees that it will not ask Ms. Taylor questions during her deposition relating to her employment discrimination claims.  Please confirm, as we discussed yesterday, that Ms. Taylor is not going to inquire at the upcoming expedited depositions of Fidelity's managers into (a) the topics contained in her document requests 3 and 5, (b) any other lines of questioning relating to alleged discriminatory treatment of Ms. Taylor during her employment, (c) information about other Fidelity employees or Fidelity's treatment of them, or (d) any alleged retaliation against Ms. Taylor during her employment with Fidelity.

2) In follow-up to our meet-and-confer call yesterday, we are discussing with Fidelity whether the company would agree to produce documents responsive to Plaintiff's Document Request Number 4.  We will be back with you shortly on this.

3) We have agreed to take the depositions off calendar for next week.  The parties have agree to wait until their anticipated discovery motions have been resolved, and until the additional documents that we both agreed to produce have been produced, and then will coordinate rescheduling the depositions within approximately ten days of those resolutions.

Regards,
Susan

2

**Susan M. Guerette**

**Attorney at Law**

Fisher & Phillips LLP
150 N. Radnor Chester Road | Suite C300 | Radnor, PA 19087
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard  |  Bio  |  Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

EXHIBIT F



150 N. Riverside Plaza, Suite 3000, Chicago, IL 60606 • (312) 819-1900

September 25, 2020

Sohil M. Shah
Direct: 312.463.6319
sshah@polsinelli.com

**VIA E-MAIL**
Susan M. Guerette
Fisher & Phillips LLP
150 N. Radnor Chester Road, Suite C300
Radnor, PA 19087
sguerette@fisherphillips.com

> **Re:** *Fidelity Brokerage Services LLC v. Jennifer Taylor*
> **Case No. 1:20-cv-02133**

Dear Counsel:

We are in receipt of your letter dated September 14, 2020 and our response is below.

**Communications with Fidelity Customers**

We disagree with your characterization that the email communications Fairhaven produced "show extensive solicitation by both Taylor and her assistant." This appears to be an unsupported and unnecessary legal conclusion. Additionally, your use of the word "finally" suggests a delay on Fairhaven's part. Again, we disagree with this mischaracterization. We politely request that you refrain from making such mischaracterizations in discovery communications.

You appear to assume that additional documents exist but have provided no reasonable basis for the existence of such documents in Fairhaven's possession. You state as follows: "Ms. Lyon must have had Customer information provided to her by Taylor in order to know who to call on Ms. Taylor's and Fairhaven's behalf. The Customer list and any communications regarding the list, any direction to Ms. Lyon as to what to say to Customers, and any notes of her calls with Customers are directly responsive to Document Requests 1, 2 and 3 and must be produced." Please provide the basis for this assumption. To the extent you have deposed Ms. Taylor and she outlined this process as you have described it, please let us know. To clarify, Ms. Taylor provided Ms. Lyon a list of customers and their phone numbers when she joined Fairhaven. Ms. Lyon only made announcement phone calls and she had no business development responsibility. She had a purely administrative role. When Ms. Lyon finished her calls, she returned the list to Ms. Taylor, along with any handwritten notes on such a list. Ms. Taylor and Fairhaven do not have this list and it no longer remains in their possession, custody, or control. Only Ms. Taylor can provide this list to Fidelity.



September 25, 2020

### Notes of Communications with Fidelity Customers

Your assumption in this section again is incorrect. Information for individuals was only added to Fairhaven's Salesforce system if individuals were Fairhaven customers or after individuals had become Fairhaven customers. Such notes were used for client retention only. Additionally, no information was added to Fairhaven's Salesforce system for potential clients or customers. We disagree that entries in Fairhaven's Salesforce system corresponding to Fairhaven's customers must be produced as they are not responsive to any of Fidelity's document requests.

### Phone Records of Calls to Fidelity Customers

The following statement is a legal conclusion unsupported by legal authority and we disagree with such a conclusion: "As an employee of Fairhaven, Ms. Lyon's conduct was as an agent of the company and she undoubtedly used Fairhaven's phone systems to make these calls." The following statement is also a legal conclusion unsupported by legal authority and we disagree with such a conclusion: "Ms. Lyon's notes leave no doubt that she was soliciting Fidelity Customers to move their business." This is simply incorrect.

Ms. Lyon did use Fairhaven's office phone system to make announcement phone calls. Fairhaven will agree to produce phone records for office phones for Ms. Lyon and the other relevant custodians, and will produce these records no later than October 2, 2020.

Your legal conclusions in this section also suggest the non-occurrence of the 2020 global COVID-19 pandemic which effectively temporarily shut down Fairhaven's offices soon after Ms. Taylor began working for Fairhaven. Fairhaven does not issue company cell phones to its employees and does not control those cell phones. Accordingly, Fairhaven cannot provide cell phone records for individual employees.

### Emails to Fidelity Customers

We disagree with your numerous assumptions, which again are based on conjecture alone. Specifically, the following statement is incorrect: "The documents produced also make it clear that Taylor, Ms. Lyon and Fairhaven sent additional emails to Customers that do not appear to have been produced." Again, we have produced all responsive email communications and have not withheld any email communications in an effort of good faith on the part of Fairhaven. If there are specific emails you believe have not been produced, please provide the dates of those emails, and the participants in those email communications. We can then review our prior document productions. We have not withheld any responsive emails as part of our previous



September 25, 2020

document productions.  These additional emails referenced were never sent or they would have been produced.

**Mailings and Text Messages to Fidelity Customers**

Any documents that were mailed to Fidelity customers and which Fairhaven retained a copy of were part of the electronic files that Mr. Horner previously and directly produced to Fidelity this summer.  Accordingly, Fidelity already has such documents.  Moreover, Fairhaven did not keep an electronic or hard copy of every document it sent to potential customers. Accordingly, Fairhaven does not have custody or control over any additional documents.  To the extent you need these documents, you will need to subpoena the recipients of such documents.

Additionally, as stated above, Fairhaven does not have custody of or control over individual employees' cell phones, and does not have access to any employees' text messages.

**Documents Regarding Taylor's Hire**

We again disagree with your characterization regarding Fairhaven's production of documents related to Fairhaven's hiring of Ms. Taylor.  Fairhaven has produced all such responsive documents.  You make several statements are false or incorrect.

First, you state: "The documents Fairhaven produced in response to this request, however, consist only of marketing materials and an unsigned employee agreement that does not even include Taylor's name.  These materials are not responsive or comprehensive."  We have advised you previously that Ms. Taylor has not executed an employee agreement.  Fairhaven cannot produce a document that does not exist.  The marketing materials Fairhaven produced were copies of the exact same documents Fairhaven handed to Ms. Taylor.

Second, you state: "Fidelity cannot believe that an experienced Financial Advisor was hired by Fairhaven and not a single document was generated as a result.  Responsive documents would include phone records to set up interviews, notes of discussions, calendar entries, text message or email communications, an offer letter, new hire documents and regulatory clearance documents.  Fairhaven produced an unsigned Employment Agreement and indicated that it had not yet been signed.  However, it did not produce any documents relating to the agreement, including any documents indicating that it was sent to or discussed with Taylor.  Fairhaven did not even produce an offer letter or any document indicating what it offered to pay Ms. Taylor. Again, it is hard to believe that Ms. Taylor accepted a job offer without being informed in writing what her compensation would be."  Again, much of this information is incorrect and based on assumptions about Fairhaven's hiring practices.  While Fidelity may believe something does not make it true and correct.  There are no notes of discussions, calendar entries, email



September 25, 2020

communications, or text messages that are responsive to your document requests. We disagree with your assertion that phone records to set up interviews with Ms. Taylor would be responsive or relevant to the litigation at hand. Ms. Taylor can provide any cell phone records of phone calls with Fairhaven prior to her hiring, and any such phone records from Fairhaven are irrelevant to your claims in the litigation. Please clarify why such phone records from Fairhaven are relevant, and why you cannot obtain them from Ms. Taylor.

Additionally, you assume, without any reasonable basis, that there are documents related to the unsigned employment agreement. This is incorrect and appears to be based on pure conjecture. You also assert that there was an offer letter or document indicating what Fairhaven offered to pay Ms. Taylor. Again, this is incorrect. There was no offer letter. We have relayed this to you previously, and cannot invent a document that does not exist.

Fairhaven and Fidelity are valued business partners, and Fairhaven remains committed to being a cooperative partner going forward. However, your September 14, 2020 letter assumes the existence of documents that do not exist and makes many incorrect assumptions. Additionally, Fidelity has indicated to Fairhaven that it may drag Fairhaven into the lawsuit between Fidelity and Ms. Taylor in an effort to threaten Fairhaven into forcing Ms. Taylor into a settlement. To the extent Fidelity is bringing Fairhaven in as a party to the existing litigation, please advise us immediately.

Sincerely,

*/s/ Sohil M. Shah*

Sohil M. Shah

EXHIBIT G

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:<br><br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge<br>No(s):<br><br>440-2020-05184 |
|---|---|---|

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>**MS. JENNIFER A TAYLOR** | Home Phone<br>**(630) 765-1795** | Year of Birth<br>**1972** |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| **606 PRAIRIE AVE, GLEN ELLYN, IL 60137** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**FIDELITY BROKERAGE SERVICES LLC** | No. Employees, Members<br>**501+** | Phone No.<br>**(800) 526-7260** |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| **1415 WEST 22ND ST. STE 100, OAK BROOK, IL 60523** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest **11-01-2019**  Latest **03-06-2020**<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on or about September 4, 1994. My position was VP Financial Consultant. During my employment, I was disciplined. On or about March 6, 2020, I was constructively discharged.

I believe I was discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964.

I also believe I was discriminated against because of my age, 48 (Year of Birth: 1972), in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Jennifer Taylor on 06-16-2020 10:33 AM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.  FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.  AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.  PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.  ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.  WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.