## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **FIDELITY BROKERAGE SERVICES LLC,** | : | |
| **900 Salem Street** | : | |
| **Smithfield, RI 02917,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CASE NO.: 1:20-cv-02133** |
| | : | |
| **JENNIFER TAYLOR,** | : | |
| **606 Prairie Avenue** | : | |
| **Glen Ellyn, IL 60137, and** | : | |
| | : | |
| **FAIRHAVEN WEALTH MANAGEMENT,** | : | |
| **LLC** | : | |
| **104 E. Roosevelt Road** | : | |
| **Suite 100** | : | |
| **Wheaton, IL 60187,** | : | |
| | : | |
| **Defendants.** | : | |

## AMENDED COMPLAINT

Plaintiff Fidelity Brokerage Services LLC ("Fidelity") files this Amended Complaint against Defendants, its former employee Jennifer Taylor ("Taylor") and her new employer Fairhaven Wealth Management, LLC ("Fairhaven") (collectively "Defendants"). Taylor has used and misused Fidelity's confidential and trade secret customer information, which she obtained knowledge of and access to only as a result of her employment with Fidelity, to solicit Fidelity customers to transfer their Fidelity accounts to her at Fairhaven. Further, not only has Taylor taken and misused Fidelity's confidential customer information but she shared that confidential, trade secret customer information with Fairhaven and its employees for the specific purpose of enabling Fairhaven personnel to misuse it. Fairhaven employees then did exactly that, using Fidelity's customer information to aggressively and systematically solicit Fidelity customers to transfer their

investment management business to Taylor at Fairhaven. Taylor's conduct violates her Employment Agreement with Fidelity, and Fairhaven has tortiously interfered with that contract. Both Defendants have misappropriated and misused Fidelity's trade secret customer information in violation of Illinois law and the Defend Trade Secrets Act. Defendants have engaged in unfair competition and conspired to take and misuse Fidelity's information in order to divert Fidelity's customers to their firm.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Fidelity Brokerage Services LLC is a Delaware Limited Liability Company, whose sole member is Fidelity Global Brokerage Group, Inc., a corporation organized and existing under the laws of Massachusetts with its principal place of business located in Boston, Massachusetts. Fidelity is a member firm of FINRA.

2.     Defendant Jennifer Taylor is a former Vice President, Financial Consultant of Fidelity's Oak Brook, Illinois office. She is an adult citizen and resident of Illinois. Taylor was registered with FINRA during her employment with Fidelity.

3.     Fairhaven Wealth Management, LLC is an Illinois Limited Liability Company, with a principal place of business located in Wheaton, Illinois.

4.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this matter involves a cause of action arising under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq*. *See* 18 U.S.C. § 1836(c) (West 2017) ("The district courts of the United States shall have original jurisdiction of civil actions brought under this section."). This Court has supplemental jurisdiction over the breach of contract and other state law claims herein pursuant to 28 U.S.C. § 1367 because the claims are so related to the DTSA claim for which

2

this Court has original jurisdiction that they form part of the same controversy. Notably, both Defendants used Fidelity's trade secret customer information to solicit Fidelity customers.

5.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Indeed, Defendants' conduct threatens approximately 425 Fidelity client households, representing in excess of $1.18 billion in client assets under Fidelity management. Through their illegal conduct, Defendants have already diverted almost $60 million in client assets to Taylor at Fairhaven.

6.    Venue is proper in this District because (a) Taylor lives and works in this District, (b) most or all of the conduct alleged in this Amended Complaint occurred within this District, and (c) Fairhaven conducts business in this District.

## NATURE OF THE CASE

7.    Taylor, a former Fidelity Vice President, Financial Consultant, has used Fidelity's confidential and trade secret customer information, that she had access to solely by virtue of her employment with Fidelity, to unlawfully solicit Fidelity customers to transfer their business to her new firm. Taylor has also shared Fidelity's confidential and trade secret customer information with Fairhaven, and Fairhaven personnel used that information to further aggressively solicit Fidelity customers to transfer their investment management business to Taylor and Fairhaven. Defendants' illegal conduct has resulted in almost the investment management business for more than $60 million in Fidelity customer assets being diverted to Taylor and Fairhaven.

8.    On March 6, 2020, Taylor resigned from Fidelity and immediately thereafter joined Fairhaven Wealth Management, a registered investment adviser firm (RIA), and began providing competing services.

3

9.     In connection with her resignation, Taylor was sent a letter from Fidelity's HR department reminding her of her post-employment obligations pursuant to her Employee Agreement, and enclosing a copy of her Employee Agreement.  A copy of the March 14, 2020 letter is attached to the Declaration of Scott Marshall as Exhibit F.

10.     Despite her post-employment obligations, since Taylor resigned she has aggressively and blatantly misappropriated Fidelity's confidential and trade secret customer information and used, and continues to use, that information to unlawfully target and solicit Fidelity customers to transfer their accounts to her new firm, as set forth more fully below.

11.     Fidelity seeks a preliminary injunction requiring Defendants to return to Fidelity any and all records and/or documents in any form, received or removed from Fidelity by Defendant, containing information pertaining to customers Taylor served or whose names became known to Taylor while in the employ of Fidelity, including, but not limited to, any customer list or documents replicated or recreated by Taylor from memory or otherwise, and from using Fidelity's confidential and trade secret information concerning Fidelity's customers.  This injunctive relief is necessary to end Defendants' unlawful activities, which include misuse of Fidelity's trade secrets and unfair competition.

12.     Fidelity and Taylor are obligated to arbitrate the merits of this dispute consistent with the arbitration rules and regulations of the Financial Industry Regulatory Authority ("FINRA") pursuant to FINRA Rule 13200.  Accordingly, concurrently with the filing of its Motion for a Preliminary Injunction, Fidelity also filed a Statement of Claim with FINRA Dispute Resolution, Inc. seeking binding arbitration of the ultimate merits of its dispute with Taylor.

13.     Although the merits of the case against Taylor are to be resolved in arbitration before FINRA, pursuant to FINRA Rule 13804, Fidelity is required to seek and obtain injunctive

FP 38823217.3

relief in a court of competent jurisdiction before an expedited FINRA arbitration is permitted to proceed. Preliminary injunctive relief, therefore, is required to preserve the *status quo* until the merits of this case against Taylor can be adjudicated by FINRA.

## FACTS COMMON TO ALL COUNTS

### Fidelity's Unique Customer Development Practices

14.     Fidelity and its affiliates provide a variety of financial services—such as retirement services, investment planning, wealth management, securities execution and clearing, life insurance services, and equity services—to Fidelity customers, with whom Fidelity typically enjoys significant, long-term relationships. Fidelity offers individual investors a broad assortment of trading and cash management features including buying and selling stocks, bonds, options and thousands of mutual funds from Fidelity and other well-known fund companies.

15.     Fidelity is unique in the retail brokerage field because Fidelity does not have its Financial Consultants, such as Taylor, make "cold calls" to persons who have no relationship with Fidelity, or who were not referred to Fidelity.

16.     Instead, Fidelity requires its Financial Consultants to develop service relationships based upon leads that Fidelity provides.

17.     Fidelity provides leads to its Financial Consultants from two primary sources.

18.     First, Fidelity forwards information to its representatives from prospective customers who initiate contact with Fidelity either by telephone, over the internet, or in person.

19.     Fidelity and its affiliates devote tens of millions of dollars per year towards attracting customers to Fidelity's various businesses in a variety of means. Fidelity arranges to publish and broadcast national and local advertisements which invite potential customers to contact Fidelity; Fidelity maintains an interactive internet page that allows interested persons to establish relationships with Fidelity; Fidelity maintains multiple call centers that prospective

FP 38823217.3

customers can use to initiate contact with Fidelity; and Fidelity maintains prominent retail locations which prospective customers can visit.

20.     A large portion of Fidelity's business is derived from this initial customer contact that is generated by significant investments of time, labor, and capital by Fidelity.

21.     Second, Fidelity forwards information to its representatives regarding customers, with whom Fidelity already has a relationship, when those customers experience "triggering events," such as Fidelity 401(k) distributable events, which may lead to interest in Fidelity's retail financial services.

22.     In addition, representatives may be assigned to service customers previously serviced by other representatives in certain circumstances, such as if the former representative moves, leaves Fidelity, or is promoted to another position.  Moreover, Fidelity clients may be serviced by multiple Fidelity representatives depending upon the clients' needs and service offerings in which they opt to participate at Fidelity.

23.     A significant portion of Fidelity's business is derived from servicing the needs of Fidelity's existing customers.

24.     Fidelity's success in its lead-based approach is based on the typically long-standing relationships it enjoys with its customers.

**Fidelity's Trade Secret Customer Information**

25.     Fidelity's success with its unique lead-based approach to supporting Financial Consultants, such as Taylor, is also directly tied to Fidelity's trade secret customer information, which is among Fidelity's most important assets.

26.     Fidelity's trade secret customer data includes not only the names and contact information of Fidelity customers, but also includes financial information relating to those

customers, such as customer financial statements, investment goals, investment history, assets, income, and net worth.

27.     Although certain portions of such information might be publicly available — such as an individual's name or published home telephone numbers — only a limited number of Fidelity employees know who among the general public are Fidelity customers who have demonstrated a specific need and desire for investment services.

28.     Fidelity developed its customer base through a significant investment of time, labor, and capital, as described above.

29.     Fidelity maintains its customer data in confidence, both to preserve Fidelity's competitive advantage in its customer base and to meet customer expectations that Fidelity will maintain sensitive, personally identifiable information (including their identity as a customer, contact information and financial information) in confidence.

30.     Fidelity derives substantial economic value from preserving its customer data as a trade secret.

31.     Although individual customers are periodically subject to random solicitations from Fidelity competitors, no competitor can effectively target a set of Fidelity customers and address their needs without access to or specific knowledge of Fidelity's trade secret customer data.  In this way, maintaining the confidentiality of Fidelity's trade secret customer data provides Fidelity with a significant competitive advantage over its competitors.

### Fidelity's Efforts to Preserve the Confidentiality of Its Customer Data

32.     Fidelity vigilantly preserves its trade secret customer data so that it does not become available to competitors who could use the data to divert customers, without the investment of

7

time, labor, and capital that Fidelity made to compile the information. Fidelity does not provide its trade secret customer data to competitors.

33. Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are provided with such access.

34. Fidelity maintains and advises its employees of a Global Policy on Information Protection that is displayed on Fidelity's intranet. A true and correct copy of Fidelity's Global Policy on Information Protection is attached to the Marshall Declaration as Exhibit A. Fidelity periodically reminds its employees of this policy and provides employees with a Quick Reference Card ("QRC") explaining how to protect specific types of Fidelity confidential information. A true and correct copy of Fidelity's QRC is attached to the Marshall Declaration as Exhibit B.

35. Fidelity also preserves trade secret customer data by requiring employees, including Taylor, to sign Employee Agreements in which each employee agrees not to use or disclose Fidelity confidential information, including Fidelity customer information, outside of Fidelity, and not to solicit Fidelity customers.

36. Fidelity has been vigilant in protecting its customers' privacy because most Fidelity customers do not want, and have not authorized, Fidelity to share their contact or financial information outside of Fidelity. Furthermore, as discussed more fully below, Fidelity is required by federal law to prevent the disclosure to third-parties of nonpublic customer information, including customers' contact information and financial information. *See* 15 U.S.C. § 6801, *et seq.*; 17 C.F.R. § 248.1, *et seq.*

**Taylor Agreed to Protect the Confidentiality of Fidelity's**
**Trade Secret Customer Information and Not to Solicit Fidelity Customers**

37.    At the time of her resignation on March 6, 2020, Taylor was a Vice President, Financial Consultant in Fidelity's branch office in Oak Brook, Illinois.  While working at Fidelity, Taylor was assigned clients to service on behalf of Fidelity.

38.    In order for Taylor to service the customers' accounts she was assigned to service, Taylor required access to the customers' confidential personal and financial information.

39.    Taylor specifically acquired access to and knowledge of the names, contact information and confidential financial data for numerous Fidelity clients.  By the time of her departure, she had daily access to and had gained knowledge of confidential Fidelity information relating to approximately 425 households, representing in excess of $1 billion in client assets under Fidelity management.  Moreover, throughout her employment at the Oak Brook branch, the confidential information to which Taylor was given access was continually updated as clients were added, new accounts were opened, client assets and investments changed value, clients' financial goals evolved, and as a result Taylor was provided with ongoing access to a pool of continually updated and evolving confidential information about the Fidelity clients she was assigned to service.

40.    Fidelity protects its customers' information by, among other things, requiring each employee who will have access to that information to execute a standard Fidelity Employee Agreement.

41.    Fidelity records indicate that Taylor executed the Employment Agreement on September 20, 1999.  Taylor then renewed her commitment to the provisions by signing it again on June 30, 2011.  Copies of Taylor's signed September 20, 1999 and June 30, 2011 Employee Agreements are attached to the Marshall Declaration as Exhibits C and D.

42.     In her Employee Agreement, Taylor acknowledged the confidentiality of Fidelity's records, including Fidelity's customer lists and customer information.  *See Marshall Declaration* Exhibits C and D at ¶ 1.

43.     Taylor promised to use Fidelity's trade secrets only in the course of her employment with Fidelity and not to divulge Fidelity's trade secrets to third parties.  *Id.*

44.     Taylor promised that, upon termination of employment, she would "return all company property … including but not limited to Confidential Information."  *Id.* at ¶ 3.

45.     Taylor also promised that following termination of employment she would not use Fidelity's Confidential Information to solicit Fidelity's clients.  *Id.* at ¶ 6.

46.     Taylor further promised that for a period of one year following termination of her employment she would not directly or indirectly solicit in any manner or induce or attempt to induce any customer or prospective customer with whom she had personal contact or about whom she otherwise learned during the course of her employment with the Fidelity.  *Id.*

47.     Taylor agreed that any violation of the Employee Agreement—including after her termination—would cause Fidelity irreparable damage and would entitle Fidelity to seek injunctive relief to protect its trade secret customer information.  *Id.* at ¶ 10 (Ex. C) and ¶ 11 (Ex. D).

48.     As consideration for the Employee Agreements Taylor executed, Fidelity hired her, promoted her, provided her with ongoing access to continually updated confidential business information, compensated her throughout her employment, and provided her with introductory and continuing on-the-job training, and promotions.  Fidelity assigned Taylor customers with higher assets to service on behalf of Fidelity and provided Taylor with leads to enable her to succeed at Fidelity.  Fidelity further provided Taylor with support services; paid for facilities, computer

equipment, market reporting services, and all other business expenses; and registered Taylor with the Financial Industry Regulatory Authority and the New York Stock Exchange. Fidelity provided Taylor with sales assistance, research, the benefit of Fidelity advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and with promotional marketing and sales support.

### Taylor Misappropriated Fidelity's Trade Secret Customer Information And Is Using It For The Benefit Of Herself and Fairhaven

49.     Despite her contractual obligations and her obligations under Illinois law, Taylor misappropriated Fidelity's trade secret customer information and has used and continues to use Fidelity's trade secret customer information to solicit Fidelity customers.

50.     Since Taylor resigned from Fidelity, Fidelity has been receiving reports that she—and personnel of her new firm, Fairhaven, acting on her behalf—have been soliciting Fidelity customers to transfer their business to Fairhaven.

51.     In fact, one client reported that Taylor solicited him, and set up an appointment for him to come meet with her at her new firm, before she even resigned from Fidelity. After Taylor resigned, Fidelity representatives were assigned to service the customers that were previously serviced by Taylor. In a meeting with the new Financial Consultant, the customer reported that during his last meeting with Taylor, while she was employed at Fidelity, she set up a meeting for him at her new firm. Taylor also told the client that he would be able to leave his assets at Fidelity but Taylor would be able to add her name to their account and provide financial advice. *See* Marshall Declaration at ¶ 16.

52.     Accordingly, Fidelity's in-house counsel sent Taylor a letter reminding her of her contractual obligations, enclosing a copy of her Employee Agreement, and demanding that she cease any further solicitation of Fidelity customers. Fidelity also enclosed an affidavit for her to

sign attesting that she did not have, or had returned, any of its customer information. A copy of the March 20, 2020 letter is attached to the Marshall Declaration as Exhibit G.

53.     Taylor never responded to the letter and never returned the signed affidavit. *See* Marshall Declaration at ¶ 18

54.     Fidelity has since learned that Taylor has continued to use Fidelity's trade secret customer information to aggressively solicit customers to transfer their accounts to her new firm. *Id.* at ¶ 19

55.     Since Fidelity's March 20, 2020 letter to Taylor, another client reported to her new Financial Consultant that she received a call from the firm that Taylor joined and the person said that she was calling on Taylor's behalf.  The employee from Taylor's new firm, Fairhaven, then asked the Fidelity client to consolidate her assets and transfer them to Taylor at her new firm.  The client was not happy that someone called her and wanted to make sure that Fidelity was aware that this was being done by Taylor and her new firm.  *Id.* at ¶ 20.

56.     Other clients have also reported to Fidelity that Taylor was contacting them about doing business with her at her new firm.  *Id.* at ¶ 21.

57.     The only way Taylor could have known that these particular individuals were customers of Fidelity and how to contact them is by exploiting the ongoing access she was given to Fidelity's constantly updated confidential and trade secret information, and using her knowledge of that confidential information about Fidelity's clients to identify and target Fidelity clients for her own benefit, and the benefit of her new firm.

### Taylor Conspired with Fairhaven, Provided Fairhaven With Fidelity Customer Information and Fairhaven Further Solicited Fidelity Customers

58.     After resigning, Taylor provided a list of Fidelity customers that she serviced on behalf of Fidelity to Fairhaven.  Fairhaven then shared that information with its personnel.

12

Fairhaven personnel then began initiating contact with the customers on that list and soliciting them to meet with Taylor and move their business to Fairhaven.

59.     Fairhaven records show that Fairhaven personnel systematically contacted customers previously serviced by Taylor through customer information provided by Taylor.

60.     Fairhaven personnel invited Fidelity customers to meet with Taylor at Fairhaven.

61.     A Fairhaven employee called Fidelity customers and told them that Taylor would be able to provide better service to them now that she was at Fairhaven.

62.     A Fairhaven employee called Fidelity customers and told them that Taylor had a whole team behind her now that she was at Fairhaven and that Fairhaven was "known for [its] customer service!"

63.     The reports from Fidelity customers and the evidence obtained in this case to date confirm that both Taylor and Fairhaven have misappropriated and misused Fidelity's trade secret information to solicit and divert Fidelity customers to Taylor at Fairhaven.

**The Threat of Immediate and Irreparable Harm**
**Fidelity Faces from Defendants' Conduct**

64.     The theft and misuse of Fidelity's trade secret customer information to solicit and unfairly compete with Fidelity causes Fidelity both monetary and irreparable harm.  Defendants' conduct has and will continue to irreparably harm Fidelity's relationships with its customers, such as by losing goodwill, losing future business or referrals, as well as losing trust and confidence in securing inherently-private information, which cannot be calculated with precision and cannot be adequately compensated.

65.      Fidelity's customer information, including the identity of Fidelity customers, is also required to be kept confidential under the Gramm-Leach-Bliley Act and its implementing regulations.  The statute declares, "[i]t is the policy of the Congress that each financial institution

13

has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a) (2012). The implementing regulation, known as Regulation S-P, prohibits the disclosure of so-called "nonpublic personal information" to third parties without consent. 17 C.F.R. § 248.10 (2017). Nonpublic personal information is defined to include customer lists from financial institutions, *even if those lists contain only names of Fidelity customers* because the identity of an individual as being a customer of a particular financial institution is specifically protected by the federal regulations. 17 C.F.R. § 248.3(t)(1) (2017); 17 C.F.R. § 248.3(u)(2)(i)(D) (2017). Indeed, these regulations also protect a customer's account information. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(1).

66.    Fidelity customers rightfully have an expectation that their confidential contact and financial information, such as their identities, contact information, net worth, risk tolerances, investment goals, and preferences, will be protected and not misused by departing employees. Thus, customers understandably are concerned when former Fidelity employees, such as Taylor, have access to their information and are using it to solicit their business to a new and different securities firm like Fairhaven.

67.    In other words, the damage to Fidelity's customer relationships has already occurred, is ongoing and is incalculable, as Fidelity cannot put a price on the value of its customer relationships or the damage caused when Defendants took and improperly misused confidential and trade secret customer information on behalf of a competing business.

68.    Based on all the foregoing facts and conduct, Fidelity believes and thereon alleges that Defendants prepared to engage in, is engaging in, and plans to continue to engage in the following wrongful acts:

FP 38823217.3

- use and/or disclosure of Fidelity's trade secret customer information and misappropriation of the trade secret information contained in confidential Fidelity business records, including specifically the names, addresses, phone numbers, and/or other confidential financial information of Fidelity customers;

- transmission verbally, in writing or in another manner for the use of a Fidelity competitor, customers' contact and financial information contained in Fidelity's records; and

- solicitation of Fidelity customers on behalf of Taylor and Fairhaven.

69. Fidelity has been and continues to be damaged, both monetarily and irreparably, by the actual and threatened loss of customers and customer goodwill caused by Defendants' misappropriation and misuse of Fidelity's trade secret customer information and solicitation of Fidelity's customers in violation of Taylor's Employee Agreement and in violation of Illinois law.

70. Denial of injunctive relief would also leave Fidelity vulnerable to the same conduct from other employees.

71. Fidelity asks for the Court's assistance in protecting that information and requiring it to be returned to Fidelity.

## FIRST CAUSE OF ACTION

### (Injunctive Relief – Against All Defendants)

72. Fidelity hereby realleges and incorporates by reference the allegations of the Amended Complaint above, inclusive, as though set forth in full.

73. In doing the acts described herein, Defendants have harmed Fidelity by, among other things, improperly garnering, retaining, disclosing and utilizing Fidelity's confidential and proprietary information and trade secrets, in violation of federal and Illinois law, to give Taylor a competitive edge over Fidelity, attempting to poach Fidelity's customer accounts, and diminishing Fidelity's reputation and goodwill.

74. Unless the Defendants are enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its clients;

(b)     Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(c)     Potential future economic loss, which is presently incalculable.

75.     Thus, Fidelity is entitled to injunctive relief.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Against Taylor)

76.     The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

77.     Taylor's Employee Agreements are valid contracts supported by adequate consideration.

78.     In the Employee Agreements, Taylor acknowledged that as a consequence of her employment with Fidelity, and in order to assist her in performing the duties of a Financial Consultant, Taylor would be given access to Confidential Information about Fidelity's clients. *See* Exhibits D and E to the Marshall Declaration at ¶1.

79.     Pursuant to the terms of her Employee Agreements, Taylor agreed to keep Fidelity's records, including particularly Fidelity's customer lists and customer information, confidential.  Exhibits D and E to the Marshall Declaration at ¶ 1.

80.     Taylor promised to use Fidelity's customer information only in the course of her employment with Fidelity and promised not to divulge Fidelity's customer information to third parties such as her new firm.  Exhibits D and E to the Marshall Declaration at ¶ 1.

16

81.     Taylor violated the confidentiality and non-disclosure provisions of her Employee Agreements by using Fidelity's confidential customer information on behalf of herself and Fairhaven, including by using that information to solicit Fidelity clients to transfer their business.

82.     Taylor also promised to return any of Fidelity's customer information in her possession to Fidelity upon termination of her employment.  Exhibits D and E to the Marshall Declaration at ¶ 3.  She instead used that information and provided it to Fairhaven.

83.     Taylor sought to circumvent and in fact breached this provision of her Employee Agreements by, on information and belief, either taking the Confidential Information, or creating or recreating the Confidential Information from memory for competitive use at her new firm.

84.     Taylor also promised that she would not solicit Fidelity customers for a period of one year after her termination.  Exhibits D and E to the Marshall Declaration at ¶ 6.

85.     Taylor breached the non-solicitation provision of her Employee Agreements by using her knowledge of Fidelity's customer information to solicit Fidelity customers to transfer their business to Taylor at Fairhaven.

86.     Taylor is violating her contractual obligations and will continue to violate these obligations in the future.

87.     As a consequence of the foregoing, Fidelity has suffered and will continue to suffer irreparable harm for which it lacks an adequate remedy at law, as well as present economic loss and other incalculable financial loss.

88.     In her Employee Agreement, Taylor expressly agreed that "violation of this Agreement will cause irreparable damage" to Fidelity.  Exhibits D and E to the Marshall Declaration at ¶ 10.

FP 38823217.3

89.     Unless Taylor is enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, and other trade secret confidential information that is solely the property of Fidelity and its customers;

(b)     Use of Fidelity's trade secrets to solicit customers on behalf of a competitor;

(c)     Loss of confidentiality of clients' trade secret records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(d)     Potential future economic loss, which is presently incalculable.

## THIRD CAUSE OF ACTION

**(Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act – 18 U.S.C. § 1831 *et seq.* – Against All Defendants)**

90.     The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

91.     The above-alleged facts constitute actual and threatened misappropriation of trade secrets by Defendants in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, in one or more of the following respects.

92.     Fidelity's above-described trade secrets, including the contact and confidential financial and account information of Fidelity customers, are the subject of reasonable efforts by Fidelity to maintain their secrecy and/or confidentiality.  Fidelity's customer information is not generally known to the public or to competitors who could profit from its use or disclosure.

93.     Defendants have used Fidelity's customer information without Fidelity's consent. Defendants engaged in this conduct despite the fact that Taylor acquired this information under

FP 38823217.3

circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Taylor owed and continues to owe Fidelity as a former agent, employee and representative of Fidelity. Fairhaven for its part acquired its access to Fidelity's trade secrets from Taylor, who Fairhaven knew had acquired it under circumstances giving rise to a duty to maintain the information's secrecy, and to limit its use and disclosure to any third party, including especially a competitor.

94.     Such information is also protected as "non-public" information under federal securities Regulation S-P. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u). Accordingly, Fidelity is required by federal statute to ensure that non-public customer contact, financial, and account information such as that misappropriated by Defendants is not disclosed to third parties without consent. 17 C.F.R. § 248.10.

95.     Fidelity derives a significant economic benefit from the above-described trade secrets, including a benefit from the fact that its competitors do not have access to this information through any proper means.

96.     Fidelity faces an immediate threat of continuing irreparable harm, for which Fidelity lacks an adequate remedy at law, from Defendants' ongoing misappropriation and misuse of Fidelity's trade secret customer information.

97.     Unless Defendants are preliminarily, and thereafter permanently, enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

> (a)     Disclosure of trade secrets, customer lists, and other trade secret confidential information that is solely the property of Fidelity and its customers;

19

(b)     Use of Fidelity's trade secrets to solicit customers on behalf of a competitor;

(c)     Loss of confidentiality of clients' trade secret records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(d)     Potential future economic loss, which is presently incalculable.

98.     Defendants' conduct constitutes a willful and malicious misappropriation of Fidelity's trade secrets.

## FOURTH CAUSE OF ACTION

**(Misappropriation of Trade Secrets and Misuse of Confidential Information in Violation of the Illinois Trade Secret Act, 765 Ill. Comp. Stat. 1065 – Against All Defendants)**

99.     The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

100.     As described above, Fidelity possessed trade secrets, including the contact and confidential financial and account information of Fidelity customers, which are the subject of reasonable efforts by Fidelity to maintain its secrecy and/or confidentiality.

101.     Defendants have used Fidelity's trade secret customer information without Fidelity's consent.  Defendants engaged in this conduct despite having a duty to maintain the information's secrecy and limit its use, or receiving it from a person who had that duty.

102.     Plaintiff derives economic value from this confidential information, due to it not being generally known to other persons who could obtain economic value from its disclosure or use.

103.     Plaintiff has made efforts that are reasonable under the circumstances to maintain the secrecy of such information.

FP 38823217.3

104.    Defendants are misusing this information to unfairly compete with Plaintiff and to injure Plaintiff's relationships with its clients and/or divert the investment advisory business of such clients to Fairhaven.

105.    The disclosure and misuse of such information constitutes a misappropriation of trade secrets in violation of applicable law, including the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065.

106.    Defendants' conduct constitutes a willful and malicious misappropriation of Fidelity's trade secrets and has caused Plaintiff irreparable harm, loss and damages.

## FIFTH CAUSE OF ACTION
### (Unfair Competition – Against All Defendants)

107.    The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

108.    Defendants' conduct as described above constitutes an unfair method of competition.

109.    As a direct and proximate result of Defendants' conduct, Fidelity has suffered and will continue to suffer financial loss, loss of goodwill, and irreparable loss of the confidentiality of client information, as well as the loss of proprietary firm information and trade secrets.

## SIXTH CAUSE OF ACTION
### (Breach of Duty of Loyalty – Against Taylor)

110.    The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

111.    Taylor had, and continues to have, a common law duty of loyalty arising as a result of her relationship as an employee, agent and/or representative of Fidelity.

112.    Taylor had a confidential relationship with Fidelity.

21

113.     Taylor is now using for her own benefit the confidential customer information she gained as a result of her employment with Fidelity, and is doing so for the improper purpose of commercially exploiting that information to enable herself and other Fairhaven personnel to solicit Fidelity clients to transfer their investment advisory business to Fairhaven.

114.     As a consequence of the foregoing, Fidelity has suffered and will continue to suffer irreparable harm, loss and damages.

## SEVENTH CAUSE OF ACTION
**(Tortious Interference with Existing Business Relations – Against Fairhaven)**

115.     The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

116.     Defendant Fairhaven either knew or reasonably should have known that Taylor had an employment agreement with Fidelity.

117.     Fairhaven tortiously interfered with Fidelity's employment agreements and relationship with Taylor by encouraging, assisting and inducing her to breach her agreements by taking customer information, disclosing it to Fairhaven, and using it to solicit Fidelity's customers to transfer their accounts to Fairhaven.   Fairhaven further instructed and/or permitted its employee to misuse that misappropriated information to solicit Fidelity clients on behalf of and in concert and participation with Taylor, aiding and abetting Taylor's breach of her obligations to Fidelity.

118.     As a direct and proximate result of Fairhaven's conduct, Fidelity has suffered and will continue to suffer financial loss, loss of goodwill, and irreparable loss of the confidentiality of client information, as well as the loss of proprietary firm information and trade secrets.

## EIGHTH CAUSE OF ACTION
**(Tortious Interference with Existing Business Relations – Tortious Interference)**

22

119.    The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

120.    Defendants tortiously interfered with Fidelity's client relationships by planning to and in fact soliciting clients to move their accounts to Taylor at Fairhaven, including through the wrongful use of Fidelity's confidential information and trade secrets.

121.    As a direct and proximate result of Defendants' conduct, Fidelity has suffered and will continue to suffer financial loss, loss of goodwill, and irreparable loss of the confidentiality of client information, as well as the loss of proprietary firm information and trade secrets.

122.    Fidelity is entitled to preliminary injunctive relief, and thereafter permanent injunctive relief, enjoining Defendants from further acts of tortious interference.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment – Against All Defendants)

123.    The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

124.    Defendants misappropriated Fidelity's trade secrets and confidential information, Taylor violated her Employee Agreements, and both Defendants unfairly competed with Fidelity, thereby wrongfully benefitting from their actions.

125.    As a result of Defendants' wrongful and illegal conduct, they have benefitted in the form of the diversion of the investment management business of numerous Fidelity customers to Taylor at Fairhaven.  Also as a result of the Defendants' wrongful and illegal conduct, Fidelity has suffered harm.

126.    Allowing Defendants to benefit from such conduct would be unfair and inequitable, and should be prohibited.

FP 38823217.3

## TENTH CAUSE OF ACTION

### (Civil Conspiracy – Against All Defendants)

127.     The allegations above are incorporated herein by reference with the same force and effect as if set forth in full below.

128.     Defendants formed and operated a malicious combination with a common purpose to injure Fidelity by performing unlawful acts by violating Fidelity's statutory and common law rights as described above.

129.     The foregoing conduct was malicious and willful; it was performed with the specific intent to injure Fidelity.

130.     One or both of the Defendants in fact engaged in several overt unlawful acts, set forth above, and conduct violative of Fidelity's statutory and common law rights as described above, causing actual harm to Fidelity.

131.     As a consequence of the foregoing, Fidelity has suffered and will continue to suffer financial loss, loss of goodwill, and irreparable loss of the confidentiality of client information, as well as the loss of proprietary firm information and trade secrets.

## PRAYER FOR RELIEF

For the reasons set forth above, Fidelity respectfully requests that the Court grant:

1.     Injunctive relief (a) enforcing Taylor's contractual obligations, and (b) prohibiting any further misuse or commercial exploitation by Defendants of Fidelity's confidential trade secret customer information;

2.     Injunctive relief ordering Defendants and anyone acting in concert with Defendants to return to Fidelity (a) any and all records, information and/or documents in any form containing information pertaining to customers or prospective customers of Fidelity whom Taylor served or whose name became known to Taylor while in the

24

employ of Fidelity, (b) any and all copies of the foregoing, (c) all records, information or documents, in any form, created by Taylor, or anyone acting in concert with her, based on documents or information that were received or removed from Fidelity by Taylor, (d) any list of Fidelity customer names that may have been created or recreated by Taylor from memory, and (e) any documents or information derived from a list created or recreated by Taylor from memory, or derived from any of the documents or information described in items (a) through (c) of this paragraph 2;

3.      Awarding against Fairhaven and in favor of Fidelity (a) compensatory damages, (b) punitive damages, (c) exemplary damages as authorized by statute, and (d) attorneys' fees and costs as authorized by statute and/or contract; and

4.      Any and all additional relief the Court deems just and equitable under the circumstances.


Dated: October 21, 2020                   Respectfully submitted,

                                          FISHER & PHILLIPS LLP

                                          /s/ Joel W. Rice
                                          Joel W. Rice
                                          Franklin Z. Wolf
                                          10 South Wacker Drive, Suite 3450
                                          Chicago, IL 60606
                                          TEL: (312) 346-8061
                                          FAX: (312) 346-3179
                                          jrice@fisherphillips.com
                                          fwolf@fisherphillips.com

                                          *Attorneys for Plaintiff*

FP 38823217.3

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FIDELITY BROKERAGE SERVICES LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. |
| | : | |
| JENNIFER TAYLOR, | : | |
| | : | |
| Defendant. | : | |

## DECLARATION OF SCOTT MARSHALL

I, Scott Marshall, declare pursuant to 28 U.S.C. §1746:

1.  I am over the age of 18.  All statements in this declaration are based on my personal knowledge, or, where indicated, based on my investigation.  I submit this Declaration on behalf of Plaintiff Fidelity Brokerage Services LLC ("Fidelity") in support of its Motion for a Preliminary Injunction.

2.  I am a Vice President/Branch Office Manager for the Oak Brook, Illinois Branch Office of Fidelity Brokerage Services LLC ("Fidelity").

3.  I have been employed by Fidelity for over twenty years.  I began my employment with Fidelity in February of 2000 and have been the Branch Office Manager for the Oak Brook, Illinois Branch Office since 2018.

4.  Prior to her resignation from Fidelity, Defendant Jennifer Taylor ("Taylor") worked as a Vice President, Financial Consultant in Fidelity's Oak Brook, Illinois Branch Office.  In my capacity as the Branch Office Manager, I supervise Financial Consultants in the Branch.

5.  As a Financial Consultant at Fidelity, Taylor was assigned to service and manage Fidelity's relationship with a select group of Fidelity's customers.  The customers serviced by

Taylor were primarily high net worth households with, on average, over a million dollars in assets under management at Fidelity.   By the time of her resignation, Taylor had daily access to and had gained knowledge of confidential Fidelity information relating to approximately 425 households, representing over $1.1 billion in customer assets under Fidelity management.

6.   Fidelity vigilantly preserves its trade secret customer data so that it does not become available to competitors who could use the data to divert customers, without the investment of time, labor, and capital that Fidelity made to compile the information.  Fidelity does not provide its trade secret customer data to competitors.  Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are provided with such access.

7.   Fidelity also maintains and advises its employees of a Global Policy on Information Protection that is displayed on Fidelity's intranet.  A true and correct copy of Fidelity's Global Policy on Information Protection is attached hereto as Exhibit A.  Fidelity periodically reminds its employees of this policy and provides employees with a Quick Reference Card ("QRC") explaining how to protect specific types of Fidelity confidential information.  A true and correct copy of Fidelity's QRC is attached hereto as Exhibit B.

8.   Fidelity further protects this confidential information by using various safeguards for its computer system on which the information is stored and through which it is constantly updated.  Employees such as the Defendant require passwords to access the Fidelity computer system.

9.   Fidelity additionally preserves trade secret customer data by requiring each employee to execute a standard Fidelity Employee Agreement.  Fidelity records indicate that Defendant Taylor executed Fidelity's Employee Agreement in September of 1999.  A copy of

Taylor's September 1999 Agreement is attached as Exhibit C.  Taylor renewed her promises by signing off on the Employee Agreement again on June 30, 2011.   A copy of Taylor's June 30, 2011 Agreement is attached as Exhibit D.

10. In her Employee Agreements, Taylor acknowledged the confidentiality of Fidelity's records, including Fidelity's customer lists and customer information, promised that she would not use or disclose that information for any reason other than performing her duties on behalf of Fidelity, and promised that he would "upon termination … return all company property … including but not limited to Confidential Information."  Exhibits C-D, paragraphs 1, 3.

11. As consideration for these agreements Defendant executed, Fidelity hired, employed and promoted Defendant, compensated her throughout her employment, provided her with introductory and continuing on-the-job training and education, and allowed her to access confidential customer information.  In addition to assigning customers to Defendant to service, Fidelity also provides Financial Consultants, including the Defendant, with the resources to enable them to service customers at Fidelity, including support services, market reporting services, research, sales assistance, access to and use of experts in asset management, tax, estate planning and insurance, and all other requirements necessary to best perform their job for Fidelity's customers.  Fidelity also registered the Defendant with the New York Stock Exchange and Financial Industry Regulatory Authority ("FINRA").

12. On Fidelity's behalf, Taylor had repeated, regular communications with customers.  As such, like all Financial Consultants, Taylor became the face of Fidelity to the customers she was assigned to service and, because of the nature of the interactions, became Fidelity's direct link to these customers.  Taylor's misuse of Fidelity confidential customer information to unfairly

compete with Fidelity poses a serious risk to Fidelity's retention of its business, as well as the confidence of its customers.

13. On March 6, 2020, Taylor resigned from Fidelity, effective immediately, to join Fairhaven Wealth Management, LLC ("Fairhaven"), a direct competitor of Fidelity. A true and correct copy of her resignation letter is attached hereto as Exhibit E.

14. At the time that Taylor resigned, she was sent a letter from Fidelity's HR department reminding her of her post-employment obligations pursuant to her Employee Agreement and enclosing a copy of the Agreement. A copy of the March 14, 2020 letter is attached hereto as Exhibit F.

15. Since Taylor resigned from Fidelity, we have been receiving reports that she – and representatives from her new firm acting on her behalf - have been soliciting Fidelity customers to transfer their business to Fairhaven.

16. In fact, one client reported that Taylor solicited him, and set up an appointment for him to come meet with her at her new firm, before she even resigned. After Taylor resigned, Fidelity representatives were assigned to service the customers that were previously serviced by Taylor. In a meeting with the new Financial Consultant, the customer reported that during his last meeting with Taylor, while she was employed at Fidelity, she set up a meeting for him at her new firm. Taylor also told the client that he would be able to leave his assets at Fidelity but Taylor would be able to add her name to their account and provide financial advice.

17. Another client reported to her new Financial Consultant that she received a call from the firm that Taylor joined and the person said that she was calling on Taylor's behalf. The employee from Taylor's new firm, Fairhaven, then asked the Fidelity client to consolidate her assets and transfer them to Taylor at her new firm. The client was not happy that someone called

her and wanted to make sure that Fidelity was aware that this was being done by Taylor and her new firm.

18. Other clients also reported to Fidelity that Taylor had been contacting them about doing business with her at her new firm.

19. Accordingly, Fidelity's in-house counsel sent Taylor a letter reminding her of her contractual obligations, enclosing a copy of her Employee Agreement, and demanding that she cease any further solicitation of Fidelity customers. Fidelity also enclosed an affidavit for her to sign attesting that she did not have, or had returned, any of its customer information. A copy of Fidelity's March 20, 2020 letter to Taylor is attached as Exhibit G.

20. Taylor never responded to the letter and never returned the signed affidavit.

21. Fidelity has since learned that Taylor has continued to use Fidelity's trade secret

customer information to aggressively solicit customers to transfer their accounts to her new firm.

22. In fact, a client reported that earlier this week someone from Taylor's new office reached out to him. The person from Taylor's new firm told the Fidelity client where she now worked and said Taylor "would like to meet with him." The client reported this solicitation by Taylor to his new Fidelity representative.

23. The theft and misuse of Fidelity's trade secret customer information to solicit and unfairly compete with Fidelity causes Fidelity both monetary and irreparable harm. Fidelity is irreparably harmed by the actual and threatened loss of customers and customer goodwill caused by unauthorized use of Fidelity's customer information. Fidelity customers have an expectation that their confidential contact and financial information will be protected and not taken or used by departing employees. In fact, in this case, one of the Fidelity customers already reported this to Fidelity because she was concerned that a Fidelity representative was contacting her and using her information at a new firm.

24. Unlike some other brokerage companies, Fidelity does not obtain from its customers the right to use or disclose their information outside of Fidelity. The damage to Fidelity's customer relationships is therefore incalculable as Fidelity cannot put a price on the value of its customer relationships or the damage caused when the Defendant improperly misused confidential customer information on behalf of a competitor.

25. Nor can Fidelity calculate the financial loss it may suffer from the loss of any given account resulting from Defendant's wrongful conduct, because there is no way to know for how long Fidelity might have otherwise retained that client, nor how much business that client might have done with Fidelity or referred to Fidelity in the future had they not been wrongfully solicited by the Defendant.

I declare under penalty of perjury that the foregoing is true and correct.

SCOTT MARSHALL

# EXHIBIT A

Case 1:20-cv-02133 Document #: 61-1 Filed: 04/03/20 Page 34 of 66 PageID #:739

| | Fidelity Enterprise Cybersecurity |

# Corporate Information Protection Policy
## Securing Private and Proprietary Information (SP2I)

Published Date: 3/20/2020
Version: 9.4
Owners: Scott Sabens / Jim Robert / Michele Pittman
Last Review Date: 9/30/2019
Next Review Date: 9/30/2020

Corporate Information Protection Policy

## Contents

I. Summary ........................................................................................................................................1

    Purpose ........................................................................................................................................1

    Scope ............................................................................................................................................1

II. Classifying Fidelity Information ...................................................................................................1

    Fidelity Public Information (Public) ..............................................................................................1

    Fidelity Internal Information (Internal) ........................................................................................1

    Fidelity Confidential Information (FC) ..........................................................................................2

    Fidelity Highly Confidential Information (FHC) ............................................................................2

    Changing Classification Levels .....................................................................................................2

    Reviewing Assigned Classifications ..............................................................................................2

III. Labeling Fidelity Information .....................................................................................................2

    Forms and Documents .................................................................................................................2

    Websites ......................................................................................................................................2

    Special Circumstances .................................................................................................................2

        Legally Privileged Communications ..........................................................................................2

        Information with Mixed Classifications ....................................................................................2

        Unlabeled Information .............................................................................................................3

        No Label Required ...................................................................................................................3

        Out of Scope Information .........................................................................................................3

IV. Handling Fidelity Information ....................................................................................................3

    Avoid Accidental Information Disclosure ....................................................................................3

    Protect Information on Electronic Media and Portable Devices ...................................................4

    Store Information Securely ...........................................................................................................4

        Confidential and Highly Confidential Information Only ............................................................4

        Additional Precautions When Working Outside the Office ......................................................4

    Encrypt Fidelity Information ........................................................................................................5

    Report Known or Suspected Information Loss or Disclosure .......................................................5

    Protect Personal Information .......................................................................................................5

    Secure Physical Devices Outside the Office .................................................................................6

        Hotel Rooms ...........................................................................................................................6

        While Traveling .......................................................................................................................6

        Personal Workspaces ..............................................................................................................6

V. Disposing of Fidelity Information ................................................................................................6

VI. Vendor Use of Personal Information ..........................................................................................6

VII. Information Protection Roles and Responsibilities ....................................................................6

    Managers .....................................................................................................................................6

    Information Security Officers (ISOs) .............................................................................................7

    Information Owners .....................................................................................................................7

VIII. Additional Resources ...............................................................................................................7

IX. Contacts ....................................................................................................................................7

## I. Summary

### Purpose

You are responsible for classifying and labeling the Fidelity information you use or encounter. Proper information classification, labeling, and handling are integral to Fidelity's business. By following this policy, you help protect Fidelity from legal and financial liability as well as regulatory and reputational risk.

Assigning the right classification is essential. A too-low classification puts sensitive information at risk. A too-high classification, while generally less damaging, can still be harmful since it restricts access and forces you and others to take excessive security precautions. If you think something is classified incorrectly, notify the person or office from whom you received the information.

Applying this policy requires both knowledge and judgment on your part. In some cases, it may be appropriate to assign a higher classification than a document would otherwise receive.

Fidelity Enterprise Cybersecurity (ECS) policy is intended to protect the firm in an evolving threat landscape, regardless of changes in technology or business practices. Even if specific terminology or scenarios are not part of the text, it is expected that you will exercise sound reasoning and judgment to adhere to the intent of stated requirements, practices, and implementations in both letter and spirit.

Your business unit (BU) may have additional requirements concerning information security. Understanding and following them is your responsibility. Ask your manager or your BU's Information Security Officer (ISO). Some non-U.S. companies may have their own versions of this policy; be aware of potential policy differences when working with companies in other countries.

### Scope

This policy applies to the Fidelity workforce as defined in the Employee Classification Definitions document.

## II. Classifying Fidelity Information

You are responsible for making sure that Fidelity Information is accurately labeled with the correct classification. Even if a document is already labeled, make sure the classification is correct. Fidelity information must be assigned one of the four classifications described below. Classification levels are based on risks to business operations and business reputation and the potential for financial loss to Fidelity, associates and customers. For examples of each classification, see the Information Protection (SP2I) Policy Quick Reference.

### Fidelity Public Information (Public)

Public information is intended for general circulation inside and outside Fidelity. Public circulation of the information would not expose Fidelity to any reputational risk, financial loss, or competitive disadvantage.

Items classified as Public do not require a SP2I label (although they can be labeled if desired) and they do not require any special handling. You must get approval before classifying any information as Public.

- For marketing materials and items distributed to customers, use the process approved for your BU (e.g., eReview)
- For presentations, publications, and speeches, consult the Global External Communications Policy
- For other items, contact Corporate Legal

### Fidelity Internal Information (Internal)

Fidelity internal information is intended for relatively unrestricted circulation inside Fidelity during the normal course of business, including, as appropriate, consultants, vendors, or temporary workers.

Unauthorized access, disclosure, use, or tampering could have a minor adverse effect on the confidentiality or integrity of the information, or could otherwise cause minor impact to Fidelity, Fidelity associates or customers.

Within the Internal Information category, computer source code may require more protective measures than other types of information. See Protection of Source Code in the Secure Software Development Lifecycle (SSDLC) Standard.

## Fidelity Confidential Information (FC)

Fidelity confidential information is Intended for individuals and groups with a business need to know. Unauthorized access, disclosure, use, or tampering could have a moderate adverse effect on information confidentiality or integrity, or could otherwise moderately impact Fidelity, our associates, or our customers.

## Fidelity Highly Confidential Information (FHC)

Fidelity highly confidential information is data that, if compromised, may have a severe impact on Fidelity, its customers, vendors or employees. Unauthorized access, disclosure, use, or tampering could have a severe adverse effect on information confidentiality or integrity or could otherwise severely impact Fidelity, our associates, or our customers.

Within the Highly Confidential category, some types of information require more protective measures than others.

## Changing Classification Levels

Sometimes information needs to be reclassified. For example, a product announcement might be Highly Confidential while in development, but Public once it is released. Make sure the information owner approves any reduction in classification level. Anything classified as Public requires necessary approvals described in this policy.

## Reviewing Assigned Classifications

Information owners should periodically review the risk classifications of resources for which they are responsible, to ensure that the assigned classification levels are still appropriate.

## III. Labeling Fidelity Information

Label Fidelity information under your control. Use the full label text for the classification:

- Fidelity Internal Information
- Fidelity Confidential Information
- Fidelity Highly Confidential Information

If you are in doubt as to the correct label text, contact your ISO. Except as noted, Fidelity information must be clearly labeled with an SP2I classification, as follows:

## Forms and Documents

These requirements apply to both hardcopy and electronic formats:

- Frequency: every page or slide, including cover/title page
- Preferred location: header or footer
- Forms are labeled according to the contents included in the completed form.

## Websites

- Frequency: every page, including home page
- Preferred location: header or footer

## Special Circumstances

**Legally Privileged Communications**

Any print and electronic materials with information that may be protected by attorney-client privilege must be labeled "Attorney-Client Communication" in addition to the SP2I classification label.

**Information with Mixed Classifications**

When information of different classifications is combined, the resulting materials must be classified and handled according to the most restrictive classification.

**Unlabeled Information**

If you encounter Fidelity information that appears to require an SP2I label but does not have one, add the correct label or contact the information owner and request them to do so. [1]

**No Label Required**

No SP2I label is required on the following:

- Materials approved for classification as Public
- Materials intended for end customer use (such as account statements)
- Participant reports and other client data requested by clients or intended for their use; however, alternative labeling may be required if a client has requested it
- Materials received from end customers
- Vendor or other third-party information already labeled by the vendor or other source
- Information stored or handled by legacy applications and systems that lack the capacity for SP2I labeling
- Non-business information

**Out of Scope Information**

Information that does not concern Fidelity business in any way (e.g., an email to a family member about childcare arrangements) is considered non-Fidelity information and falls outside the scope of this policy.

## IV. Handling Fidelity Information

Proper handling depends on the information's classification and labeling. The following rules outline both general and specific methods for using, storing, transmitting, and reproducing information. Rules in this section that apply only to Confidential and Highly Confidential Information are identified as such.

### Avoid Accidental Information Disclosure

With every Fidelity information classification other than Public, follow these precautions:

- Keep discussions behind closed doors when possible. Use caution when discussing information in public places such as restaurants or elevators.
- Be aware of who or what is within earshot. Unauthorized listeners or devices (e.g., Amazon Echo, Google Home, and cell phones) may be present at any given time, even in an office environment.
- Erase whiteboards when leaving conference rooms or open spaces.
- Limit distribution to those who need to know. Keep access and distribution to the smallest set of recipients possible without eliminating necessary or appropriate recipients. Review addressees (both on email and physical mail) prior to distributing information. The more sensitive the information, the more restricted the distribution list should be.
- Outside Fidelity, share information with qualified parties only. Do not share information with vendors or other external parties unless you are sure that they already have an established relationship with Fidelity and are subject to a non-disclosure agreement (NDA) or are otherwise restricted from disclosing the information to others. An NDA is required[2] if sharing data for contract negotiation purposes, proof of

---

[1] Any Fidelity company that is not known to a customer as "Fidelity" (e.g., Devonshire Investors – Diversified Investments) may substitute its company name in place of Fidelity in the label.

[2] The requirement regarding being bound by an NDA, contract, or other obligation of confidentiality may not apply in certain cases:

  (a) if Fidelity is legally obligated to provide non-public Fidelity information to an external party –in these situations, consult with Legal;

  (b) for Corporate Policies and similar non-public Fidelity information, if reasonable assurance exists that the recipient will restrict distribution to those with a business–related or legal "need to know" (e.g., applicable corporate policies may be provided in response to a request from a former employee, or requests from or proposals to business partners, clients, or prospects). Contact HR Solutions/Employee Relations at (800) 835-5099, Option 2 for questions on external party access

concept demonstrations based on a request for proposal (RFP), source code sharing for pilot projects, and pre-contract due diligence reviews. If a vendor will have access to personal information, make sure that a Fidelity Vendor Technology Risk (VTR) assessment has been performed and that the vendor has a contract (not just an NDA) in place with appropriate confidentiality and data security obligations. See the Corporate Policy on Vendor Privacy Oversight.

- Never share passwords and never store passwords (on paper or electronically) where someone could find and use them.
- Be careful when printing or copying. Use one of the following:
  - o Internal printer
  - o Approved print service (internal or external)
  - o Personally, supervise printing on other printers (such as at home or while traveling)

Don't let sensitive information lie unattended in fax machines, printers, or copier trays and don't forget to take your originals with you. Securely dispose of any unwanted copies.

Don't print Highly Confidential information unless you have a business need and are authorized to do so.

Note: Incidental and occasional use of Fidelity resources to print your own personal information, such as tax statements or performance reviews, is acceptable.

Don't leave Fidelity Information, including Confidential or Highly Confidential Information, unsecured in your workspace. This includes your assigned desk, unassigned desk, common/shared areas, and conference rooms.

Don't photograph or make video recordings of Confidential or Highly Confidential information displayed on computer screens.

## Protect Information on Electronic Media and Portable Devices

Employees who use electronic media (such as CDs and USB devices) or portable electronic devices (such as laptops and PDAs) are responsible for the security of the Confidential and Highly Confidential Information contained on them. Because it can be difficult to know whether electronic media or devices contain such Information, always treat electronic media and devices as if they contain Highly Confidential Information. Make these steps part of your routine:

- Keep electronic media on your person or in sight while traveling or any other time they cannot be physically secured.
- Secure electronic media in a locked drawer or locked office when they are not in your immediate possession.
- Secure laptops outside Fidelity facilities.

Related requirements for Fidelity mobile devices are detailed in the Global Policy on Electronic Communications, Social Media, and Systems Usage.

## Store Information Securely

### Confidential and Highly Confidential Information Only

For Confidential and Highly Confidential Information, store hard copies in a locked office, filing cabinet, or other facility accessible only to authorized individuals. Information on websites, file servers, or approved document repository services (e.g., EDMS, SharePoint) must be protected by access controls.

Highly Confidential Information must remain within Fidelity premises unless there is a specific business reason for it to circulate or be transported outside Fidelity.

### Additional Precautions When Working Outside the Office

When working at home or at another remote location, safeguard Fidelity media as carefully as you would in the office or when traveling. Make sure no one else in your location can access Fidelity information. Use security

---

to Corporate Policies. Contact Procurement for NDAs and questions on external party access for business purposes at http://spendsmart.fmr.com

controls outlined in the Flexible Work Options Policy for guidance. Save non-public Fidelity information only to approved media, devices and systems in accordance with the [Global Policy on Electronic Communications, Social Media, and Systems Usage](#).

Local Administrator rights on Fidelity devices and systems are restricted to reduce the likelihood of introducing viruses or malware into the Fidelity network. Downloading software and adding printers or other peripheral devices outside the office must be coordinated with Techworks or a local IT contact.

## Encrypt Fidelity Information

Refer to the encryption information on the [Email Security](#) page or consult with your BU's ISO for current supported email and file encryption tools. For system-to-system communications, data storage, and password administration, system administrators should consult applicable ECS policy on the [ECS Policy Website](#).

Encryption Guidelines for Confidential and Highly Confidential Information

Where BUs have determined a technology solution to be effective and acceptable to external entities with which Fidelity information is shared, use encryption for:

- PINs and passwords that are being transmitted or stored
- Confidential or Highly Confidential Information stored on removable media
- Any transmission, including email, of Confidential or Highly Confidential Information outside the Fidelity network
- Fidelity employee compensation and performance data that is being emailed, whether within Fidelity or externally

You must use only Fidelity-approved encryption methods. To select an appropriate encryption tool, see the list of approved encryption technologies in the [Encryption Standard](#).

Encryption Guidelines for Cloud (IaaS/PaaS/CaaS) Information

Where BUs have determined an IaaS/PaaS/CaaS solution to be effective and acceptable for external entities with which Fidelity information is shared, comply with the following encryption requirements:

- Data-in-transit – Encrypt at all times in the IaaS/PaaS/CaaS using Fidelity-managed or approved third-party-issued certificates (e.g., Akamai or Entrust)
- Data-at-rest – Encrypt at all times in the IaaS/PaaS/CaaS using Fidelity-managed keys
- BU's must work within defined encryption guardrails for certified services depending on the data classification. Data protection requirements for each service can be found in the configuration guide for that service.

Where IaaS/PaaS/CaaS encryption services provided are not adequate, BU's must use client-side encryption.

## Report Known or Suspected Information Loss or Disclosure

Notify your ISO or Corporate Security of any known or suspected information loss or disclosure. This includes cases of access by unauthorized parties as well as circumstances that might have allowed such access (e.g., sending an unencrypted email containing Confidential or Highly Confidential Information). Report incidents immediately.

## Protect Personal Information

The Fidelity workforce has a duty to protect personal information. For this policy, personal information is considered Highly Confidential. This includes lists containing customer information. Exceptions to some handling requirements for personal information may be warranted by context or circumstance. Consult with the information owner, your manager, and ISO for guidance regarding appropriate handling, disposal, and other controls. Use sound judgment and assess risk when working with personal information.

Some employee personal information, such as business contact information and employee photos, is considered Internal. To find out which employee personal information is considered Internal Information, see the [Global Employee Personal Information Privacy Notice & Policy.](#)

Additional legal requirements may apply to personal information transmitted to or from other countries or

global regions (such as the European Union). Check with [Compliance](#) or [Corporate Legal](#).

For logging and masking personal information before use in a test environment, see the [Database Standard](#) and [Secure Software Development Lifecycle (SSDLC) Standard](#).

## Secure Physical Devices Outside the Office

### Hotel Rooms

When travel includes a hotel stay, Fidelity associates must take reasonable precautions to prevent theft or loss, such as cable-locking devices or storing them in room safes.

### While Traveling

Fidelity associates must take reasonable precautions to prevent theft or loss of devices and data while traveling:

- Keep laptops or devices securely in hand or within sight when they cannot be physically secured.
- Do not check mobile devices as luggage unless directed to do so by the airline and/or as a result of a government directive. If not required to check an item, it should remain in your possession as hand luggage.
- If you are not allowed to keep the device in your possession, power it off before checking it through to your destination. See the section on Encryption on Mobile Devices and Portable Media in the Encryption Standard for additional guidance.
- If you must leave a laptop or device in a vehicle, shield the device from view (e.g., stow it in the trunk) and lock the vehicle.

### Personal Workspaces

Access to Fidelity-owned devices at your home office or other personal workspace must be limited to yourself. Family members, friends, and other non-Fidelity personnel are not allowed to use your Fidelity devices.

## V. Disposing of Fidelity Information

Fidelity information must be disposed of at the right time and in the right way with the following in mind:

- Applicable record retention requirements
- Whether the information is subject to a legal hold (documents subject to a legal hold must not be altered or destroyed)
- SP2I classification
- Type of media or device involved
- BU-specific processes

For more information about disposal practices at Fidelity, see the Information and Device Disposal TIG.

## VI. Vendor Use of Personal Information

Fidelity vendors with access to personal information must meet Fidelity's standards for protecting such information. Providing such information to a new vendor or vendor not currently receiving personal data prior to a completed Vendor Technology Review (VTR) (based on requirements and permissible exclusions as established in VTRs) is not allowed. A contract that obligates a vendor to maintain personal information confidentiality and security must be in place prior to providing such information to the vendor, including employee information classified as internal.

## VII. Information Protection Roles and Responsibilities

### Managers

Managers communicate, support, and help enforce the policy. Managers are responsible for understanding this policy and helping communicate and enforce its terms. Managers should contact HR Solutions (or their local equivalent) to determine how best to address violations.

Managers take responsibility for proper information handling by departing employees. When an employee

terminates, transfers, or relocates, their manager ensures that the employee disposes of documents and materials in accordance with this policy. Any tasks left undone by the departing employee are the manager's responsibility to rectify.

## Information Security Officers (ISOs)

ISOs interpret and administer the policy at the BU level. They are responsible for translating policy into specific controls that are appropriate and effective for their respective BU's.

ISOs are responsible for helping their assigned BU implement enterprise security programs related to this policy. They are also expected to guide and assist individual employees with policy understanding and compliance.

## Information Owners

Information owners periodically review data classifications. Information and application owners periodically review risk classifications of resources for which they are responsible to ensure appropriateness of the assigned classification level.

Information owners may delegate their responsibilities; however, accountability remains with the information owner. Information owner responsibilities include:

- Mandating information security policy and control implementation
- Authorizing and periodically reviewing access entitlements
- Ensuring resolution of information security-related audit issues
- Delegating authority as required within their business area to complete tasks
- Periodically reviewing information classifications of resources under their control
- Maintaining an inventory of information resources (e.g., data, hardware, software) under their control

## VIII. Additional Resources

Fidelity offers information protection training courses for new associates as well as a refresher course that all associates must take each year.

Information Protection eLearning Course for New Associates

Information Protection eLearning Annual Assessment

## IX. Contacts

Please contact the document owner, your manager, or your ISO with any questions related to this policy.

# EXHIBIT B

# Information Protection Policy (SP2I) Quick Reference
## Classify and Label

| CLASSIFICATION | | | |
|---|---|---|---|
| **Public**<br>Information released for public use.[1] Explicit approval is needed before assigning this classification. | **Fidelity Internal**<br>Information that is typically available to all Fidelity employees. | **Fidelity Confidential**<br>Sensitive information, available only to those with a business "need-to-know." | **Fidelity Highly Confidential (HC)**<br>High-risk information that requires strict controls. |
| **Label** Optional. Examples include:<br><br>• Brochures, published marketing materials<br>• Press releases<br>• Articles in the press<br>• Public websites<br>• Stock quotes<br>• Regulatory and legal filings<br>• Published annual reports<br>• Published fund prospectuses<br>• Code contributed to Open Source<br>• Released patents | **Label** Required. Examples include:<br><br>• Employee contact information (for example, name or email)<br>• Organization charts<br>• Basic emergency response plans<br>• Fidelity policies and procedures<br>• *Fidelity Central* and internal newsletters<br>• Employee web/intranet portals<br>• Fidelity training materials<br>• General business correspondence with no customer/employee data | **Label** Required. Examples include<br><br>• Unreleased fund holdings/trades<br>• Grant information<br>• Account numbers<br>• Customer employee ID<br>• Plan/client data<br>• Pre-release marketing materials<br>• Non-public legal work and litigation information<br>• Budget information and non-public financial statements<br>• Business strategies and plans<br>• Purchasing/bid information<br>• Audit reports<br>• Security findings or reports (e.g., SOC-1)<br>• Most Fidelity source code (see Source Code Quick Reference for details)<br>• Non-security technical specifications/architectures<br>• External IP addresses<br>• Money movements<br>• Systematically generated IDs (e.g., Member IDs (MIDs) and Workplace IDs (WIDs)) | **Label** Required. Examples include:<br><br>• Passwords and PINs<br>• System credentials<br>• Social Security Numbers<br>• Customer personally identifiable information (PII) (e.g., name with external IP address, email, phone number, HR data, HIPAA data or account number)<br>• Credit card numbers<br>• Compensation data<br>• Performance reviews<br>• Proposed acquisitions, ventures, and divestitures<br>• Security system architectures and procedures<br>• Reports of significant exposures, risk assessments, and penetration test results<br>• Highly sensitive legal work<br>• Management committee reports<br>• Trade secrets<br>• Private encryption keys |

[1] Note that Public Information may have a different classification prior to its release.

**Know the policy**- For more SP2I resources and the full SP2I policy, visit **ECS on Fidelity Central**

**Seek guidance**-If you have questions or concerns about SP2I, or if you know of items that are out of compliance, please contact your manager or your business unit's Information Security Office.

**Use sound judgment**-The lists above are only examples, not definitive classifications. Any item containing customer data, security information, prelaunch new product details, or similar sensitive information should be classified as Fidelity Highly Confidential.

Fidelity Internal Information

# Information Protection Policy (SP21) Quick Reference
## Handle and Dispose

| | Public | Fidelity Internal | Fidelity Confidential | Fidelity Highly Confidential (HC) | | | |
|---|---|---|---|---|---|---|---|
| | | | | All Other HC | Personal Information[1] | Employee Data[2] | PINs/Passwords |
| **Handle** | | | | | | | |
| Get approval before assigning classification | ● | | | | | | |
| Do not share outside Fidelity (such as with vendors or contractors) except on a need-to-know basis and when the recipient is restricted from disclosing the information to others | | ● | ● | ● | ● | ● | ● |
| Use caution when discussing in public | | ● | ● | ● | ● | ● | ● |
| Report possible or actual loss immediately to the ISO or Corporate Security | | ● | ● | ● | ● | ● | ● |
| Encrypt when sending or transporting outside Fidelity[3] | | | ● | ● | ● | ● | ● |
| Inside Fidelity, share only on a need-to-know basis | | | ● | ● | ● | ● | ● |
| Do not leave unsecured on copiers/printers or in any workspace, including offices, assigned/unassigned desks, common/shared areas, and conference rooms | | | ● | ● | ● | ● | |
| Limit access even on internal websites and systems | | | ● | ● | ● | ● | |
| Do not remove from Fidelity premises without a specific business requirement | | | | ● | ● | ● | |
| Encrypt when emailing inside Fidelity[3] | | | Strongly Recommended | | | ● | |
| Never share with anyone, and never carry with the related device | | | | | | | ● |
| **Dispose** | | | | | | | |
| Place in desk-side/shared recycling (paper only) | ● | ● | ● | | | | |
| Personally shred (paper only) | Optional | Optional | ● | ● | ● | ● | ● |
| Place in locked Fidelity recycling container (paper) or turn in to local Security Office (removable media) | ● | ● | ● | ● | ● | ● | ● |

[1] See **policy** for complete definition. [2] Fidelity employee compensation and performance data only. [3] See the **policy** for detailed guidance.

Fidelity Internal Information

# EXHIBIT C

## EMPLOYEE AGREEMENT

I, _Jennifer A Taylor_ , wish to be employed by FMR Corp. and/or any entity which is directly or indirectly owned or controlled wholly or in part by FMR Corp. (the "Fidelity Companies"). As a condition of employment, I must understand and agree to abide by this Agreement. This Agreement is designed to protect Confidential Information and goodwill of the Fidelity Companies and to assist the Fidelity Companies in complying with their legal, regulatory and other obligations.

1.      *Confidential Information.* During the course of my employment by the Fidelity Companies, I may become aware of Confidential Information. Confidential Information consists of all information that is not generally known to the public at the time made known to me and that is or may be used in the business of any of the Fidelity Companies. It includes but is not limited to trade secrets; secret, confidential, or proprietary information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business plans; marketing, financial, trading, research, and sales data; customer, prospect, vendor, or personnel lists; financial and other personal information regarding customers or employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to me in a relationship of confidence. During my employment and thereafter, I will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for me to carry out my job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. I also will not retain any copies, notes, or excerpts of Confidential Information upon termination of my employment. I will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. I will not open, read, or in any way access Confidential Information without authorization.

2.      *Systems Access.* In order to carry out my responsibilities, I may be given access to various computer systems and may be given passwords, user identifications, or other authenticating information ("password(s)"). I will not disclose my password(s) to anyone except in accordance with Fidelity policy. While incidental and occasional personal use of systems may occur, this is not the purpose of providing access; rather, all systems accessed generally are to be used for legitimate Fidelity business purposes only, and all items created or accessed will be treated as Fidelity property for purposes of monitoring, access, review, and disclosure by Fidelity. I will adhere to all software licensing agreements or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. My authorization to access Fidelity systems shall expire when I leave Fidelity's employ.

3.      *Company Property.* Upon termination of my assignment or at any earlier time as requested by the Fidelity Companies, I will return to the Fidelity Companies all company property, including but not limited to my identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by the Fidelity Companies or any of them, including but not limited to documents and materials containing Confidential Information.

4.      *Outside Business Activities.* So long as I am employed by the Fidelity Companies, I will not engage in any other employment or business activities unless I receive prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

[Employee Agreement]

9/20/99

5. *Ethics and Outside Brokerage Accounts.* So long as I am employed by the Fidelity Companies, I will adhere to the Code of Ethics and the Policy Statement on Insider Trading and any other documents related to the ethical conduct of business. Neither I nor my spouse will maintain any brokerage account which either of us own or in which either of us has a beneficial interest through any non-Fidelity broker-dealer unless I receive prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. I also understand that if I am an employee of a registered Broker/Dealer or an employee registered with the New York Stock Exchange or the National Association of Securities Dealers, I must comply with industry agreements, standards, and regulations, the Employee Compliance Guidelines, and all other applicable compliance documents. Approval for an outside account may be withdrawn at any time.

6. *Non-solicitation.* During my employment and for a period of one year following my separation from employment by the Fidelity Companies, I will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. For this same period, I also will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, sell any security, insurance or annuity product or any other product or service to any customer or prospective customer with whom I had personal contact during the course of my employment by the Fidelity Companies. During this same period, I also will not directly or indirectly, on my own behalf or on behalf of anyone or any company, solicit in any manner or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. *Inventions.* I will disclose and I hereby assign to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") which I make or conceive, whether or not patentable or copyrightable, either solely or jointly with others, during the period of my employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during my employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, I hereby assign the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, I will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during my employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which I do for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work.

8. *Background Investigation.* The Fidelity Companies perform background security investigations of all new employees, including education, employment, credit, and criminal record checks. This process may include a fingerprinting procedure. The fingerprints will be used to check the criminal records of the Federal Bureau of Investigation. All information I provide as part of the application or background investigation process will be as accurate and complete as possible. My failure to provide accurate and complete information may result in my offer of employment being withdrawn or my dismissal from employment. Employment and continued employment are contingent upon positive reference and background investigation reports, as judged by Fidelity. These investigations may take several months to perform, may not be

[Employee Agreement]  -2-  9/20/99

completed until after an offer is made or employment has commenced, and may be reopened if new information is learned during my employment.

9.    *Agreements with Others.* I represent and warrant that my employment by the Fidelity Companies will not require me to violate any agreement I may have with any employer or other business, and that I will not engage in any activities in violation of any agreement I may have with any employer or other business. Without limiting the foregoing, I will not use or disclose to the Fidelity Companies any confidential information belonging to others. I further represent and warrant that I am not a party to any agreement, and I owe no duty to anyone, which would limit or affect my ability to perform my duties during my assignment with the Fidelity Companies. I have attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which I am or have been a party.

10.    *At Will Employment.* My employment by the Fidelity Companies is at will and may be terminated by me or by them at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

11.    *Miscellaneous.* I will disclose the existence and terms of this Agreement to any future employer of mine. My obligations contained in this Agreement shall survive my employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, my obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on my part. I understand and agree that any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement is governed in accordance with Massachusetts law and is signed under seal. Any agreement contrary to any of the provisions of this agreement must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which I work.

**This agreement contains important information regarding the terms of my employment with the Fidelity Companies. I have read this entire agreement carefully and I understand it and agree to adhere to it.**

_____    _____
Name                              Date
LG941030.030

                                                  Revised April, 1997

# EXHIBIT D

*fax 508-263-3514 'PI Human Resources*

**EMPLOYEE AGREEMENT**

Jemifer A Taylor ("Employee") wishes to continue employment with FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies") and to receive an award under the share plan accompanying this Agreement. As a condition of continued employment and the issuance of such award, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. **Confidential Information.** To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2. **Systems Access.** In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. **Company Property.** Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. **Outside Business Activities.** So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. **Ethics and Outside Brokerage Accounts.** So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. **Non-solicitation.** In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

Updated 06/11                                          Employee's initials

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. **Inventions and Use of Name or Likeness.** Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. **Agreements with Others.** Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. **At Will Employment.** Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. **Miscellaneous.** This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.

_____    6/30/2011
Employee                            Date

_Anne Ames_
Anne Ames
VP, Head of Staffing

June 28, 2011
Date

Updated 06/11

2

# EXHIBIT E

To:     Fidelity Investments

Attn:   Scott Marshall, Branch Manager Oak Brook Investor Center

Date:   March 6th, 2020

I choose to end my employment with Fidelity Investments effective immediately.  If necessary, I can be reached on my cell phone 630-765-1795.

Thank you,

Jennifer A Taylor                                              3/6/2020

# EXHIBIT F

JENNIFER A. TAYLOR
606 PRAIRIE AVE
GLEN ELLYN, IL 60137



March 14, 2020

JENNIFER A. TAYLOR
606 PRAIRIE AVE
GLEN ELLYN, IL 60137

Dear JENNIFER:

I am writing to confirm certain important information associated with your departure from Fidelity, effective March 06, 2020.

**Benefits:**  If applicable, under separate cover, you may receive information about how to continue your life, health, disability, and dental insurance coverage.  If you have any questions regarding continued coverage, please feel free to contact Fidelity HR Solutions at (800) 835-5099, Option 1.  If you are a Retirement Savings Plan participant, Fidelity will also send you information regarding your options with respect to this program.  If you have a 401(k) loan, you will receive information under separate cover about options for repayment of your outstanding balance.  Please contact Fidelity HR Solutions at (800) 835-5099, Option 1 with any questions about Profit Sharing Plan participation or 401(k) loans.

**Final Paycheck:**  If you have not received your final paycheck, which will include any accrued but unused vacation/elective holiday time remaining as of your separation date, please contact Fidelity HR Solutions at (800) 835-5099, Option 1 with any questions.

**Employment Verifications**:  Fidelity's policy is to verify dates of employment, job title, employment status and salary information through an employment verification summary and an earnings information summary.  To authorize a third party to obtain a standard employment verification summary or an earnings information summary, follow one of these two options; 1) Go directly to The Work® Number at http://theworknumber.com or 2) If you do not have internet access call HR Solutions at 800-835-5099, Prompt 1.

**Delivery of W-2:**  If you relocate within the calendar year, please notify Fidelity HR Solutions at (800) 835-5099, Option 1 to insure proper delivery of your current year Form W-2.

**Company Property:**  We expect that you returned all Company property on your last day of work, including Confidential Information (see below), files, documents, computer and electronic communications equipment, your identification badge, company credit cards, company telephone cards, building or equipment keys, and any other equipment.  If you have subscribed to any internet on-line services, such as newsletters or other updates, you are responsible for canceling your subscriptions.  If you discover any Company property in your possession in the future, please promptly contact Fidelity HR Solutions at (800) 835-5099, Option 2 for further instructions.

**Confidential Information:**  While you were employed by Fidelity, you became aware of confidential information regarding Fidelity and its affiliates.  Confidential information consists of all information pertaining to the business of Fidelity or any of its affiliates that was not generally known to the public at the time made known to you.  It

includes but is not limited to trade secrets; secret, confidential and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing and marketing plans; customer, prospect, vendor and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and all information expressly designated as "Proprietary," "Fidelity Confidential," "Fidelity Highly Confidential," "Fidelity Restricted," or "Fidelity Internal Use Only".  If you kept any confidential information belonging to Fidelity at the conclusion of your employment, please return it immediately.  You may not use or disclose any confidential information belonging to Fidelity and the confidentiality provisions of the Employee Agreement you signed when you were hired continue to apply.  I have attached a copy of your Employee Agreement.  Please note you are obligated to bring this agreement to the attention of any future employer.

**Inventions:**  Please be reminded that inventions that you made or conceived during your employment with Fidelity are Fidelity's exclusive property to the extent that any such ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "inventions"), whether or not patentable or copyrightable and whether conceived of solely or jointly, (i) were along the lines of the business or work of any of the Fidelity companies; (ii) resulted from or were suggested by any work which you did for the Fidelity companies; (iii) were made or conceived using equipment or other materials belonging to Fidelity; or (iv) were made or conceived during regular hours of work.  You may not pursue any of these inventions on your own behalf or on behalf of any new employer without prior written permission from Fidelity.  In addition, Fidelity may call upon you in the future for assistance in obtaining, maintaining, or enforcing patents, copyrights, trademarks, or other legal protection in connection with inventions.

**Non-Solicitation of Customers and Employees:**  Please be reminded that for a period of one year following your departure, you may not directly or indirectly hire or solicit any Fidelity employee to leave his/her  employment. For this same period of time, you may not directly or indirectly solicit any customer to cease any business relationship with Fidelity, or do certain types of business with customers with whom you had personal contact during your employment.  The specific terms of your obligations with respect to non-solicitation are set forth in the Employee Agreement you signed upon hire (copy attached).

We wish you success in your future career endeavors.  Please feel free to contact Fidelity HR Solutions at (800) 835-5099 if you have any questions or concerns about this information.

Sincerely,
Fidelity HR Solutions

Attachments:
        Employee Agreement

a058309

**EMPLOYEE AGREEMENT**

[handwritten: Taylor A Taylor]

("Employee") wishes to continue employment with FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies") and to receive an award under the share plan accompanying this Agreement. As a condition of continued employment and the issuance of such award, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of all the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. **Confidential Information.** To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and keep to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware designs; investment questions, proprietary technology, new product and service ideas, business, pricing, and marketing plans, customer, prospect, vendor, and other companies and their products, and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and access to Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose or discuss in any manner, in whole or in part, any Confidential Information except (i) necessary for Employee to carry out his/her job; (ii) necessary for other agents of the Fidelity Companies to carry out their duties and responsibilities; or (iii) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without further authorization.

2. **Systems Property.** Carrying out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's procedures regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. **Company Property.** Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. **Outside Business Activities.** So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. **Brokerage and Outside Brokerage Accounts.** So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with any applicable agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures.

6. **Non-solicitation.** In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away any or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company within any

Updated 08/11                                                                Employee's Initials [handwritten]

7. **Inventions and Names or Likeness.** Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, within the period of his/her employment. All written or computer coded materials manufactured or otherwise created during Employee's employment (collectively the Materials, data, memoranda, or otherwise "the Material(s)") made or conceived during Employee's employment shall be considered works made for hire, and all right, title and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in its/their own names, patents, copyrights, trademarks, or other legal protection in the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (f) are along the lines of the business or work of any of the Fidelity Companies, (ii) result from or are suggested by any work which Employee does for the Fidelity Companies, (iii) are made or conceived using equipment or other materials of the Fidelity Companies, or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. **Agreements with Others.** Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities or in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. **At Will Employment.** Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. **Miscellaneous.** This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President of Human Resources or the President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer or Fidelity Company. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is, or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.

Employee _____  Date 6/30/2011

Anne Amea  
VP, Head of Staffing  
June 28, 2011  Date

06/30/2011 17:22 FAX                    ☑002/002

# EXHIBIT G

Meredith A. Faro
Attorney

FMR LLC Legal Department

155 Seaport Blvd, ZW9A, Boston, MA 02110
Phone: (617) 392-8136  Fax: (617) 850-8335
meredith.faro@fmr.com



March 20, 2020

**<u>Via Overnight Delivery</u>**

Jennifer Taylor
606 Prairie Ave.
Glen Ellyn, IL  60137

Dear Ms. Taylor:

It has come to our attention that after you left your position as Financial Consultant in Fidelity Brokerage Services LLC's Oak Brook, IL Branch, you accepted a position with Fairhaven Wealth Management, LLC.

Fidelity has reason to believe that you may be contacting Fidelity customers for the purpose of soliciting their business.  The Employee Agreement ("the Agreement") you signed while in Fidelity's employ (copy attached) prohibits such solicitation of Fidelity's customers.  This letter constitutes a formal demand that any such activity cease immediately.  Furthermore, all of Fidelity's customer and prospect lists and all information concerning Fidelity's customers, including names, addresses, telephone numbers, email addresses and account information, are confidential and proprietary.  Pursuant to the Agreement and general principles of law, you are obligated to maintain all of Fidelity's confidential and proprietary information in strictest confidence.  This includes information that you have in your memory.  You may not disclose this information or make any use of it for yourself or for others, including your present or future employers.

Please return to Fidelity any confidential or proprietary information belonging to Fidelity in your possession, such as records, electronic data, computer files, lists, screen prints, or computer discs pertaining to Fidelity clients or individuals or entities you became aware of through your employment at Fidelity, including but not limited to names, phone numbers, addresses and/or email addresses, whether in original, copied, computerized, handwritten or any other form.  To the extent these exist in electronic form, you must not delete it or alter it in any way, but instead must refrain from using it, accessing it or transferring it to anyone, and you must contact us or have your counsel contact us to coordinate its preservation as evidence, and its return to us, in a forensically sound manner.  It is important to understand that deleting or altering such electronically stored information without taking forensically sound steps to preserve it will be viewed as intentional destruction of evidence, and there can be serious sanctions that result from such destruction.  Please verify that you have complied in full as set forth above by signing the enclosed affidavit and returning it to me by Monday, March 30, 2020.

Also, as a condition of your employment with Fidelity, you were obligated to comply with Fidelity's Compliance Policy for Electronic Communications, Social Media and Systems Usage (the "Social Media Policy").  Pursuant to the Social Media Policy, you were strictly prohibited

Jennifer Taylor
Page 2

from connecting with any Fidelity clients on LinkedIn or any other similar networking platforms, unless you had a pre-existing personal relationship with that client from prior to your employment with Fidelity. If you have violated this policy by connecting with any Fidelity clients on LinkedIn or other networking platforms, then Fidelity demands that you delete any such connections and refrain from (a) initiating any communications with such client(s) through LinkedIn or any other similar platform's messaging function, and (b) updating your place of employment in a manner that will result in a notification being pushed out to such client(s), or which will be captured by a routine periodic push of updates to such client(s) through regular operation of LinkedIn or other platforms' systems. If you have updated your information since resigning or otherwise engaged in contacts or communications with Fidelity clients via LinkedIn or other similar platform, then you must take steps to preserve evidence prior to any deletion, consistent with the instructions set forth above.

Please be advised that if Fidelity does not hear from you by Monday, March 30, 2020, the company will pursue all necessary and appropriate remedies that it may have against you, which may include seeking monetary damages, injunctive relief, and/or its attorneys' fees and costs.

I am also sending a copy of this letter to Marc Horner, President of Fairhaven Wealth Management, who, we assume, may want to take steps to ensure that you are not put in a situation that would require or allow you to breach the terms of the Agreement or your other obligations to Fidelity.

Further, you are hereby given notice of your obligation to preserve evidence that you know, or should know, may be relevant to any potential lawsuit regarding the matters set forth in this letter. You should not destroy, conceal, or alter any evidence related to any claims or defenses regarding this matter, including without limitation any evidence in paper or electronic files, or other data generated by and/or stored on any smart phones or computers, including home computers and laptops, or contained in email, text message, or voicemail.

If you have any questions, please let me know.

Very truly yours,

Meredith A. Faro

Enclosures

cc:   Marc Horner, President
      Fairhaven Wealth Management, LLC
      104 E. Roosevelt Road, Suite 100
      Wheaton, IL  60187

## AFFIDAVIT OF JENNIFER TAYLOR

JENNIFER TAYLOR, being first duly sworn, states as follows:

1.      My name is Jennifer Taylor and I am over the age of 18.  Except where otherwise indicated, the statements contained herein are based on my personal knowledge.  I was employed by Fidelity Brokerage Services LLC ("Fidelity") until my employment ended effective March 6, 2020.

2.      I hereby state that I do not have in my possession, custody or control customer lists (including any Christmas or holiday card or gift mailing lists), records, electronic data, computer files, or documents pertaining to Fidelity clients or prospective clients I worked with or  became aware of through my employment at Fidelity, including but not limited to names, phone numbers, addresses and/or e-mail addresses, whether in original, copied, computerized, handwritten, photographed, maintained on an iPhone or iPad or other personal device, or any other form.  This includes any documents created either during or after I left my employment with Fidelity that contain information pertaining to Fidelity clients or prospective clients that I worked with or became aware of through my employment at Fidelity, including information recreated through the use of memory, or by using information in memory to recreate information from public sources.  To the extent I had any such information in hard copy, I have returned the hard copy documents to Meredith Faro, along with this affidavit.  To the extent I had any such information in an electronically stored format, I or my counsel has engaged with Fidelity's counsel to arrange for forensically sound preservation, prior to removal, return to Fidelity and deletion from my possession, of any such electronically stored information.

3.      I have not given any of the above documents or information or copies thereof to any other person or entity.

Pursuant to 28 USC §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on _____, 2020      _____
                                                Jennifer Taylor

Sworn to and subscribed before me
this _____ day of _____, 2040


_____
Notary Public

06/30/2011 17:21 FAX @001/002

fax 506-263-3514 PI Human Resources

Jenifer A Taylor

**EMPLOYEE AGREEMENT**

Jenifer A Taylor ("Employee") wishes to continue employment with FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies") and to receive an award under the share plan accompanying this Agreement. As a condition of continued employment and the issuance of such award, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. **Confidential Information.** To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2. **Systems Access.** In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. **Company Property.** Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. **Outside Business Activities.** So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. **Ethics and Outside Brokerage Accounts.** So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. **Non-solicitation.** In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies is directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

Updated 06/11                                          Employee's initials

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7.  **Inventions and Use of Name or Likeness.** Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8.  **Agreements with Others.** Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.  **At Will Employment.** Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.  **Miscellaneous.** This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.

Employee _____      Date 6/30/2011

_Anne Ames_

Anne Ames
VP, Head of Staffing                            June 28, 2011
                                                Date

Updated 06/11

2