IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JENNIFER TAYLOR, FAIRHAVEN WEALTH ) <br> MANAGEMENT, LLC, ) <br> Defendants. ) <br> ) | Case No. 1:20-cv-2133 |

**FAIRHAVEN WEALTH MANAGEMENT, LLC'S
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Third-party subpoena respondent (and now, Defendant) Fairhaven Wealth Management, LLC ("Fairhaven"), by and through its undersigned counsel, hereby responds in opposition to the October 29, 2020 Motion to Compel of Plaintiff, Fidelity Brokerage Services, LLC ("Fidelity").

**PRELIMINARY STATEMENT**

Fidelity's frivolous Motion to Compel is a waste of the Court's time and Fairhaven's resources. Fairhaven is not withholding *any* of the documents Fidelity seeks.

Fairhaven has had a longstanding and fruitful business relationship with Fidelity. Indeed, Fidelity serves as the custodian of all Fairhaven's client accounts. Accordingly, when Fairhaven received a document subpoena from Fidelity on May 27, 2020, Fairhaven agreed to work with Fidelity to expeditiously produce all of the documents Fidelity wanted. After Fairhaven completed its production, Fidelity repeatedly demanded additional documents and contextual information from Fairhaven. Because of its then-amicable relationship with Fidelity, Fairhaven acceded to Fidelity's increasingly burdensome demands, and produced everything within its possession, custody, or control that Fidelity had asked for.

This, however, was not enough for Fidelity. Fidelity began demanding that Fairhaven produce documents that simply do not exist. When Fairhaven could not produce documents that do not exist, Fidelity filed its Motion to Compel.

The Motion to Compel is not based on any valid indication that Fairhaven has withheld documents, but rather based on rampant speculation and conjecture. Fidelity, for instance, asserts that Fairhaven must have provided Ms. Taylor with a written offer letter or employment agreement. But, as both Ms. Taylor and Fairhaven have repeatedly informed Fidelity, there was never any written offer letter or signed employment agreement – Fairhaven hired Ms. Taylor, as the saying goes, "on a handshake." Similarly, Fidelity asserts that Fairhaven is withholding documents because some of the emails it produced reference the possibility of later sending a follow-up email. Yet Fidelity ignores the possibility (and, indeed, fact) that the Fairhaven employee never ended up sending a follow-up email, so there is nothing to produce. The Motion to Compel is replete with these types of issues.

Mere speculation and conjecture do not constitute good faith bases to bring a motion before this Court. Accordingly, the Court should deny Fidelity's motion. But even if the Court were to grant the Motion to Compel, ***Fairhaven would have no additional documents to produce***.

## BACKGROUND INFORMATION

On May 22, 2020, the Court granted Fidelity's request for expedited discovery. (Dkts. 17, 29, 30). As part of this expedited discovery, the Court allowed Fidelity to serve a third-party subpoena upon Ms. Taylor's employer, Fairhaven. Fidelity has used this expedited discovery to embark upon a fishing expedition to identify claims against Fairhaven.

On or about May 27, 2020, Fidelity served Fairhaven with its third-party subpoena. (Dkt. 58-1). After service, Fairhaven, through its counsel at Polsinelli, PC, worked with Fidelity to

2

comply with the subpoena. During the summer of 2020, Fairhaven served Fidelity with responses and objections to the subpoena, but effectively agreed to produce all of the documents Fidelity sought. (*See* **Exhibits A & B**, Fairhaven's Responses and Objections to the Subpoena).

On August 3, 2020, while Fairhaven was working to complete its ESI production, Fidelity sent Fairhaven a letter citing supposed deficiencies in the first portion of Fairhaven's production, including several issues Fidelity complains of now, such as the lack of a signed employment agreement. (**Exhibit C**). On August 5, 2020, Fairhaven responded, explaining that Fidelity's concerns were unfounded. (**Exhibit D**).

By August 14, 2020, Fairhaven had produced 2,858 pages of documents in response to the subpoena, plus additional documents that Fairhaven's owner provided directly to his business contacts at Fidelity, in an attempt to resolve this dispute without the need for counsel.

On September 14, 2020, Fidelity sent Fairhaven another letter describing purported deficiencies in Fairhaven's production. (**Exhibit E**). Fairhaven responded to that letter on September 25, 2020, explaining that Fidelity had mischaracterized the documents at issue, and confirming that Fairhaven did not have within its possession, custody or control any additional documents to produce. (**Exhibit F**). Nevertheless, on October 29, 2020, Fidelity filed its Motion to Compel. (Dkt. 58).

On November 2, 2020, the Court held a telephonic hearing concerning Fidelity's motion for leave to amend its Complaint, which the Court granted. During that hearing, the Court also ordered Fairhaven to respond to the Motion to Compel by November 6, 2020. (Dkt. 60). Fidelity, however, did not properly serve Fairhaven with the Motion to Compel before November 2, 2020, and Fidelity did not provide notice to Fairhaven's then-counsel, Polsinelli, PC (who had not appeared in this case) that any briefing schedule would be set at the November 2, 2020 hearing.

On November 4, 2020, Fidelity filed its Amended Complaint, adding Fairhaven as a defendant. That same day, Fairhaven engaged undersigned counsel to represent it in this matter.

## ARGUMENT

### I. FIDELITY VIOLATED THE COURT'S JUNE 3, 2020 ORDER, WHICH REQUIRES STRICT COMPLIANCE WITH LOCAL RULE 37.2.

Although Local Rule 37.2 generally does not apply to Rule 45 subpoenas, it does so here. On June 3, 2020, this Court noted that a meet-and-confer for Rule 45 subpoena issues is "not required by the letter of Local Rule 37.2," but held that "[g]oing forward, any discovery motion **must** comply with the requirements of Local Rule 37.2." (Dkt. 36) (emphasis added). Fidelity violated this Order by failing to comply with Local Rule 37.2 before filing its Motion to Compel.

At approximately 3 p.m. on October 27, 2020, Fidelity's counsel emailed Fairhaven's predecessor counsel and asked if he had time to meet and confer. (*See* **Exhibit G**). Fairhaven's counsel was in the midst of a week-long arbitration at the time, and was unable to immediately respond to Fidelity's email. Despite that Fidelity had served its subpoena *five months* prior, Fidelity decided that its Motion to Compel was so urgent that it could not wait for a response from counsel. At approximately 1:30 p.m. on October 29, 2020, without first sending Fairhaven any follow-up email, Fidelity filed its Motion to Compel. (Dkt. 58). On October 30, 2020, Fairhaven's predecessor counsel – apparently unaware that Fidelity had filed the Motion to Compel – responded to Fidelity's October 27, 2020 email, stating, "I've been in a weeklong AAA arbitration that wrapped up yesterday evening, and am catching up on my emails. Do you have time Monday or Tuesday to discuss?" (Ex. G).

Local Rule 37.2 requires parties to attempt, in good faith, to consult with each other before filing any discovery motion. More specifically, it provides that the Court "shall hereafter refuse to hear any and all motions for discovery" unless the motion includes a statement confirming that

4

"counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's." Further, Local Rule 37.2 provides, "Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation."

The required consultation was unsuccessful due to the fault of Fidelity's counsel. The only effort described in Motion to Compel is the single email that Fidelity sent to Fairhaven on October 27, 2020 requesting a discovery conference. (Dkt. 58 at 2-3). Before filing its Motion to Compel ***less than 48 hours*** later, Fidelity sent no follow-up email, and apparently did not even call Fairhaven's counsel. Merely sending a single email, and waiting less than 48 hours for a response, does not comply with the letter or spirit of Local Rule 37.2. Accordingly, the Court should "refuse to hear" the Motion to Compel. L.R. 37.2; *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Services N. Am., L.L.C.*, No. 03 C 760, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (denying motion to compel because movant failed to comply with Local Rule 37.2).

## II. FAIRHAVEN HAS PRODUCED ALL RESPONSIVE DOCUMENTS WITHIN ITS POSSESSION, CUSTODY, OR CONTROL.

In the Motion to Compel, Fidelity mistakes the absence of documents for the improper withholding of documents. Fairhaven simply does not have within its possession, custody, or control the documents Fidelity seeks.

### A. Ms. Lyon's Version of the Client List

Fidelity seeks to compel the production of a "customer list that one of Fairhaven's employees used to contact Fidelity customers." (Dkt. 58 at 3).

Shortly after Ms. Taylor began working at Fairhaven, she enlisted one of Fairhaven's administrative assistants, Jean Lyon, to help call several of Ms. Taylor's former clients to announce her departure from Fidelity. Ms. Taylor provided Ms. Lyon with a list of individuals to call,

5

identical to the list that Ms. Taylor has already produced in discovery.[1] During these calls, Ms. Lyon conveyed *only* the following information: (a) that, as of March 6, 2020, Ms. Taylor was no longer affiliated with Fidelity; and (b) that Ms. Taylor was now affiliated with Fairhaven. That was the entire sum and substance of the information that Ms. Lyon provided to the former clients she contacted. Once that information was provided, Ms. Lyon either: (i) answered any follow-up questions posed by the client, or (ii) if the client had no follow-up questions, she terminated the call.[2]

Ms. Lyon noted on her copy of the list which individuals she spoke to, and which individuals she was unable to reach. At the end of each day, Ms. Lyon would send Ms. Taylor an email listing the people she had called, along with a short description of what each individual said during the call (if anything).[3] Ms. Lyon did not make any calls on Ms. Taylor's behalf after April 6, 2020.

---

[1] This was *not* a "Fidelity" customer list, and it did not contain *any* Fidelity confidential information or customer information. On the contrary, Ms. Taylor created the list after she left Fidelity, from memory, using no Fidelity resources. The list was comprised of the names, and corresponding states of residence, of approximately 20% of Ms. Taylor's clients at Fidelity – many of whom Ms. Taylor had been working with for upwards of 25 years. Ms. Taylor then used public sources to identify the contact information for those individuals.

[2] Once at Fairhaven, Ms. Taylor received calls from several former clients who informed her that Fidelity had refused to provide them with her new contact information when they asked for it. This violated both Fidelity's internal compliance procedures and FINRA Regulatory Notice 19-10. Moreover, it posed a significant risk to Ms. Taylor's professional reputation and to the economic welfare of the clients to whom she owed fiduciary duties (especially considering the need for those clients to speak to their trusted financial advisor during the economic crisis this past spring).

[3] Fidelity asserts that Ms. Lyon's version of the client list is "one of the most significant documents that remains at issue." (Dkt. 58 at 3). This is hyperbole. In reality, Ms. Lyon's version of the list is wholly insignificant. Ms. Taylor had an identical copy of the list, which she has already produced to Fidelity. (Dkt. 58-4). To the extent Ms. Lyon noted on her copy of the list which individuals she called and which she did not, that information is readily available to Fidelity by way of the comprehensive telephone log that Fairhaven produced to Fidelity. Further, Fairhaven produced all of the emails from Ms. Lyon to Ms. Taylor describing the content of her telephone calls. Accordingly, Ms. Lyon's list, if Fairhaven still had it, would be cumulative of the information Fairhaven already produced.

As Fairhaven has repeatedly told Fidelity: Fairhaven does not have a copy of this list to produce to Fidelity. (*See, e.g.*, Ex. F at 1).

B. **Instructions About Calls**

Next, Fidelity claims that "there were no documents produced by Fairhaven regarding any instructions to Fairhaven employees about the calls, what to say to Fidelity customers, or notes following the calls…." (Dkt. 58 at 4). As an initial matter, this is false. Ms. Lyon emailed Ms. Taylor notes regarding her calls with Ms. Taylor's former clients, and Fairhaven has produced those emails to Fidelity.[4] The remainder of the documents Fidelity seeks simply do not exist – Fairhaven is not withholding them.

Fidelity assets that Fairhaven must be withholding documents because Ms. Lyon called clients that were not on the written list of clients that Ms. Taylor provided to her. However, because Fidelity did not engage in a discovery conference with Fairhaven before filing its Motion to Compel, we do not know the individuals to which Fidelity refers. We note, however, that Fidelity appears to rely on the mistaken assumption that all communications between Ms. Taylor and Ms. Lyon were written communications that Fairhaven has the ability to produce. Again, Fairhaven is not withholding any documents.

Fidelity also tries to rationalize its Motion to Compel by stating that it "believes that there are additional responsive documents because Fairhaven produced emails from one employee who made calls to Fidelity clients but then referenced phone records that would be produced for 'other

---

[4] Fidelity makes the baseless assertion that the notes from Ms. Lyon's phone calls "leave no doubt that Fairhaven was soliciting Fidelity Customers." (Dkt. 58 at 5). Fidelity cites several notes explaining that clients responded to calls with statements along the lines of "Not a good time to move right now," "they like the new Fidelity rep. No thank you," and "would prefer to stay with new Fidelity rep." (*Id.*). These responses do not suggest, let alone establish, any solicitation of clients. On the contrary, these statements are merely responses to the very basic information Ms. Lyon conveyed to Ms. Taylor's former clients, *i.e.*, that (i) that Ms. Taylor had left Fidelity, and (ii) that Ms. Taylor had joined Fairhaven. They do not indicate that Ms. Taylor's administrative assistant was soliciting any clients.

7

relevant custodians' …" (Dkt. 58 at 5). Fidelity's counsel takes this entirely out of context. Fairhaven's predecessor counsel simply meant that the phone log captured calls to and from multiple employees, not that other individuals had documents Fairhaven is withholding.

**C.** **Salesforce Notes**

Fidelity also seeks notes from Fairhaven's Salesforce system, stating:

> Fairhaven produced very few notes of communications with Fidelity customers yet it is apparent from the documents produced that such notes exist. Fairhaven does not deny that it has a customer contact database management system called Salesforce. The documents produced by Fairhaven also indicate that information regarding Fidelity customers was put into Fairhaven's Salesforce system.

(Dkt. 58 at 4).

Fairhaven and Fidelity came to an agreement concerning the scope of the subpoena: Fidelity was not asking Fairhaven to produce any documents concerning ***Fairhaven clients***; accordingly, Fairhaven's production would be limited to information concerning communications with former Fidelity clients *until the date those individuals became Fairhaven clients*. Fidelity agreed to this limitation. (And reasonably so – any communications after an individual became a Fairhaven client would be protected from disclosure to another financial firm.)

As Fairhaven's predecessor counsel explained in the September 25, 2020 letter to Fidelity, Fairhaven uses its Salesforce system almost exclusively for client retention purposes, *not* to document interactions with "prospective clients." (Ex. F at 2). This policy limits the information in Fairhaven's Salesforce database to information about ***existing Fairhaven clients*** – information that was expressly outside the scope of Fidelity's subpoena. Accordingly, Fairhaven's Salesforce database is not a proper data repository for any of the documents Fidelity seeks in the subpoena.

### D. Emails to Clients

Fidelity falsely claims that "[t]here are also references in the documents that were produced to emails that were not produced." (Dkt. 58 at 6). Fidelity cites an email (Bates-numbered FAIRHAVEN 1403) and alleges that, in this email, Ms. Lyon, "states that she sent follow up emails" to Ms. Taylor's former clients. (*Id.*) Fidelity misconstrues this email; Ms. Lyon, instead, states, "I'll email business cards."[5] This statement merely indicates that Ms. Lyon was *planning to send* a follow-up email, not that she ever sent one. Fidelity also cites several similar emails (FAIRHAVEN 1392 & 1394) in which Ms. Lyon tells Ms. Taylor, "I'll send out some of your business cards [to a particular client]." Ms. Lyon never emailed those business cards, and has no recollection regarding whether she mailed them out. However, if Fairhaven had copies of any communications in which Ms. Lyon sent business cards to Ms. Taylor's former clients, Fairhaven would have already produced them.

Fidelity also cites an email (FAIRHAVEN 1405) in which Ms. Lyon tells Ms. Taylor to "please email your info with FWM info" to a particular client. Had Ms. Taylor followed that advice and emailed the client, then Fairhaven would have produced the corresponding email. As Fairhaven explained to Fidelity in its September 25, 2020 letter, "we have produced all responsive email communications and have not withheld any email communications in an effort of good faith on the part of Fairhaven." (Ex. F at 2). Again, Fidelity is demanding the production of documents that simply do not (and never did) exist.

---

[5] The emails referenced here include certain client information and are, thus, designated "CONFIDENTIAL" under the Protective Order. We would be happy, however, to provide the referenced emails to the Court, upon request.

9

E. **Documents Regarding Ms. Taylor's Recruiting and Hiring**

Fidelity seeks documents concerning Ms. Taylor's recruiting and hiring. Ms. Taylor and Fairhaven have <u>repeatedly</u> explained to Fidelity that Ms. Taylor's pre-hire discussions with Fairhaven occurred only over the phone or in person, and that there was no written offer letter, signed employment agreement, or any other documents concerning her hire.

Fidelity first raised concerns about Fairhaven's supposedly deficient responses to this category of documents in its August 3, 2020 letter to Fairhaven. (Ex. C). Fairhaven responded, on August 5, 2020, explaining as follows:

> Just because Fairhaven does not have documents does not mean that it has not complied in good faith. Specifically, Fairhaven does not have any offer letters, any confidentiality agreements, any non-solicitation agreements, or any non-competition agreements in connection with Ms. Taylor. Fairhaven also does not have any written communications related to her recruitment or transition plans. Ms. Taylor and Marc Horner of Fairhaven had telephone conversations and in-person meetings prior to her joining Fairhaven. Additionally, Ms. Taylor has not executed an employment agreement with Fairhaven. FAIRHAVEN 123-130 is a copy of the agreement that was sent to Ms. Taylor. Ms. Taylor has not yet executed this agreement.

(Ex. D). Unhappy with this explanation, Fidelity raised the issue again in its September 14, 2020 letter. (Ex. E). In its September 25, 2020 response letter, Fairhaven reiterated that Fidelity was making incorrect assumptions about Fairhaven's hiring practices, and again confirmed that Fairhaven had already produced all responsive documents. (Ex. F). This remains true now.

Fidelity's argument is based entirely upon speculation and conjecture. Fidelity concedes as much by stating, "Fidelity *cannot believe* that an experienced Financial Advisor was hired by Fairhaven and not a single document was generated as a result." (Dkt. 58 at 7) (emphasis added). That Fairhaven does business in a manner that does not comport with the limited experience and

narrow-minded expectations of Fidelity's counsel manifestly does not constitute a good faith basis to have filed the Motion to Compel.

### III. FIDELITY'S JOINDER OF FAIRHAVEN HAS MOOTED THE SUBPOENA.

When Fidelity joined Fairhaven as a Defendant in this action, the third-party subpoena it had issued to Fairhaven became moot – Fairhaven is no longer a "third party." Fidelity has brought Fairhaven into the fray as a party-defendant, and, consequently, documents must be requested and produced under Rule 34. Even if Fairhaven had additional documents to produce (and, it does not), there would be no reason for Fairhaven to produce them now. Instead, Fidelity will have the full panoply of discovery tools available to use against Fairhaven, as the merits of its claims against Fairhaven will be resolved in this matter, not in arbitration. Fairhaven should not be required to participate in discovery before it has had the opportunity to develop its defenses to the Amended Complaint.

### CONCLUSION

In sum, Fairhaven is not withholding any documents, and it would not have any additional documents to produce if the Court were to grant the Motion to Compel. The Court should deny the Motion to Compel on that basis, and because Fidelity violated Local Rule 37.2. Because the Motion to Compel is frivolous, Fidelity should be required to pay the attorneys' fees Fairhaven has incurred in responding to it.

Dated: November 6, 2020

Respectfully submitted,

**FAIRHAVEN WEALTH MANAGEMENT, LLC, Defendant and Third-Party Subpoena Respondent**

By: /s/ *Christopher S. Griesmeyer*
      One of Its Attorneys

Christopher S. Griesmeyer (# 6269851)
Zachary Mulcrone (# 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
(312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filed the foregoing *Fairhaven Wealth Management, LLC's Opposition to Motion to Compel,* with the Clerk of the Court via the CM/ECF System, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them including Plaintiff's counsel listed below:

Joel W. Rice
Franklin Z. Wolf
FISHER & PHILLIPS, LLC
10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
jrice@fisherphillips.com
fwolf@fisherphillips.com

Susan M. Guerette
FISHER & PHILLIPS, LLC
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
sguerette@fisherphillips.com

*/s/ Christopher S. Griesmeyer*
Christopher S. Griesmeyer (# 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Bus: (312) 428-2750
Fax: (312) 332-2781
cgriesmeyer@grglegal.com