# EXHIBIT F

TO FAIRHAVEN WEALTH MANAGEMENT'S
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL



150 N. Riverside Plaza, Suite 3000, Chicago, IL 60606 • (312) 819-1900

September 25, 2020

Sohil M. Shah
Direct: 312.463.6319
sshah@polsinelli.com

**VIA E-MAIL**
Susan M. Guerette
Fisher & Phillips LLP
150 N. Radnor Chester Road, Suite C300
Radnor, PA 19087
sguerette@fisherphillips.com

      Re:    *Fidelity Brokerage Services LLC v. Jennifer Taylor*
              Case No. 1:20-cv-02133

Dear Counsel:

      We are in receipt of your letter dated September 14, 2020 and our response is below.

### Communications with Fidelity Customers

      We disagree with your characterization that the email communications Fairhaven produced "show extensive solicitation by both Taylor and her assistant." This appears to be an unsupported and unnecessary legal conclusion. Additionally, your use of the word "finally" suggests a delay on Fairhaven's part. Again, we disagree with this mischaracterization. We politely request that you refrain from making such mischaracterizations in discovery communications.

      You appear to assume that additional documents exist but have provided no reasonable basis for the existence of such documents in Fairhaven's possession. You state as follows: "Ms. Lyon must have had Customer information provided to her by Taylor in order to know who to call on Ms. Taylor's and Fairhaven's behalf. The Customer list and any communications regarding the list, any direction to Ms. Lyon as to what to say to Customers, and any notes of her calls with Customers are directly responsive to Document Requests 1, 2 and 3 and must be produced." Please provide the basis for this assumption. To the extent you have deposed Ms. Taylor and she outlined this process as you have described it, please let us know. To clarify, Ms. Taylor provided Ms. Lyon a list of customers and their phone numbers when she joined Fairhaven. Ms. Lyon only made announcement phone calls and she had no business development responsibility. She had a purely administrative role. When Ms. Lyon finished her calls, she returned the list to Ms. Taylor, along with any handwritten notes on such a list. Ms. Taylor and Fairhaven do not have this list and it no longer remains in their possession, custody, or control. Only Ms. Taylor can provide this list to Fidelity.

Atlanta    Boston    Chicago    Dallas    Denver    Houston    Kansas City    Los Angeles    Nashville    New York    Phoenix
St. Louis    San Francisco    Washington, D.C.    Wilmington
Polsinelli PC, Polsinelli LLP in California
74870051.1



September 25, 2020

**Notes of Communications with Fidelity Customers**

Your assumption in this section again is incorrect. Information for individuals was only added to Fairhaven's Salesforce system if individuals were Fairhaven customers or after individuals had become Fairhaven customers. Such notes were used for client retention only. Additionally, no information was added to Fairhaven's Salesforce system for potential clients or customers. We disagree that entries in Fairhaven's Salesforce system corresponding to Fairhaven's customers must be produced as they are not responsive to any of Fidelity's document requests.

**Phone Records of Calls to Fidelity Customers**

The following statement is a legal conclusion unsupported by legal authority and we disagree with such a conclusion: "As an employee of Fairhaven, Ms. Lyon's conduct was as an agent of the company and she undoubtedly used Fairhaven's phone systems to make these calls." The following statement is also a legal conclusion unsupported by legal authority and we disagree with such a conclusion: "Ms. Lyon's notes leave no doubt that she was soliciting Fidelity Customers to move their business." This is simply incorrect.

Ms. Lyon did use Fairhaven's office phone system to make announcement phone calls. Fairhaven will agree to produce phone records for office phones for Ms. Lyon and the other relevant custodians, and will produce these records no later than October 2, 2020.

Your legal conclusions in this section also suggest the non-occurrence of the 2020 global COVID-19 pandemic which effectively temporarily shut down Fairhaven's offices soon after Ms. Taylor began working for Fairhaven. Fairhaven does not issue company cell phones to its employees and does not control those cell phones. Accordingly, Fairhaven cannot provide cell phone records for individual employees.

**Emails to Fidelity Customers**

We disagree with your numerous assumptions, which again are based on conjecture alone. Specifically, the following statement is incorrect: "The documents produced also make it clear that Taylor, Ms. Lyon and Fairhaven sent additional emails to Customers that do not appear to have been produced." Again, we have produced all responsive email communications and have not withheld any email communications in an effort of good faith on the part of Fairhaven. If there are specific emails you believe have not been produced, please provide the dates of those emails, and the participants in those email communications. We can then review our prior document productions. We have not withheld any responsive emails as part of our previous



September 25, 2020

document productions. These additional emails referenced were never sent or they would have been produced.

**Mailings and Text Messages to Fidelity Customers**

Any documents that were mailed to Fidelity customers and which Fairhaven retained a copy of were part of the electronic files that Mr. Horner previously and directly produced to Fidelity this summer. Accordingly, Fidelity already has such documents. Moreover, Fairhaven did not keep an electronic or hard copy of every document it sent to potential customers. Accordingly, Fairhaven does not have custody or control over any additional documents. To the extent you need these documents, you will need to subpoena the recipients of such documents.

Additionally, as stated above, Fairhaven does not have custody of or control over individual employees' cell phones, and does not have access to any employees' text messages.

**Documents Regarding Taylor's Hire**

We again disagree with your characterization regarding Fairhaven's production of documents related to Fairhaven's hiring of Ms. Taylor. Fairhaven has produced all such responsive documents. You make several statements are false or incorrect.

First, you state: "The documents Fairhaven produced in response to this request, however, consist only of marketing materials and an unsigned employee agreement that does not even include Taylor's name. These materials are not responsive or comprehensive." We have advised you previously that Ms. Taylor has not executed an employee agreement. Fairhaven cannot produce a document that does not exist. The marketing materials Fairhaven produced were copies of the exact same documents Fairhaven handed to Ms. Taylor.

Second, you state: "Fidelity cannot believe that an experienced Financial Advisor was hired by Fairhaven and not a single document was generated as a result. Responsive documents would include phone records to set up interviews, notes of discussions, calendar entries, text message or email communications, an offer letter, new hire documents and regulatory clearance documents. Fairhaven produced an unsigned Employment Agreement and indicated that it had not yet been signed. However, it did not produce any documents relating to the agreement, including any documents indicating that it was sent to or discussed with Taylor. Fairhaven did not even produce an offer letter or any document indicating what it offered to pay Ms. Taylor. Again, it is hard to believe that Ms. Taylor accepted a job offer without being informed in writing what her compensation would be." Again, much of this information is incorrect and based on assumptions about Fairhaven's hiring practices. While Fidelity may believe something does not make it true and correct. There are no notes of discussions, calendar entries, email



September 25, 2020

communications, or text messages that are responsive to your document requests. We disagree with your assertion that phone records to set up interviews with Ms. Taylor would be responsive or relevant to the litigation at hand. Ms. Taylor can provide any cell phone records of phone calls with Fairhaven prior to her hiring, and any such phone records from Fairhaven are irrelevant to your claims in the litigation. Please clarify why such phone records from Fairhaven are relevant, and why you cannot obtain them from Ms. Taylor.

Additionally, you assume, without any reasonable basis, that there are documents related to the unsigned employment agreement. This is incorrect and appears to be based on pure conjecture. You also assert that there was an offer letter or document indicating what Fairhaven offered to pay Ms. Taylor. Again, this is incorrect. There was no offer letter. We have relayed this to you previously, and cannot invent a document that does not exist.

Fairhaven and Fidelity are valued business partners, and Fairhaven remains committed to being a cooperative partner going forward. However, your September 14, 2020 letter assumes the existence of documents that do not exist and makes many incorrect assumptions. Additionally, Fidelity has indicated to Fairhaven that it may drag Fairhaven into the lawsuit between Fidelity and Ms. Taylor in an effort to threaten Fairhaven into forcing Ms. Taylor into a settlement. To the extent Fidelity is bringing Fairhaven in as a party to the existing litigation, please advise us immediately.

Sincerely,

*/s/ Sohil M. Shah*

Sohil M. Shah