IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, )<br>)<br>    Plaintiff/Counter-Defendant, )<br>)<br>    v. )<br>)<br>JENNIFER TAYLOR, FAIRHAVEN WEALTH )<br>MANAGEMENT, LLC, )<br>)<br>    Defendants/Counter-Claimants. )<br>                                      ) | Case No. 1:20-cv-2133 |

**MEMORANDUM OF LAW IN SUPPORT OF
FIDELITY BROKERAGE SERVICES LLC'S MOTION TO DISMISS AND/OR STRIKE
THE COUNTERCLAIMS OF DEFENDANT JENNIFER TAYLOR**

**INTRODUCTION**

Fidelity Brokerage Services LLC ("Fidelity") files this Memorandum of Law in Support of its Motion to Dismiss the Counterclaims of Defendant Jennifer Taylor ("Taylor"). Fidelity initiated this action solely for the purpose of obtaining preliminary injunctive relief to: (1) stop Taylor, a former Fidelity Vice President and Financial Consultant, from using Fidelity's confidential and trade secret customer information to unlawfully solicit Fidelity customers to transfer their business to her at her new firm, Fairhaven Wealth Management ("Fairhaven"); and (2) require Taylor to return the confidential and trade secret customer information she took from Fidelity when she resigned and/or recreated from memory and has shared with Fairhaven, and which both have used to divert Fidelity's customers.

As this Court is aware, Fidelity and Taylor are required to arbitrate the underlying merits of this dispute in accordance with the arbitration rules and regulations of the Financial Industry

Regulatory Authority ("FINRA") pursuant to FINRA Rule 13200.[1] To that end, Fidelity has already initiated FINRA arbitration proceedings and this Court has indicated that it expects to issue a stay of these proceedings upon completion of expedited discovery (which is nearly complete) and additional preliminary injunction briefing, pending the arbitration of Fidelity's claims against Defendant Taylor. *See* Minute Order, Dkt. 60.

Despite evident knowledge of the limited nature of these proceedings and the forthcoming stay in favor of arbitration, Defendant Taylor has now filed an astounding twelve (12) counterclaims against Fidelity and has served extensive written discovery related to these claims, drastically expanding the scope and nature of the case. Eight of the twelve counterclaims concern Taylor's allegations of sex and age discrimination and related claims of retaliation—all of which are completely unrelated to Fidelity's claims for trade secret misappropriation and breach of Taylor's restrictive covenants. As such, Taylor is prohibited from bringing these counterclaims without leave of court under Seventh Circuit precedent. The remaining four counterclaims are claims for alleged tortious interference with actual and prospective business relations. These claims arise out of the same operative facts that form the basis of Fidelity's claims against Taylor and thus are compulsory counterclaims that could have and should have been asserted by Taylor in her original Answer. Taylor's failure to assert these claims earlier results in waiver of the claims. Accordingly, Fidelity respectfully seeks dismissal of each and every one of Defendant Taylor's Counterclaims.

## RELEVANT FACTS

Initially, Fidelity brought its claims against Taylor only, alleging, *inter alia*, that Taylor

---

[1] Although the merits of this case against Taylor will be resolved in arbitration at FINRA, pursuant to FINRA Rule 13804, Fidelity is required to seek and obtain any desired preliminary injunctive relief in a court of competent jurisdiction, and only after that can an expedited FINRA arbitration proceed.

aggressively and blatantly misappropriated Fidelity's confidential and trade secret customer information and used, and continues to use, that information to unlawfully target and solicit Fidelity customers to transfer their accounts to her new firm in violation of her employment agreement and state and federal trade secret laws. *See* Complaint, Dkt. 1, at ¶ 10. Taylor filed an Answer to Fidelity's complaint, asserting various affirmative defenses based on allegations that she was constructively discharged after experiencing age and sex discrimination at Fidelity.[2] *See* Answer, Dkt. 55. Notably, Defendant Taylor <u>did not</u> assert any counterclaims in her original Answer.

Thereafter, through expedited discovery permitted by this Court, Fidelity became aware that Taylor's new firm, Fairhaven, was complicit with, aided and facilitated Taylor's breach of her contract and misappropriation and misuse of Fidelity's trade secret customer information, and even had its own employees solicit and divert Fidelity's customers. Accordingly, Fidelity filed an Amended Complaint on November 4, 2020, adding Fairhaven as a party and asserting related claims against Fairhaven—after requesting and receiving leave of Court to do so. *See* Amended Complaint, Dkt. 61. The Amended Complaint <u>does not</u> change the scope or theory of Fidelity's case against Taylor in any way. Indeed, the Amended Complaint contains identical allegations as the original Complaint and includes only a single additional cause of action against Taylor for civil conspiracy for her role in working with Fairhaven to harm Fidelity. *See* Dkt. 61 at ¶¶ 127-131. The other additional causes of action in the Amended Complaint are directed to Fairhaven, only, and are based on the same essential allegations as were asserted in the original Complaint.

On November 18, 2020, Taylor filed an Answer, Affirmative Defenses and Counterclaim to the Amended Complaint. *See* Dkt. 71. Taylor's Answer to the allegations asserted against her

---

[2] Taylor apparently filed a charge with the Equal Employment Opportunity Commission based on her discrimination allegations and received a Notice of Right to Sue on November 18, 2020.

3

in the Amended Complaint is essentially identical to the Answer she filed to the original Complaint. This is not surprising given the fact that Fidelity's claims and allegations against Taylor did not change in any material way from the original Complaint to the Amended Complaint. As expected, Taylor's affirmative defenses to the Amended Complaint also involve the same factual allegations of gender and age discrimination as she asserted in her original Answer. Surprisingly, however, Taylor's Answer now also includes the following twelve (12) counterclaims against Fidelity, none of which were asserted in her original Answer:

Count I: Age Discrimination – Title VII/ADEA

Count II: Age Discrimination – IHRA

Count III: Sex/Gender Discrimination – Title VII

Count IV: Sex/Gender Discrimination – IHRA

Count V: Unlawful Retaliation – ADEA and Title VII

Count VI: Unlawful Retaliation – IHRA

Count VII: Wrongful Termination – Constructive Discharge

Count VIII: Tortious Interference with Employment Relationship with Fairhaven

Count IX: Tortious Interference with Business Relations with Clients

Count X: Tortious Interference with Prospective Business/Economic Advantage – Former Clients

Count XI: Tortious Interference with Prospective Business/Economic Advantage – New Clients

Count XII: Post-Employment Retaliation in Violation of Title VII, ADEA, and IHRA.

Along with her Amended Answer and newly-filed counterclaims, Taylor served Fidelity with extensive written discovery requests related to her performance and the performance of other financial advisors at Fidelity, presumably in an effort to find any support for her baseless age and

sex discrimination claims. Taylor did not first seek leave of court before amending her Answer to include any of these counterclaims nor did she obtain permission to serve additional discovery beyond the very limited expedited discovery authorized by the Court. Notably, when Taylor sought and moved to compel Fidelity to produce similar information during expedited discovery, the Court denied her request, finding that "[t]hese documents have little relevance to the question of whether Taylor improperly used Fidelity's trade secret and confidential information to solicit Fidelity clients to follow her to Fairhaven" and that the discovery sought would "take the hearing far afield of the limited scope of expedited discovery the Court has authorized." (Dkt. 53).

Counterclaims I-VII and XII should be dismissed because the Seventh Circuit does not permit a defendant like Taylor an unfettered right to add wholly new counterclaims that change the nature and scope of the proceedings when responding to an amended complaint. While the EEOC's issuance of a Notice of Right to Sue may have enabled Taylor to bring her claims for age and sex discrimination against Fidelity in a court of law, she has no basis to and indeed is prohibited from asserting those claims in this action, without leave of court. Moreover, even if Taylor had sought the Court's permission to amend to bring these claims, the claims would not be permitted because Fidelity would be substantially prejudiced by the additional delay and expense that would follow, as already demonstrated by the extensive discovery requests Taylor already served. Finally, Counterclaim Counts VIII-XI could have and should have been asserted by Taylor in her original Answer, as they are compulsory counterclaims under Federal Rule of Civil Procedure 13. Taylor's failure to include these claims in her original Answer results in waiver of the claims. As a result, Fidelity respectfully requests that the Court dismiss or strike all of Taylor's impermissible counterclaims and grant Fidelity's request for preliminary injunctive relief.

**ARGUMENT**

**A. Taylor Was Required To Seek Leave Of Court To Amend Her Answer To Assert Her Counterclaims.**

An amended complaint requires a response—either a motion under Rule 12 or a new (that is, amended) answer. Under Rule 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). District courts have discretion to deny a defendant's motion for leave to file a counterclaim if the defendant fails to offer an explanation for not asserting the claim in the first instance or otherwise fails to explain its delay. *APC Filtration, Inc. v. Becker*, 2009 WL 187912, at *3 (N.D. Ill. Jan. 26, 2009) (citing *Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1114 (7th Cir.1992) (affirming denial of a motion for leave to file counterclaim where defendant failed to provide any legitimate excuse for its "inexcusable" delay in moving for leave to file counterclaim); *Cipa Mfg. Corp. v. Allied Golf Corp.*, 1995 WL 337022, at *3 (N.D. Ill. June 1, 1995) (denying motion for leave to file amended answer, affirmative defenses and counterclaim, and noting that court has discretion to do so where defendant fails to offer justifiable explanation for not asserting the claim in the first instance, or fails to explain its delay)). *See also*, *Cieutat v. HPCSP Investments, LLC*, 2020 WL 4004806 (S.D. Alabama July 15, 2020) (granting plaintiff's motion to strike, or in the alternative to dismiss, defendants' counterclaim, when defendants failed to obtain leave of court to amend their answer and asserted the counterclaim for the first time in response to plaintiff's second amended complaint); *King v. United States*, 2014 WL 3538127 (Fed. Cir. July 17, 2014) (granting plaintiff's motion to strike defendant's counterclaims which were asserted in response to plaintiff's amended complaint without first seeking leave of the court).

The Federal Rules of Civil Procedure do not address whether a defendant may assert, as a

6

matter of right, previously unpleaded affirmative defenses or counterclaims in response to an amended complaint. Accordingly, courts evaluating the propriety of newly-pleaded affirmative defenses or counterclaims typically employ one of three approaches: the narrow, permissive, or moderate rule.[3] In *Burton v. Ghosh*, 961 F.3d 960 (7th Cir. June 8, 2020), the Seventh Circuit rejected the permissive approach—which permits a defendant to assert any affirmative defense or counterclaim whenever an amended complaint is filed—because such an approach "would drastically undermine district judges' control over the pleading process under Rule 15 and would lose sight of Rule 1's instruction to construe the Rules to secure the just, speedy, and inexpensive resolution of civil actions." *Id.* at 967. Instead, the Court followed the moderate approach—adopted by the majority of circuit and district courts throughout the country—which bridges the gap between the other two approaches by focusing on the degree of changes to the amended complaint. Applying the moderate approach, "when a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff.... The obvious corollary is that if an amended complaint does not change the theory or scope of the case, a [defendant] must seek leave of court pursuant to Rule 15(a) before it can amend its answer to assert a counterclaim." *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 42 F. Supp. 3d 520, 524 (S.D.N.Y. 2014) (citations

---

[3] Though not applicable here, "[u]nder the narrow approach, in order for a counterclaim or defense to be permitted as a matter of right, the amendment(s) in the answer must be related to the specific amendment(s) to the complaint." *RamsayNobles v. Keyser*, 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018) (citation omitted). In other words, courts applying the narrow approach hold "that an amended answer must be confined specifically to the amendments" made by the plaintiff. *See Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., Ltd.*, 11 F. Supp. 3d 622, 630 (E.D. Va. 2014). At the opposite end of the spectrum is the permissive approach, which treats an amended complaint as wiping away the prior pleading and, thus, allowing a defendant to belatedly plead any defense or counterclaim in response to the amendment. "Under the permissive approach, any amendment is permitted as a matter of right, regardless of its relation to the amendment to the complaint." *Ramsay-Nobles*, 2018 WL 6985228, at *3 (citation omitted).

omitted).

For context, in *Burton*, Plaintiff Burton injured his knee in 2009 while incarcerated. He filed suit in 2011 alleging deliberate indifference to serious medical needs and retaliation. After several procedural missteps that resulted in dismissal, Burton's counsel filed a new complaint. In 2018, after discovery was complete, and after newly-recruited lawyers took Burton's case, Burton was allowed to file an amended complaint. The amendments were minor and did not alter the theory or scope of the case. The defendants filed a motion to dismiss, raising the new affirmative defense of res judicata, arguing that the dismissal of Burton's first suit with prejudice in 2012 precluded the second, and that the amended complaint permitted new affirmative defenses. The district court granted the motion to dismiss, citing *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999), for the proposition that when the plaintiff files an amended complaint, that complaint "supersedes all previous complaints [and] opens the door for defendants to raise new and previously unmentioned affirmative defenses." 2018 WL 3861560, at *3. The Seventh Circuit reversed, noting that the standards for amending pleadings under Federal Rules of Civil Procedure 8(c) and 15 govern the raising of new affirmative defenses and counterclaims even when an amended complaint is filed. Rejecting the district court's understanding of *Massey*, the Seventh Circuit explained that, "*Massey* is best understood as an application of Rule 15(a)(2): when an amended complaint fundamentally changes the scope or theory of the case, the interests of justice will generally allow a new, relevant affirmative defense to be asserted." *Burton*, 961 F.3d at 967. The Court found that Burton's late amendment to the complaint was minor and did not authorize a new res judicata defense that had been waived or forfeited years earlier, holding that a district court is not required to allow any and all new defenses in response to any amendment, without regard for the substance of the amendment and its relationship to the new defenses. *Id.* at 968.

8

The *Burton* decision makes clear that courts within the Seventh Circuit must follow the moderate approach when evaluating the propriety of newly-pleaded affirmative defenses or counterclaims. Minor amendments by a plaintiff do not open the door for defendants to plead defenses and counterclaims anew. Rather, the ability of a defendant to belatedly plead affirmative defenses or counterclaims depends upon whether the plaintiff's amended pleading "fundamentally changes [the] theory or scope of the case." *Id.* at 967.

**1. Counterclaim Counts I-VII and XII Should Be Dismissed Or Stricken Because They Are Beyond the Scope of The Amended Complaint And Because Taylor Did Not Seek Leave to Amend Her Answer.**

Applying the "moderate approach" described above, Taylor is not permitted as a matter of right to assert her counterclaims for discrimination and retaliation because these claims exceed the breadth of the amendments made by Fidelity in the Amended Complaint. Moreover, the Court should not grant Taylor leave to amend her Answer because these claims will cause substantial prejudice to Fidelity and delay these limited proceedings.

Taylor's Counterclaims I-VII and XII are all related to her allegations of gender and age discrimination and are not at all reflective of the scope or theory of changes in the Amended Complaint. Fidelity's changes in its Amended Complaint did not generate new issues, they simply added similar claims against Taylor's new employer based on the same factual background and allegations against Taylor. While Taylor had previously raised affirmative defenses based on allegations of discrimination, there is nothing in her prior Answer asserting independent causes of action against Fidelity. The addition of these unrelated counterclaims drastically expands the scope of this litigation, which was initiated by Fidelity for the very limited purpose of obtaining preliminary injunctive relief, and will require extensive discovery beyond the limited expedited discovery permitted by the Court. Even if Fidelity's Amended Complaint could be said to expand

the scope or theory of the case to some degree, the breadth of the changes effected by Taylor's Counterclaims far exceeds those in the Amended Complaint. Because Fidelity's Amended Complaint did not change the scope or theory of the case and because Taylor's Counterclaims would have a greater impact on the scope of the litigation, *Burton* mandates that Taylor is required to obtain leave of Court to proceed with her claims.

### 2. The Court Should Not Grant Taylor Leave To Assert Her Unrelated Claims.

Taylor's counterclaims based on her allegations of discrimination and retaliation bear no relationship to Fidelity's underlying claims and do not arise out of the same operative facts that underlie the claims in Fidelity's Amended Complaint. As such, these counterclaims serve no purpose other than to dramatically increase the costs of this litigation, obfuscate the issues, and burden both Fidelity's and this Court's resources. As a result, the Court should not grant Taylor leave to assert these claims in this action.

A trial court may deny a motion to amend where there is undue delay, bad faith, dilatory motive by the plaintiff, prejudice to the opposing party, or the amendment is futile. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004). *See also*, *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 417 (7th Cir. 2019); *Lozier v. Quincy Univ. Corp.*, 2019 WL 2648770, at *2 (C.D. Ill. June 27, 2019); *Park v. City of Chicago,* 297 F.3d 606, 612–13 (7th Cir. 2002). Ultimately, whether an amendment should be granted is left to the sound discretion of the trial court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 819 (7th Cir.1991).

Taylor's new counterclaims would require significant additional discovery—as evidenced by the written discovery requests already served by Taylor— which would lead to significant delay of the resolution of this case. In view of the differences in the claims and relief sought, there is no

judicial benefit to be gained by allowing Taylor to assert these unrelated counterclaims in this matter. *See APC Filtration, Inc. v. Becker*, 2009 WL 187912, at *3 (N.D. Ill. Jan. 26, 2009) (district court denied the defendant's motion to file counterclaims due in part to the defendant's delay, but also because the counterclaims were merely permissive, not compulsory, thus the defendant would not suffer any prejudice from bringing the claims in a separate action). Taylor is not foreclosed from pursuing her unrelated claims in an appropriate, more convenient forum where they will not cause undue prejudice to Fidelity. Thus, judicial considerations of fairness, convenience, and availability of alternatives dictate that Taylor's Counterclaims I-VII and XII be stricken.

### B. Taylor Waived Counterclaim Counts VIII-XI By Failing To Assert These Compulsory Counterclaims In Her Original Answer.

While all of Taylor's counterclaims should be dismissed because she failed to seek leave of court before asserting them, Counterclaim Counts VIII-XI must also be dismissed or stricken because they are compulsory counterclaims that Taylor waived by failing to assert them in her original Answer.

There are two kinds of counterclaims: compulsory and permissive. Fed. R. Civ. P. 13. A compulsory counterclaim is one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). In the Seventh Circuit, the standard for deciding whether two claims arise out of the "same transaction" for purposes of Rule 13(a) is the "logical relationship" test. *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (citing *Burlington N. R.R. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990)). To determine whether claims are logically related, "[a] court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual

11

backgrounds." *Burlington*, 907 F.2d at 711. Federal Rule of Civil Procedure 13(a) requires a pleading to include as a compulsory counterclaim any claim that the pleader has against an opposing party *at the time the pleading is served*. Fed. R. Civ. P. 13(a) (emphasis added); *Lerman v. Turner*, 2012 WL 1409526, at *1 (N.D. Ill. Apr. 23, 2012) ("Rule 13 governs counterclaims and requires counterclaims to be stated at the time an answer is served.").

Taylor's Counterclaims Counts VIII-XI arise out of the same factual background and are logically related to Fidelity's claims against Taylor. Taylor's allegations that Fidelity tortiously interfered with "her clients" and her new employment would not be possible absent Taylor's decision to leave Fidelity, join Fairhaven, and solicit Fidelity's clients using Fidelity's trade secret customer information, all of which led to Fidelity's decision to seek an injunction against her in this action. As such, Counterclaim Counts VIII-XI are compulsory counterclaims that were available to Taylor at the time that Fidelity filed its original Complaint, and Rule 13(a) required Taylor to assert these claims in her original Answer. Because Taylor filed her original Answer to Fidelity's Complaint on July 10, 2020 (Dkt. 55) but failed to assert any of the available counterclaims for alleged tortious interference against Fidelity, Taylor waived these claims. *See Ergo v. Int'l Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007) (noting that "an employer that fails to assert legitimate claims against an employee arising from the same transaction as the employee's FLSA complaint would waive those claims."); *David Wood v. LP Conversions, Inc.*, 2014 WL 7359406, at *1 (D. Kan. Dec. 23, 2014) (granting plaintiff's motion to dismiss defendant's counterclaim after determining that defendant waived any compulsory counterclaims against plaintiff by failing to assert such counterclaims in its original Answer); *HID Global Corp. v. Leighton*, 2007 WL 3566705 at *2 (N.D. Ohio Nov. 15, 2007) (citing *Kane v. Magna Mixer Co.*, 71 F.3d 5555, 562-63 (6th Cir. 1995) ("One who fails to bring a compulsory

12

counterclaim is barred from later bringing that claim under a waiver theory.").

If this Court were to grant Taylor leave to assert her counterclaims despite clear waiver of these claims, Fidelity would be prejudiced by Taylor's undue delay. In *Cipa Mfg. Corp. v. Allied Golf Corp.*, 1995 WL 33702 (N.D. Ill. June 1, 1995), the district court denied defendant's motion for leave to amend to assert an additional affirmative defense—which the court determined was actually a counterclaim—months before trial because granting defendant's requested relief would force the court to extend discovery and it would prejudice the plaintiff at such a late stage in the litigation. *Id.* Similarly, here, Fidelity would suffer significant prejudice if the Court allows Taylor's counterclaims to proceed. Fidelity initiated this action for the limited purpose of obtaining preliminary injunctive relief prior to arbitration on the underlying merits of Fidelity's claims before a FINRA panel. Knowing this, Taylor waited for over four months after filing her original Answer to assert counterclaims, which could have and should have been filed in her initial pleading, without ever seeking leave of Court to do so. Expedited discovery is nearly complete, and the Court has indicated that it expects to issue a stay of these proceedings after its decision on the preliminary injunction. Justice does not require that Taylor be permitted, at this late date and so near to the close of expedited discovery, to assert counterclaims based on information that was available to her from the date the original complaint was filed. *See APC Filtration, Inc. v. Becker*, 2009 WL 187912, at *3 (N.D. Ill. Jan. 26, 2009) ("District courts have discretion to deny a defendant's motion to file a counterclaim if the defendant fails to offer an explanation for not asserting the claim in the first instance or otherwise fails to explain its delay). As a result, Taylor's Counterclaim Counts VIII-XI should be dismissed or stricken.

## **RELIEF REQUESTED**

For the reasons asserted above, Fidelity respectfully submits that this Court should dismiss

13

or strike Defendant Taylor's Counterclaim Counts I-VII and XII because Taylor failed to seek leave of Court before asserting these claims, which bear no relation to Fidelity's cause of action, will dramatically increase the costs of this litigation, and will unduly burden both the Plaintiff and this Court's resources. Fidelity also respectfully requests that Counterclaims VIII-XI be dismissed or stricken because Defendant Taylor waived her right to assert these compulsory counterclaims by not including them in her original Answer.

Dated: December 9, 2020

Respectfully submitted,

FISHER & PHILLIPS LLP

/s/ *Joel W. Rice*
Joel W. Rice
Franklin Z. Wolf
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
TEL: (312) 346-8061
FAX: (312) 346-3179
jrice@fisherphillips.com
fwolf@fisherphillips.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 9th day of December, 2020, the foregoing document was filed via the Court's electronic filing system, which sent notice to the following:

Christopher Griesmeyer<br>
Zachary Mulcrone<br>
Greiman, Rome & Griesmeyer, LLC<br>
Two N. LaSalle, Suite 1601<br>
Chicago, Illinois 60602

COUNSEL FOR DEFENDANTS

                                        */s/ Joel W. Rice*
                                        Attorney for Plaintiff

FP 38830951.4
FP 39185770.2