IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, | ) |
| Plaintiff/Counter-Defendant, | ) ) ) |
| v. | ) ) Case No. 1:20-cv-2133 |
| JENNIFER TAYLOR and FAIRHAVEN WEALTH MANAGEMENT, LLC, | ) ) ) ) |
| Defendants/Counter-Claimants. | ) ) ) |

**PLAINTIFF FIDELITY BROKERAGE SERVICES LLC'S COMBINED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RULE 37(e) SPOLIATION SANCTIONS AGAINST DEFENDANT JENNIFER TAYLOR**

Plaintiff Fidelity Brokerage Services LLC ("Fidelity") respectfully moves for an Order, pursuant to Federal Rule of Civil Procedure 37(e), sanctioning Defendant Jennifer Taylor ("Taylor") for: 1) failing to preserve the vast majority of text message communications she had with Fidelity customers shortly after she resigned, and 2) disposing of the cellular telephone that she was using at the time she resigned from Fidelity, despite having notice of her duty to preserve those communications and devices containing relevant information.

I. **PRELIMINARY STATEMENT AND FACTUAL BACKGROUND**

In its Motion for a Preliminary Injunction and supporting documents, Fidelity set forth evidence that Defendant Taylor, a former Fidelity Vice President and Financial Consultant, violated her legal duties to Fidelity by using trade secret customer information to facilitate her solicitation of multiple Fidelity customers both before and after she resigned to join another financial advisory firm, Defendant Fairhaven Wealth Management, LLC ("Fairhaven").

After Taylor resigned from Fidelity on March 6, 2020, she was sent a letter from Fidelity's HR department enclosing a copy of her Employment Agreement and reminding her of her post-employment obligations pursuant to the agreement, including her obligation not to solicit Fidelity's clients and her obligation to return all of Fidelity's confidential and trade secret customer information. A true and correct copy the correspondence is attached hereto as **Exhibit A**. Shortly after she resigned, however, Fidelity began receiving multiple reports that Taylor—and representatives from Fairhaven acting on her behalf—were soliciting Fidelity customers and attempting to induce them to transfer their business.

On March 20, 2020, Fidelity's in-house counsel sent Taylor correspondence demanding that she cease soliciting Fidelity's clients, requesting that she return any confidential or proprietary information belonging to Fidelity, including, *inter alia*, client names, phone numbers, addresses and/or email addresses, whether in original, copied, computerized, handwritten or any other form. A true and correct copy of the March 20, 2020 correspondence is attached hereto as **Exhibit B**. Fidelity further directed Taylor to refrain from deleting any such information that she had in electronic form, and instead, directed Taylor to contact Fidelity to coordinate preservation of the information in a forensically sound manner. *Id*. Finally, <u>Fidelity gave notice to Taylor of her obligation to preserve evidence that she knew or should have known might be relevant to any potential lawsuit, including any data generated by and/or stored on any smart phones or computers, or contained in email, text message, or voicemail</u>. *Id.*

### A. Taylor Failed to Preserve Text Messages

In accordance with the Court's Order granting expedited discovery in this matter, Fidelity served limited document requests on Taylor on or about May 25, 2020. A true and correct copy of Fidelity's First Request for Production of Documents Directed to Defendant Taylor is attached

hereto as **Exhibit C**. Included in those requests, Fidelity sought production of, *inter alia*, <u>all text messages</u> concerning any communication with any Fidelity customer by Taylor or anyone at Fairhaven acting on her behalf. *Id.* at Request 1. In response, Taylor produced approximately ten text message communications she had with Fidelity customers. Although Taylor only produced ten text exchanges with Fidelity customers, the phone records that she produced, which reflect the occurrence but not the substance of text messages, indicate that there were many more text exchanges with customers in the period after she resigned. The phone records specifically identify which communications were text messages versus phone calls, and Fidelity was able to determine that those communications were to Fidelity clients by cross matching them with the numerous mobile phone numbers that Taylor also admitted to having in her possession and produced in discovery.

Given the discrepancy between the number of text messages produced by Taylor and the number of text messages that were clearly sent to clients but were not produced, counsel for Fidelity asked Taylor about the discrepancy at her deposition to determine if there was some mistake in Fidelity's understanding of the documents. Taylor's testimony in fact confirmed Fidelity's understanding that the phone records indicated text messages that were sent to or from Taylor's personal cell phone and that the numbers she was communicating with were indeed those of Fidelity customers. Fidelity's counsel reviewed two examples with Taylor and she agreed that the phone records she produced showed text messages to those Fidelity clients, though she claimed she could not recall sending those messages. *See* Excerpts from Taylor's Deposition Transcript ("Taylor Dep.") at 143:23-145:24, attached hereto as **Exhibit D**.[1] Although Taylor has now admitted to having text exchanges with those clients, they have not been produced.

---

[1] Counsel for Fidelity then followed up as to the production of the missing text messages:

The evidence, now confirmed by Taylor's testimony, proves that Taylor had numerous exchanges with Fidelity customers after resigning, but she has failed to produce the vast majority of those messages. Worse, Taylor's cagey testimony that she "produced all the text messages on [her] phone," evidences that Taylor has failed to preserve the missing text communications. Taylor Dep. at 144:22-145:6. As a result, Fidelity is unable to determine what Taylor said to those customers in the numerous text messages that are confirmed to have occurred, but the substance of which was not preserved.

Shortly after she resigned Taylor received two letters from Fidelity reminding her of her obligation not to solicit Fidelity customers and not to use or disclose Fidelity's confidential customer information. Taylor was also specifically reminded that evidence in that regard had to be preserved, including electronic documents, and specifically including text messages. Taylor's many documented text exchanges with Fidelity customers in the weeks immediately after she resigned, and failure to preserve and produce those text messages, is clear spoliation. The text messages were evidence of Taylor's communications with Fidelity's customers and Taylor had an unambiguous duty to preserve that evidence, particularly in light of the letters sent by Fidelity reminding her of her legal obligations and duty to this exact evidence. This is not some tangential evidence that went missing. It is core to the matter. This is a case about misuse of confidential

---

*Q.     Have you produced all the text messages you sent with [Fidelity] clients after you resigned?*
*A.     I produced all the text messages on my phone.*
                                        *\*\*\**
*Q.     Did you preserve text messages that you had with [Fidelity] clients?*
*A.     Yes.*
*Q.     Okay. So we do not see these text messages or many of the text messages in the production. Have those not been produced to your counsel, are we going to be getting those?*
*A.     I don't know. I don't know why* [sic] *they are, I don't know.*
Taylor Dep. at 141:19-24, 144:22-145:6.
in

4

client information and breach of a covenant not to solicit clients -- and the spoliated evidence is written communications with those clients during the key time period immediately following Taylor's job change.

### B. Taylor Failed to Preserve the Personal Phone Containing Contacts

When Taylor resigned from Fidelity, she had a personal Android phone that had a Contact system.[2] Taylor's counsel recently confirmed that she purchased a new iPhone on April 11, 2020. When she purchased the new iPhone, Taylor testified that she asked the employees at the store to download or transfer information, including her Contact list, from her old phone onto the new phone. Taylor Dep. at 46:3-47:10, 44:17-45:6. Taylor now claims that the customer information contained on her iPhone was only put there after she resigned. However, Fidelity is unable to test whether she had the information on her personal phone at the time she resigned and thereafter because she failed to preserve that phone.

Fidelity requested that Taylor produce an image of her current iPhone for forensic review in an attempt to resolve this evidentiary issue through other means. Through a forensic examination of Taylor's Contacts, Fidelity hoped to learn the client-contact creation dates, in order to confirm that Taylor unlawfully took client contact information with her when she resigned.

---

[2] Taylor having customer information on her personal cellphone – as Fidelity now believes was the case – is a direct violation of Fidelity's policies as described more fully in the Declaration of William Duserick, submitted contemporaneously with this Motion. Fidelity's policies prohibit Financial Consultants from transferring customer information to their personal devices and allow them to do so only under the strict terms of Fidelity's Bring Your Own Device ("BYOD") policy which, among other things, requires them to delete that information upon the termination of their employment. Further, Fidelity's BYOD policy provides that employees who use their personally owned mobile device for business must install and use Fidelity specified device management software, use authorized communication applications only, and allow Fidelity to wipe and/or remove business related information from the device. By storing client contact information directly on her phone, rather than on the authorized applications provided by Fidelity, and by failing to delete that information upon her departure, Taylor did not follow any of these requirements.

Unfortunately, however, both Taylor's counsel and a forensic expert Fidelity consulted recently confirmed that an image of Taylor's new iPhone almost certainly will only show the date the Contact information was transferred from Taylor's old Android phone to her new iPhone, and *not* the date the Contact information was originally added to her old phone. *See* Correspondence from Christopher Griesmeyer, Esq. dated February 1, 2021, attached hereto as **Exhibit E**. The original Contact creation dates would have been available to Fidelity if Taylor had preserved her old phone. Thus, the data showing the client contact creation dates is now forever lost due to Taylor's failure to preserve her old phone.

This is significant because Taylor has now denied having that Fidelity customer information on her cellular phone at the time she resigned, and has even gone so far as to state that the new iPhone Contacts prove that. Specifically, in her defense briefing, Taylor denied that she had Fidelity customer information on her personal cell phone at the time she resigned, said that was an "egregious misrepresentation," and asserted that "[n]one of her iPhone contacts suggest Ms. Taylor had Fidelity customer information in her cell phone at the time she resigned". That of course is apropos of nothing, because both Taylor's counsel and Fidelity's forensic expert agree that the iPhone Contacts would not have imported the original creation date of those Contacts on her old phone. Ms. Taylor destroyed the phone that would have confirmed when those Contacts were created, and whether she had them when she resigned. This lost evidence goes to the very heart of Fidelity's breach of contract and misappropriation claims and Taylor should not be able to use the lack of such evidence (evidence she intentionally destroyed) to her benefit. To the contrary, the lack of evidence should give rise to the inference that she did, in fact, bring Fidelity client names and contact information with her via her personal cell phone when she left Fidelity

6

and accepted employment with Fairhaven, and that the client data presently on her personal iPhone is in fact misappropriated from Fidelity.

## II. ARGUMENT

Taylor should be sanctioned for her intentional failure to preserve highly-relevant electronically stored information ("ESI") and the Android phone that she had when she resigned and disposed of shortly afterwards, thereby destroying the only evidence of when the customer Contacts on her phone originated. Indeed, given the severity of prejudice inflicted upon Fidelity as a result of Taylor's conduct, the Court should order that any fact-finder in this litigation going forward infer that Taylor was soliciting Fidelity's customers in the missing text messages and that she had Fidelity's customer information on her personal cell phone when she resigned.

### A. Legal Standard

"Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). "The Federal Rules of Civil Procedure gives the Court the authority to sanction a party for failure to preserve electronically stored documents." *Doe v. City of Chicago*, No. 18-cv-03054, 2019 WL 2994532, at *3 (N.D. Ill. July 9, 2019). Federal Rule of Civil Procedure 37(e), which provides remedies that a federal district court may order when a party fails to preserve or destroys ESI, states:

> (e) If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>   (1) upon finding of prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>   (2) only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Sanctions under subsection (e)(1) require a finding of prejudice and are limited to "measures no greater than necessary to cure the prejudice." *Schmalz v. Village of North Riverside*, 2018 WL 1704109, at *2 (N.D. Ill. Mar. 23, 2018). Rule 37(e) does not explicitly place the burden of proving or disproving prejudice on either party, and the court is given great discretion in assessing prejudice. *Id.* By contrast, sanctions under subsection (e)(2) require "a finding that the party acted with the intent to deprive another party of the information's use in the litigation." *Id.* Subsection (e)(2) applies to the most severe sanctions available under Rule 37, including permissive or mandatory adverse inference instructions to the jury, dismissal or entry of a default judgment. *Id.; see also* Fed. R. Civ. P. 37(e), 2015 Amendment Advisory Committee Notes.

Under Rule 37(e), before awarding sanctions, a court must first make a finding that: (a) the ESI "should have been preserved in the anticipation or conduct of litigation"; (b) "a party failed to take reasonable steps to preserve" the ESI; (c) the ESI was "lost" as a result; and (d) the ESI "could not be restored or replaced by additional discovery." *Love v. City of Chicago*, No. 09-c-03631, 2017 WL 5152345, at *4 (N.D. Ill. Nov. 7, 2017); Fed. R. Civ. P. 37(e); 2015 Amendment Advisory Committee Notes.

### B. Taylor Knew The Text Messages and Android Phone Should Have Been Preserved, Failed To Take Reasonable Steps to Preserve Them, And The Deleted Text Messages and Lost Phone Cannot Be Replaced.

Taylor has admitted that she knew she had a contractual obligation not to solicit or induce customers to transfer their business away from Fidelity. Taylor also knew that, while customers

8

may have been maintaining their assets at Fidelity because of Fairhaven's asset custody arrangement with Fidelity, she was diverting one of the key services that Fidelity had been providing and was charging them meaningful fees to do so, fees that would then no longer be received by Fidelity. Accordingly, her communications with Fidelity customers would be directly relevant to whether or not she violated the contractual obligations of which she was well aware.

Taylor also knew that she was under an obligation to retain any communications she had with Fidelity customers after she resigned, and that she was not permitted to retain Fidelity's confidential customer contact information upon her resignation. Fidelity's in-house counsel sent her a detailed letter putting Taylor on notice that she may be sued because Fidelity was receiving reports that Taylor was soliciting clients and reminding Taylor that she had a duty to preserve electronic evidence, including all text message communications and electronic devices that she knew or should have known might be relevant to any potential lawsuit. *See*, Ex. B. *See also BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2018 WL 1616725, at *8 (N.D. Ill. Apr. 4, 2018 (the duty to preserve exists not only once a lawsuit is filed, but even before that, for the duty to preserve evidence "also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.").

Notwithstanding this notice, Taylor completely disregarded her duty to preserve numerous text messages she sent to and received from Fidelity customers in the days and weeks immediately after she resigned. Indeed, based on the fact that Taylor preserved *some* but not *all* of her text communications with Fidelity customers from this same time frame, the Court can logically conclude that she actively chose to delete those messages that have not been produced, and which likely would not have supported her strained defense in this case.

9

Taylor testified that she produced all the text messages she had "in her phone"—but not all text messages she sent to Fidelity customers—in response to Fidelity's document requests months ago. Taylor "doesn't know" where the missing text messages might be, but text messages do not just disappear—they are either saved in some form or deleted. Given Taylor's testimony that she has no other text messages to produce, the missing messages are irretrievably lost and what she said to customers in those text exchanges will never be known.

Likewise, Taylor willingly disposed of the cell phone she had at the time she resigned, and did so *after* receiving express notification from Fidelity's in-house to preserve the same. The information Fidelity could have recovered from her phone is highly relevant to (a) whether Taylor violated her Agreements with Fidelity by retaining confidential and proprietary customer Contact information when she resigned; (b) whether Taylor misappropriated Fidelity's trade secret customer information; and (c) whether Taylor is a credible witness. There can be no serious doubt that the Android phone and text messages to Fidelity customers in the days and weeks after Taylor resigned, when she knew full well that she was under an obligation not to solicit customers, should have been preserved. They contained evidence that goes to the heart of this case. Yet Taylor, despite knowledge that the communications were not to be destroyed, and that her electronic devices were to be preserved, *intentionally* chose not to take reasonable (and quite easy) steps to preserve them. Instead of abiding by her duty of preservation, Taylor breached her duty and destroyed evidence in bad faith.

### C. Taylor Acted With The Intent To Deprive Fidelity Of The Information Contained In Her Cellular Phone Her And Text Messages With Fidelity Customers And Fidelity Is Now Prejudiced.

Taylor's preservation of some, but not all, of her text message communications with Fidelity customers immediately after she resigned, can only mean that she chose to delete those

10

communications in which she solicited Fidelity customers in violation of her post-termination restrictive covenants. Moreover, her purposeful disposal of her Android phone suggests that she intended to hide valuable evidence of her unlawful conduct from Fidelity.

"A party suffers prejudice due to spoliation of evidence when the lost evidence prevents the aggrieved party from using evidence essential to his underlying claim." *Krumwiede v. Brighton Assoc. Inc.*, 2006 WL 1308629, at *10 (N.D. Ill. May 8, 2006). The prejudice suffered by Fidelity here is apparent. Evidence of the precise nature and content of Taylor's communications with Fidelity customers is essential to Fidelity's claims in this lawsuit. Fidelity's in-house counsel explicitly notified Taylor of her duty to preserve this evidence, but she failed to do so and now the evidence has been destroyed and cannot be replaced. *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12 CV 1851, 2016 WL 4765689, at *3 (N.D. Ill. Sep. 13, 2016) ("The district court may sanction a party that has failed to take reasonable steps to preserve electronically stored information if that information should have been preserved during the litigation, but it has been lost and cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e)."); *Hartford Cas. Ins. Co. v. Contextmedia, Inc.*, 65 F. Supp. 3d 570, 582 (N.D. Ill. 2014) ("Moreover, the letter explicitly notified ContextMedia of its 'continuing legal duty to preserve all documents, no matter what form those documents are in, that are relevant or potentially relevant to this matter or risk court-imposed sanctions, fines, or other penalties for spoliation of evidence.'")

To the extent Taylor may argue that Fidelity is not prejudiced because there are other means to obtain the contents of the text messages, that argument is unavailing. "A party has the right to prosecute its case in the way it deems fit based on all available relevant evidence." *Larson v. Bank One Corp.*, 2005 WL 4652509, at *14 (N.D. Ill. Aug. 18, 2005); *see also Hickman v. Taylor*, 329

11

U.S. 495, 507, 67 S. Ct. 385, 392 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."). Taylor conveniently made phone calls to clients – which prevents Fidelity from obtaining the substance of those calls other than through Taylor's own self-serving testimony. Now, she has further deleted text messages, irrevocably erasing further proof of her solicitation.[3] Text messages are important evidence as they are written communications, not subject to one's memory or self-serving perception, and often contain more personal communications. *See BankDirect*, 2018 WL 1616725, at *10 ("The value of emails and texts messages can be particularly significant in litigation due to the fact that the ease of sending or replying to such messages can cause people to say things they might not otherwise say in traditional correspondence. Indeed, they are often replete with unrehearsed, spontaneous statements that surpass in simplicity and frankness and ease of understanding other far more complicated bits of evidence . . . Simply stated, '[e]lectronic communications have the potential to . . . provide the proverbial smoking gun.'").

Without the deleted text messages, Plaintiff is deprived of the opportunity to know what was said to its customers in the period right after Taylor resigned and was contacting customers from a list of 160 Fidelity customers and their contact information, including their mobile phone numbers. Moreover, because Fidelity cannot obtain information about the contact creation dates from Taylor's new phone, Fidelity is forever deprived of the opportunity to know whether or not Taylor took its confidential customer information in her cell phone when she resigned. Accordingly, the Court should find that Fidelity has suffered a high-level of prejudice as a result of Taylor's spoliation of highly relevant electronically stored information.

---

[3] Fidelity cannot even rely on Taylor's testimony as to what was contained in those text messages since she testified that she could not recall the contents of the deleted text messages. *See, e.g.*, Taylor Dep. at 144:11-17.

12

### D. Taylor Should Be Sanctioned For Intentional Spoliation

Upon a finding of prejudice, a court may order "measures no greater than necessary to cure the prejudice." *Schmalz*, 2018 WL 1704109, at *4 (citing Fed. R. Civ. P. 37(e)(1)). The court has much discretion to fashion an appropriate sanction, and "[t]he range of such measures is quite broad if they are necessary for this purpose." *Id.* Because an adverse inference is among the more severe sanctions available pursuant to the Federal Rules of Civil Procedure, the Seventh Circuit requires a finding that the offending party acted in "bad faith," meaning, in this context, for the purpose of hiding adverse information. *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 548-49 (7th Cir. 2017); *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (sanction appropriate where a party displays "willfulness, bad faith, or fault"). *See also Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) ("A party destroys a document in bad faith when it does so for the purpose of hiding adverse information.") (quotations omitted). The movant bears the burden to make this showing, though the court may also rely on "the totality of the circumstances" to infer bad faith. *Lina Dou v. Carillon Tower/Chicago LP*, No. 18 CV 7865, 2020 WL 3036002, at *6 (N.D. Ill. June 5, 2020) (*citing S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982)). Circumstantial evidence of bad faith conduct is "by far the most common means of proving intentional destruction of evidence." *BankDirect*, 2018 WL 1616725, at *11 (citing *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071 (6th Cir. 2014)).

Here, Taylor intentionally disposed of her Android phone and purposefully saved some, but not all, of the text message communications she had with Fidelity's customers shortly after her resignation despite knowing that she had an obligation to preserve such evidence. The circumstantial evidence strongly suggests that Taylor attempted to shield her misconduct by permanently erasing electronic evidence of her wrongdoing. Given the high level of prejudice

13

FP 39703891.4

inflicted upon Fidelity as a result of Taylor's intentional bad-faith conduct, Fidelity requests that the Court issue an Order stating that any fact-finder in this litigation going forward should infer that Taylor <u>was soliciting</u> Fidelity's customers in the missing text message communications, and that she had Fidelity's customer information on her personal cell phone when she resigned. While such an adverse inference is considered one of the more severe sanctions available under Rule 37(e), Taylor's intentional bad-faith act of depriving Fidelity of highly-relevant information for use in litigation warrants the imposition of such a sanction.

Accordingly, pursuant to Federal Rules of Civil Procedure 37(e) Taylor should be properly sanctioned by this Court ordering the imposition of an adverse instruction to the finder of fact, to find (1) that Taylor had a duty to preserve the missing text messages, that these deleted electronic communications would have been unfavorable to Taylor if produced, and that the fact-finder should infer that Taylor was soliciting Fidelity customers through the deleted text messages; and (2) that Taylor had a duty to preserve her old Android phone, that the phone contained information about the creation date of the Fidelity clients in Taylor's Contacts that would have been unfavorable to Taylor if discovered, and that the fact-finder should infer that Taylor had Fidelity's confidential client information on her personal cell phone when she resigned.

### III. <u>CONCLUSION</u>

For the reasons set forth above, Fidelity respectfully submits that this Court should enter an Order finding that Fidelity is prejudiced by Taylor's intentional spoliation of cellular phone and text message communications between Taylor and Fidelity customers and ordering the imposition of an adverse instruction to the finder of fact in accordance with proposed form Order attached hereto, along with any other relief the Court deems appropriate.

14

Dated: February 5, 2021　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　FISHER & PHILLIPS LLP

　　　　　　　　　　　　　　　　　　　　/s/ *Susan M. Guerette*
　　　　　　　　　　　　　　　　　　　　Susan M. Guerette (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Two Logan Square, 12th Floor
　　　　　　　　　　　　　　　　　　　　100 N. 18th Street
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　TEL: (610) 230-2133
　　　　　　　　　　　　　　　　　　　　FAX: (610) 230-2151
　　　　　　　　　　　　　　　　　　　　sguerette@fisherphillips.com

　　　　　　　　　　　　　　　　　　　　Joel W. Rice
　　　　　　　　　　　　　　　　　　　　Franklin Z. Wolf
　　　　　　　　　　　　　　　　　　　　10 South Wacker Drive, Suite 3450
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　TEL: (312) 346-8061
　　　　　　　　　　　　　　　　　　　　FAX: (312) 346-3179
　　　　　　　　　　　　　　　　　　　　jrice@fisherphillips.com
　　　　　　　　　　　　　　　　　　　　fwolf@fisherphillips.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 5th day of February, 2021, the foregoing document was filed via the Court's electronic filing system, which sent notice to the following:

Christopher Griesmeyer
Zachary Mulcrone
Greiman, Rome & Griesmeyer, LLC
Two N. LaSalle, Suite 1601
Chicago, Illinois 60602

COUNSEL FOR DEFENDANTS

            /s/ *Joel Rice*
            Attorney for Plaintiff

FP 39703891.4