# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FAIRHAVEN WEALTH MANAGEMENT, LLC, ) <br> ) <br> Defendant. ) <br> _____) <br> ) <br> JENNIFER TAYLOR, FAIRHAVEN WEALTH ) <br> MANAGEMENT, LLC, ) <br> ) <br> Counter-Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FIDELITY BROKERAGE SERVICES LLC, ) <br> ) <br> Counter-Defendant. ) | Case No. 1:20-cv-2133 |

## COUNTERCLAIMANTS' RESPONSE IN OPPOSITION TO MOTION TO STAY

Defendant/Counter-Plaintiff, Fairhaven Wealth Management, LLC ("Fairhaven"), and Counter-Plaintiff, Jennifer Taylor ("Taylor"), hereby respond in opposition to the Motion for Stay Pending Arbitration of Plaintiff/Counter-Defendant, Fidelity Wealth Management, LLC ("Fidelity"). (Dkt. 114).

GREIMAN, ROME & GRIESMEYER, LLC<br>
205 West Randolph Street, Suite 2300<br>
Chicago, Illinois 60606<br>
(312) 428-2750<br>
Christopher S. Griesmeyer (# 6269851)<br>
Zachary P. Mulcrone (# 6300387)

**PRELIMINARY STATEMENT**

It has been **17 months** since Ms. Taylor and Fairhaven filed their claims against Fidelity.[1] (Dkts, 71, 72). By obtaining a *de facto* stay of court, Fidelity halted those claims in their tracks. Now Fidelity seeks to extend the stay indefinitely, until after it has had the luxury of prosecuting its own claims against Ms. Taylor in the related FINRA arbitration. As a simple matter of fairness, the Court should not allow a stay. Both Ms. Taylor and Fairhaven are victims of Fidelity, and should not be forced to endure several years of delay simply because Fidelity won the race to the courthouse. The Court should also deny a stay as a matter of sound procedure. None of the claims that will proceed in this Court are arbitrable, and under the normal rules of parallel-proceeding abstention, no stay is warranted. Federal courts have a "virtually unflagging" obligation to exercise jurisdiction and can abstain from doing so in deference to parallel proceedings only in "exceptional circumstances." Fidelity proposes a different test that turns on whether there is a risk of inconsistent rulings because the arbitration is likely to resolve issues material to the lawsuit. There is no such risk here. Even if the issues overlapped (they do not), the FINRA arbitration will have no preclusive effect on the federal claims. No stay is warranted.

**THE PARTIES' CLAIMS**

I. **THIS FEDERAL ACTION INVOLVES DIFFERENT ISSUES THAN THE FINRA ARBITRATION.**

The issues in this federal action are different than the issues before FINRA:

- Ms. Taylor's federal claims against Fidelity are all statutory employment claims based on Fidelity's age and sex/gender discrimination against Ms. Taylor.[2]

---

[1] Based on the recent flurry of motion practice, and the March 23, 2022 hearing, we presume there is no need to rehash the procedural posture of this case. Instead, we incorporate by reference the procedural history set forth in Counterclaimants' Motion to Compel. (Dkt. 112 at 3-11).

[2] In addition to statutory employment claims, Ms. Taylor initially asserted common law tortious interference (Counts VIII – XI) and wrongful termination/constructive discharge (Count VII) counterclaims. (Dkt. 71). However, now that Fidelity has chosen to move forward with its FINRA arbitration, Ms. Taylor does not intend to pursue those claims in federal court. The Court has the inherent authority to drop these claims.

1

- Ms. Taylor's counterclaims in the FINRA arbitration primarily concern Fidelity's interference with her long-term customer relationships. Specifically, Fidelity improperly refused to give the customers Ms. Taylor's contact information (as required under its internal guidelines and FINRA rules), and created the false impression for customers that Ms. Taylor was still employed with Fidelity after her termination. Ms. Taylor also alleges that Fidelity's bad faith machinations interfered with her Fairhaven relationship.

- Fidelity's claims against Ms. Taylor in the FINRA arbitration concern Ms. Taylor's alleged misappropriation of information from Fidelity and solicitation of Fidelity clients, in violation of the responsibilities Ms. Taylor allegedly owed to Fidelity.

- Fidelity's federal claims against Fairhaven concern Fairhaven's alleged involvement in Ms. Taylor's improper solicitation of clients. While this may sound similar to Fidelity's claims against Ms. Taylor, the issues will be far different. Ms. Taylor's duties to Fidelity arose out of her employment relationship with Fidelity. Fairhaven had no such relationship with Fidelity. The claims against Fidelity will turn on its knowledge or encouragement of Ms. Taylor's actions, and whether Fairhaven owed Fidelity any duties whatsoever.

- Fairhaven's federal claims against Fidelity are primarily focused on the millions of dollars' worth of damage Fidelity caused Fairhaven by wrongfully terminating their custodial arrangement. This has no counterpart in the arbitration.

Because the issues do not overlap, a ruling in one proceeding will have no effect on the other.[3]

## II. THE CLAIMS INVOLVING FAIRHAVEN ARE NOT ARBITRABLE.

Fidelity suggests in a footnote that claims involving Fairhaven are arbitrable before FINRA (but stops short of saying they *should* be arbitrated). (Dkt. 114 at 5 n.1). The Fairhaven claims

---

*Jose-Nicolas v. Berry*, No. 3:15-CV-964-NJR-DGW, 2018 WL 1466769, at *3–4 (S.D. Ill. Mar. 2, 2018). As the Supreme Court explained in *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016), "The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court. But they are not all encompassing. They make no provision … [for many] standard procedural devices trial courts around the country use every day in service of Rule 1's paramount command: the just, speedy, and inexpensive resolution of disputes." A court may exercise its inherent authority if (a) it is a "reasonable response to the problems and needs confronting the court's fair administration of justice," and (b) is not "contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id*. (quotations omitted). Dropping Ms. Taylor's non-statutory claims – without prejudice – would meet these criteria.

[3] Fidelity notes that the fact section of Ms. Taylor's FINRA counterclaims is similar to her federal counterclaims. (Dkt. 114 at 10-11). This does not mean there are overlapping issues. Ms. Taylor simply reused the fact section of her federal counterclaims for the sake of efficiency (as FINRA does not impose any pleading standards), and to give the arbitrators a solid factual background.

are not arbitrable. FINRA Rule 13200(a) requires certain claims between two member firms or "associated persons" to be arbitrated before FINRA.[4] Fairhaven is not a member firm or an associated person, and has not submitted to FINRA jurisdiction. If a party has not agreed to submit claims to FINRA jurisdiction, then those claims **cannot** be arbitrated before FINRA. *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003) ("Arbitration is a matter of contract—no party can be required to arbitrate a claim if they have not agreed to do so.").

Fidelity bases its theory of FINRA jurisdiction over Fairhaven on an arbitration clause in one of the agreements that governed *customer disputes* arising out of Fidelity's and Fairhaven's custodial arrangement. Fidelity executed trades on behalf of Fairhaven's clients, based on trading instructions from Fairhaven. To avoid liability if Fairhaven provided incorrect instructions, Fidelity required Fairhaven to execute an "Investment Advisor Representation and Indemnification Letter," in which Fairhaven agreed to indemnify Fidelity with respect to customer disputes arising out of such trading instructions. The Indemnification Letter included a narrow arbitration clause. The very first paragraph of the Indemnification Letter limits the scope of the contract – and, thus, the scope of the arbitration clause – to disputes arising out of trading instructions Fairhaven provided Fidelity: "The terms of this letter shall apply to any order, instruction or representation we [Fairhaven] or any third party agent acting on our behalf gives to you [Fidelity] with respect to any Client." No claims here concern any order, instruction, or representation Fairhaven made for any client. The Indemnification Letter, therefore, does not apply to this dispute, and does not require the arbitration of any claims at issue here.[5]

---

[4] The FINRA Rules can be found attached to an earlier filing at Dkt. 106-5.

[5] Moreover, the arbitration clause contemplates that FINRA might "decline[] jurisdiction." If any of the claims involving Fairhaven were arbitrable, FINRA *would* decline jurisdiction because Fairhaven is not a FINRA member (or "associated person") and never acquiesced to FINRA jurisdiction.

If any Fairhaven claims were arbitrable, Fidelity waived any right to arbitration. "A party may waive its contractual right to arbitration either explicitly or through an implicit course of conduct." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002). The question that weighs most heavily is: "*did [the party seeking arbitration] do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?*" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 756 (7th Cir. 2002) (quotations omitted). "[A] court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute." *Id*. There is no question that Fidelity intended to select a federal forum when, on November 4, 2020, Fidelity sued Fairhaven in federal court. (Dkt. 61).

### III.   M<small>S</small>. T<small>AYLOR'S</small> <small>STATUTORY EMPLOYMENT CLAIMS ARE NOT ARBITRABLE.</small>

FINRA Rule 13201(a) provides that statutory employment claims cannot be arbitrated before FINRA unless all parties agree to do so. Neither Ms. Taylor nor Fidelity have agreed to arbitrate her statutory employment claims, so they are not arbitrable.

## ARGUMENT

### I.   F<small>IDELITY HAS APPLIED THE WRONG STANDARD.</small>

Fidelity asks the Court, in deciding whether to stay this case pending the outcome of the FINRA arbitration, to apply the Seventh Circuit's three-part *Volkswagen* test. (Dkt. 114 at 13). Instead, the Court should apply *Colorado River*'s normal rules of parallel-proceeding abstention.

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)). Only in "'exceptional' circumstances" can a federal court abstain from hearing a suit and

4

await the outcome of parallel proceedings. *Id*. (quoting *Colorado River*). The Supreme Court, in *Colorado River*, set out a test for determining whether parallel-proceeding abstention is appropriate. First, the court determines whether the actions are actually parallel; if they are not parallel, no stay is warranted. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (applying *Colorado River*). Second, if the actions are parallel, the court considers ten factors that reflect whether there exist exceptional circumstances that would warrant a stay. *Id*.

Although *Colorado River* involved federal/state abstention, its holding is not limited to circumstances in which the alternative forum is a state court. *See AAR Int'l,* 250 F.3d at 518 (applying *Colorado River* outside of federal/state abstention); *Hudson v. Deutsche Bank AG*, No. 05 C 6783, 2007 WL 1018137, at *4 (N.D. Ill. Mar. 30, 2007) (applying *Colorado River* to federal/arbitral abstention analysis and noting, "even where the alternative forum is not a state court, the same general principles [of *Colorado River*] apply."). Indeed, Judge Posner – citing *Colorado River* – held that "[p]arallel proceedings, **one judicial, one arbitral,** are governed ... by the normal rules for parallel-proceedings abstention."[6] *IDS Life Ins. Co. v. SunAmerica, Inc*., 103 F.3d 524, 529 (7th Cir. 1996) (emphasis added).

Ignoring the normal rules of parallel-proceeding abstention, Fidelity argues that the non-arbitrable claims in this case should be stayed under a framework the Seventh Circuit set forth in *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007).[7] That decision holds that district courts have discretion whether to stay non-arbitrable issues pending the

---

[6] Federal courts should abstain from exercising jurisdiction during the pendency of an arbitration far less often than when the parallel forum is a state court. Under the Constitution, federal courts owe state courts a "special obligation of comity," but owe no such "special obligation" to arbitration panels. *AAR Int'l*, 250 F.3d at 518. Similarly, the Full Faith and Credit statute applies to state court judgments, but not arbitral awards. 28 U.S.C. § 1738.

[7] Fidelity cites 9 U.S.C. § 3 for the proposition that the Court has discretion to stay non-arbitrable issues pending arbitration. (Dkt. 114 at 13). Stays under Section 3 of the Federal Arbitration Act, however, have "no application to 'issues' in cases" involving non-parties to the arbitration. *IDS Life*, 103 F.3d at 529.

5

outcome of arbitration, except when failing to do so would risk "inconsistent rulings" because the arbitration is "likely to resolve issues material to [the] lawsuit."[8] To determine whether a stay is likely to risk inconsistent rulings, the Seventh Circuit analyzed "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays."[9] *Id*. Of course, in *Volkswagen*, all the parties were required to participate in the arbitration (though not all the claims among those parties were arbitrable) – a scenario which does not exist in this case. Instead, the lack of an arbitration agreement governing the claims between Fidelity and Fairhaven brings this case squarely in line with *IDS Life*.

## II. UNDER *COLORADO RIVER*, NO STAY IS WARRANTED.

Because this action is not "parallel" to the FINRA arbitration, and because the ten-factor *Colorado River* test weighs strongly against abstention, no stay is warranted.

### A. This federal action is not parallel to the FINRA arbitration.

A federal action may be stayed only if it is "parallel" to another proceeding. For two cases to be considered "parallel" under *Colorado River*, "there must be 'a substantial likelihood that the [non-federal] litigation will dispose of **all claims** presented in the federal case.'" *Freed*, 756 F.3d at 1018 (quoting *Lumen Const., Inc. v. Brant Const. Co., Inc*., 780 F.2d 691, 695 (7th Cir. 1985)) (emphasis added). "If there is any substantial doubt that the parallel litigation will be 'an adequate

---

[8] For the proposition of discretionary authority, *Volkswagen* cites dicta in a footnote of *Moses H. Cone*, 460 U.S. at 21 n.23, which, in turn, cites a pre-*Colorado River* decision. 474 F.3d at 972.

[9] The *Volkswagen* test – insofar as it purports to allow essentially unfettered discretion to stay non-arbitrable claims pending arbitration – would eviscerate the federal court's "virtually unflagging obligation" to exercise jurisdiction; would allow district courts to stay federal actions even in **un**-exceptional circumstances; and would eliminate the requirement that courts stay claims only when the two proceedings are, in fact, "parallel." However, a court's "task in determining whether abstention is appropriate is 'not to find some substantial reason for the *exercise* of federal jurisdiction by the district court, ... [but] rather ... to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.'" *AAR Int'l*, 250 F.3d at 517–18 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)).

vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Int'l*, 250 F.3d at 518 (quoting *Moses H. Cone*). Here, there is no possibility that the arbitration will dispose of *any* claims in the federal case, much less all of them.

### 1. The arbitration will not dispose of any statutory employment claims.

Ms. Taylor will pursue in federal court only her statutory employment claims. Prior arbitral decisions – even ones involving the same facts – have no preclusive effect on statutory rights claims in federal court where the arbitrator lacked authority to resolve the statutory rights claims.[10] *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974) (explaining that Congress entrusted the "ultimate resolution of discriminatory employment claims" to federal courts); *see also Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 550 (6th Cir. 2008) (collecting decisions declining, in Title VII cases, to give preclusive effect to arbitral decisions). Here, FINRA Rule 13201(a) provides that statutory employment claims **cannot** be arbitrated before FINRA unless all parties agree to do so. Neither Ms. Taylor nor Fidelity have agreed to arbitrate her statutory employment claims; consequently, those claims can only be resolved in this Court. The FINRA arbitration, therefore, will not have any preclusive effect on, or dispose of, Ms. Taylor's claims before this Court. *Alexander*, 415 U.S. at 53.

---

[10] There are important policy considerations underpinning the rule that arbitrations lack any preclusive effect on statutory rights claims. Arbitrations lack many of the procedural safeguards that protect a plaintiff's rights in court. The lack of safeguards is a particular problem in FINRA arbitrations, which take a more streamlined, "rough justice" approach than other arbitral forums. FINRA does not allow interrogatories, depositions, or requests for admission, and third-party subpoenas are rare (and of questionable enforceability). The FINRA panel – comprised of individuals who may or may not have legal experience – is not required to follow any rules of evidence, and does not explain its ruling, from which there is effectively no opportunity for appeal. (*See* **Exhibit A**, for a comparative analysis of federal and FINRA procedures). Because arbitral forums lack the same procedural guardrails a court would offer, it would be unfair for arbitral awards to preclude later statutory rights claims.

7

### 2. The FINRA arbitration will not dispose of any Fairhaven claims.

"The preclusive effect of [an arbitral] award is as much a creature of the arbitration contract as any other aspect of the legal-dispute machinery established by such a contract." *IDS Life Ins. Co. v. Royal All. Associates, Inc.*, 266 F.3d 645, 651 (7th Cir. 2001). Accordingly, "[a]lthough res judicata and collateral estoppel usually attach to arbitration awards, they do so (if they do so) as a matter of contract rather than as a matter of law." *Id.* (internal citations omitted). Because Fairhaven is not a party to Ms. Taylor's arbitration agreement with Fidelity, neither res judicata nor collateral estoppel will attach to any claims or issues adjudicated before FINRA. Moreover, res judicata requires identical causes of action, and identical parties (or privies). The causes of action by and against Fairhaven are not identical to those that will be arbitrated before FINRA. And Fairhaven is neither an identical party nor in privity with Ms. Taylor.[11] Thus, the FINRA arbitration will not have any impact on claims involving Fairhaven.

### 3. FINRA awards have no value in later proceedings.

Another reason that the FINRA arbitration will have no preclusive effect here is that FINRA itself ascribes no value to earlier arbitration awards. Most FINRA awards provide no factual findings, no legal analysis, no breakdown of which legal theories or causes of action prevailed, or reasoning of any kind. Instead, awards typically merely list the procedural history of the arbitration, and then identify the remedy awarded. *See* FINRA Rule 13904(e) (identifying the information required in a FINRA arbitration award). "[W]hen the arbitrator has failed to explain his findings adequately or to follow procedures likely to lead to reliable findings," courts will deny preclusive effect to the arbitral award. *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir.

---

[11] Fidelity's claims by and against Ms. Taylor arise out of Ms. Taylor's employment relationship with Fidelity, whereas the claims between Fairhaven and Fidelity arise primarily out of the custodial relationship between Fidelity and Fairhaven.

8

1997); *see also Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *7 (N.D. Ill. Feb. 24, 2015) (denying FINRA award any preclusive effect).

FINRA will provide an explained decision "only when all parties jointly request" one. FINRA Rule 13904(g)(1). If the parties jointly request an explained decision, it will "stat[e] the general reason(s) for the arbitrators' decision" but "[i]nclusion of legal authorities and damage calculations is not required." FINRA Rule 13904(g)(2). Even when there is an explained decision, however, FINRA does not ascribe it any preclusive effect. As one commentator has noted:

> [FINRA] has come out strongly against having its arbitrators confer preclusive or precedential effect to arbitral awards. In March 2009, the Securities and Exchange Commission approved FINRA's amendments to its code of arbitration procedures, which now require FINRA arbitrators to issue written decisions, explaining their findings, at the joint request of parties….
>
> Yet rather than requiring that these written opinions be given precedential or preclusive effect, FINRA's notice expressly stated that its arbitrators' opinions 'will have no precedential value in other cases' and that '[a]rbitrators will not be required to follow any findings or determinations set forth in prior explained decisions.'" [12]

In sum, because there is not a "substantial likelihood that the [FINRA arbitration] will dispose of all claims presented" in this federal action, this case is not considered "parallel" for purposes of abstention. *Freed*, 756 F.3d at 1018. Thus, the Court may not stay this case, and there is no need to proceed to the second prong of the *Colorado River* test.

**B.    The ten factor test weighs against abstention.**

Even if the proceedings were "parallel" for *Colorado River* purposes, Fidelity could not satisfy the second prong of the *Colorado River* test, which examines the following ten factors:

---

[12] Zachary D. Fasman, *Offensive, Non-Mutual Collateral Estoppel in Arbitration*, 34 ABA J. Lab. & Emp. L. 217, 228–29 (2020); *see also* https://www.finra.org/rules-guidance/notices/09-16 ("As with current FINRA awards, explained decisions will have no precedential value in other cases.").

9

1. *State Assumption of Control Over Property*. The "state" – here, the arbitration panel – has not assumed control over any property. This weighs against abstention. *Feldman v. Norman*, No. 18 C 4662, 2018 WL 5808474, at *3 (N.D. Ill. Nov. 6, 2018).

2. *Convenience of Federal Forum*. The federal forum is convenient for all parties. Fairhaven and Ms. Taylor reside within the Northern District of Illinois. Fidelity has extensive operations within the Northern District and was the party that initially sued in this forum.

3. *Avoiding Piecemeal Litigation*. Staying this case will not avoid piecemeal litigation. As explained above, none of the arbitrable claims will have a preclusive effect in this Court. Accordingly, staying this case will not result in any judicial economy, only delay.

4. *Order In Which Jurisdiction Was Obtained*. Fidelity filed its federal Complaint and its FINRA Statement of Claim on the same day: April 3, 2020. However, FINRA stayed the arbitration proceeding pending the outcome of Fidelity's formerly-pending preliminary injunction motion. Moreover, FINRA has never obtained jurisdiction over Fairhaven.

5. *Source of Governing Law*. Here, the governing law is a mix of federal (Title VII, the ADEA, the Defend Trade Secrets Act) and Illinois statutes. That, however, does not mean this factor is neutral. This factor recognizes that when there are parallel state and federal proceedings, it is preferable for the state court to rule on issues of state law. Here, the proceedings are federal and arbitral, and there is no public policy interest in having issues of state law resolved by an arbitrator. This factor can only weigh against abstention.

6. *Adequacy of Other Proceeding to Protect Rights*. As explained above, FINRA arbitrations do not allow the full scope of discovery, lack the protection of evidentiary rules, are often decided by arbitrators lacking experience, and effectively offer no right of appeal. (*See supra*). Thus, the FINRA arbitration is wholly inadequate to protect the rights of Fairhaven (which never agreed to have any claims determined before FINRA) and Ms. Taylor (who never agreed to have her statutory employment claims adjudicated before FINRA). This factor weighs *strongly* against abstention.

7. *Relative Progress of Proceedings.* This federal case, which now has over 100 docket entries, has progressed far further than the FINRA arbitration. The parties have conducted eight months of first- and third-party document discovery, taken several depositions, resolved a preliminary injunction motion, and briefed numerous other motions. Moreover, Fidelity has amended its pleadings, Counter-Plaintiffs have filed counterclaims, Fidelity has moved to dismiss the counterclaims, and Counter-Plaintiffs have served discovery requests (separate from the earlier discovery). In the arbitration, by contrast, an arbitration panel was not assigned until late March 2022, and the parties' "Initial Pre-Hearing Conference" (which sets the discovery schedule, motion dates, and the arbitration hearing date) will not take place until May 4, 2022.

8. *Concurrent Jurisdiction*. FINRA lacks concurrent jurisdiction over the claims pending in federal court. (*See supra*).

9. *Availability of Removal*. Ms. Taylor cannot remove to federal court the claims that are pending before FINRA.

10. *Vexatious Nature of Federal Claims*. Counterclaimants' federal claims are not vexatious or contrived – they reflect actual harm Fidelity has caused them, redressable by this Court.

Each of the ten *Colorado River* factors weighs against abstention. The Court may not stay this case pending the outcome of the FINRA arbitration.

### III.  EVEN UNDER THE TEST FIDELITY PROPOSES, A STAY IS NOT WARRANTED.

A stay is not warranted even under the test Fidelity proposes. As an initial matter, the two Seventh Circuit decisions on which Fidelity relies **affirmed** the district court's refusal to stay non-arbitrable claims. Incredibly, Fidelity relies on *IDS Life*, but gets the holding backwards. In *IDS Life*, plaintiffs were both members of the NASD (the predecessor of FINRA), but only two of the four defendants were also members of the NASD, so not all parties could arbitrate before the NASD. The district court refused to stay the non-arbitrable claims against the two non-members. Fidelity falsely claims that the Seventh Circuit held that the district court abused its discretion in refusing to stay non-arbitrable claims. (Dkt. 114 at 11). In reality, the Seventh Circuit **affirmed** the district court's refusal to stay the non-arbitrable claims. 103 F.3d at 530. Fidelity also relies on *Volkswagen*, in which the Seventh Circuit also **affirmed** the district court's refusal to stay non-arbitrable issues.[13] No stay is warranted here either.

---

[13] Fidelity also cites several district court decisions staying non-arbitrable claims. (Dkt. 114 at 12). Those decisions are distinguishable because (a) unlike here, the arbitration would have had a preclusive effect on a central issue in the federal action, (b) unlike here, all the parties to the federal lawsuit were also parties to the arbitration agreement, or (c) both.

11

To decide whether a stay is likely to risk inconsistently resolved issues, *Volkswagen* looked to "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." Each factor weighs against Fidelity.

### A. There is no risk of inconsistent rulings.

FINRA arbitrators do not provide "rulings" in the traditional sense – they simply issue an award, without identifying the factual or legal bases for the awards, and without breaking the award down by count or by legal theory. (*See supra*). Because of this format, there is **no possibility** of inconsistent rulings. No matter who wins or loses before FINRA, there will be no telling which of their claims prevailed or *why* those claims prevailed.

Even if the arbitration were proceeding in an arbitral forum with more robust procedures (for instance, the AAA), there would still be no chance of inconsistent rulings. Fidelity lists five issues that it contends will risk inconsistent rulings, but does not explain how the rulings might be inconsistent. (Dkt. 114 at 14). As explained below, they will not be.

First, Fidelity argues that both proceedings will resolve whether Ms. Taylor was subject to discrimination, such that she was constructively discharged. (Dkt. 114 at 14). Constructive discharge has a different standard than Title VII claims, and requires an "aggravating factor" beyond the discrimination. Thus, Ms. Taylor could prevail on her Title VII claim, but not her constructive discharge claim, and vice versa. There is no possibility of inconsistent rulings.

Second, Fidelity argues both proceedings will resolve whether Ms. Taylor misappropriated confidential information from Fidelity and whether Fairhaven misused that information. (Dkt. 114 at 14). On the contrary, the FINRA arbitration will concern whether *Ms. Taylor* pilfered any Fidelity information and whether *Ms. Taylor* improperly used that information. Fidelity's federal claims against Fairhaven, by contrast, will involve whether *Fairhaven* owed any duties to Fidelity,

12

and whether Fairhaven knew of or encouraged any improper actions on the part of Ms. Taylor. There is no possibility of an inconsistent ruling.

Third, Fidelity argues that both proceedings will resolve whether Fairhaven tortiously interfered in Fidelity's contractual relationship with Taylor. (Dkt. 114 at 14). But that is not at issue in the FINRA arbitration, so there is no possibility of an inconsistent ruling.

Fourth, Fidelity argues that both matters will resolve whether Fidelity needed a good reason to terminate its custodial agreement with Fairhaven. (Dkt. 114 at 14). That will be decided in this federal action. The FINRA arbitration will involve a separate issue: whether it was proper for Fidelity to threaten Fairhaven about the custodial agreement to try and force Ms. Taylor to settle on unreasonable terms. These are separate issues, so there is no risk of inconsistent rulings.

Fifth, Fidelity asserts that both proceedings will resolve whether the first four issues are material to damages, liability, or both. (Dkt. 114 at 14). That, however, is simply repetitive of the above. Because there will be no inconsistent rulings on the issues above, there will be no inconsistent rulings applying those issues to liability or damages.

### B. The FINRA arbitrators' rulings will have no preclusive effect here.

The second *Volkswagen* factor is "the extent to which parties will be bound by the **arbitrators' decision**." 474 F.3d at 972 (emphasis added). Again, the arbitration panel's rulings will have no preclusive effect in this Court. (*See supra*). Fidelity does not address this issue.

Fidelity, instead, urges the Court to analyze the collateral estoppel effect **of this Court's decisions** on the FINRA arbitration panel. This is the exact *inverse* of the second *Volkswagen* factor.[14] This presents several problems. First, there is no realistic scenario in which this Court

---

[14] Presumably, Fidelity took this idea this from *Volkswagen*'s description of an earlier decision, *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990) *abrogated by IDS Life*. In *Morrie Mages*, however, the Seventh Circuit simply noted that there was a possibility of collateral estoppel binding the arbitrator; it did not explain how (or if) that factored into its decision to stay.

13

would enter judgment before the FINRA panel renders an award. Second, Fidelity has not identified any specific issues on which collateral estoppel would attach. Third, as a practical matter, because FINRA arbitrators do not "show their work," there would be no realistic way to require FINRA arbitrators to apply collateral estoppel, or to determine whether they did so.

### C. A stay will prejudice Ms. Taylor and Fairhaven.

It has been **17 months** since Counter-Plaintiffs filed their claims against Fidelity. Allowing their claims to stagnate any further would cause prejudice.[15] A further stay may cause memories of witnesses to fade. *See AOT Holding AG v. Archer Daniels Midland Co.*, No. 19-2240, 2020 WL 1472266, at *1 (C.D. Ill. Jan. 22, 2020). Indeed, one of the key individuals Fidelity claims Fairhaven improperly solicited was an elderly man then residing in a memory home (presumably with deteriorating memory). Similarly, individuals might continue to leave Fidelity's employ, and their knowledge might be lost to Fidelity for Rule 30(b)(6) purposes. And, to the extent Fidelity is seeking prejudgment interest from Fairhaven, that would continue to mount.

In arguing for a stay, Fidelity's counsel, Susan Guerette, represented that, "in [her] experience," FINRA "arbitrations take place in about nine months." (Dkt. 117 at 24:6-8). The statistics tell a different story. Ms. Guerette is listed as counsel on 16 FINRA arbitration awards of various lengths, up to 38 months. (*See* Group **Exhibit B**, a compilation of these awards). The median turnaround time of Ms. Guerette's FINRA arbitrations is 18.5 months – more than twice

---

[15] Rule 1 requires that the Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, **speedy**, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). There is a point when delay itself is prejudicial. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988). Any further delay would reach that point. This is especially true for Ms. Taylor's Title VII claims, which have a very short filing deadline. "The relatively short filing period in Title VII is not by accident: Congress intended a short limitations period to encourage prompt processing and resolution of employment discrimination claims." *E.E.O.C. v. Custom Companies, Inc.*, No. 02 C 3768, 2004 WL 765891, at *9 (N.D. Ill. Apr. 7, 2004). Any additional delay would frustrate Congress's legislative intent.

her 9-month estimate. (*See* Ex. B, at 1). Moreover, several of those matters settled before the final hearing.

Ms. Guerette's experience is in line with overall FINRA statistics. According to FINRA's own statistics, the current average turnaround time for regular FINRA arbitration hearings is 19.4 months. (**Exhibit C** at 2). If the arbitration were to last "only" 19.4 months, that would be prejudicial. The arbitration has now been proceeding for about 2.5 months, so that would mean it would not be resolved for another 17 months – late August **2023**. If the federal claims were not allowed to proceed until then, it would likely be another 2.5 years until trial. This means Counter-Plaintiffs' claims would not go to trial, at the earliest, until **March 2026** – *six years* after the events at issue are alleged to have occurred.

Moreover, in analyzing the potential prejudice, the Court should not simply look to the average, but to the *longest* possible time it might take for the FINRA action to be resolved, (particularly because the arbitration at issue here is far more complex than a normal FINRA arbitration). While 19.4 months is the average, over half the arbitrations take more than 19.4 months – and some much longer than that. Indeed, one of the arbitrators assigned to the parties' FINRA arbitration panel (Robert Larson) has been on 11 FINRA arbitration panels, the 4 longest of which lasted 34 months, 37 months, 45 months, and 50 months. (*See* Group **Exhibit D**). The 4 longest arbitrations of Larry Carlson (another arbitrator assigned to the FINRA arbitration panel) lasted 36 months, 36 months, 39 months, and 48 months. (*Id.*). If the Court stayed this case for that long, we would not see trial until **2028**, at the earliest.

In sum, there is no possibility that a stay will result in inconsistent rulings, but there is a pronounced likelihood that a stay will prejudice Counter-Plaintiffs. Even if the Court were to ignore *Colorado River*, it should not impose any stay.

15

Dated: April 13, 2022    Respectfully submitted,

**JENNIFER TAYLOR and FAIRHAVEN WEALTH MANAGEMENT, LLC**
**Defendants/Counter-Plaintiffs**

By: /s/ *Christopher S. Griesmeyer*
    One of Their Attorneys

Christopher S. Griesmeyer (# 6269851)
Zachary Mulcrone (# 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
(312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2022, I electronically filed the foregoing *Counterclaimants' Response in Opposition to Motion to Stay* with the Clerk of the Court via the CM/ECF System, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them including:

| | |
|---|---|
| Joel W. Rice | Susan M. Guerette |
| Franklin Z. Wolf | FISHER & PHILLIPS, LLC |
| FISHER & PHILLIPS, LLC | Two Logan Square, 12th Floor |
| 10 South Wacker Drive, Suite 3450 | 100 North 18th Street |
| Chicago, Illinois 60606 | Philadelphia, Pennsylvania 19103 |
| jrice@fisherphillips.com | sguerette@fisherphillips.com |
| fwolf@fisherphillips.com | |

                                       */s/ Christopher S. Griesmeyer*
                                       Christopher S. Griesmeyer (ARDC No. 6269851)
                                       GREIMAN, ROME & GRIESMEYER, LLC
                                       205 West Randolph St., Ste. 2300
                                       Chicago, Illinois 60606
                                       Bus: (312) 428-2750
                                       Fax: (312) 332-2781
                                       cgriesmeyer@grglegal.com