IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, ) ) ) | |
| ) | No. 20-cv-2133 |
| Plaintiff, ) ) | Judge John J. Tharp, Jr. |
| v. ) ) | |
| JENNIFER TAYLOR and FAIRHAVEN WEALTH MANAGEMENT, LLC, ) ) ) ) | |
| Defendants/Counter-Claimants. ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fidelity initiated an arbitration with defendant Taylor, a former employee of Fidelity, asserting claims that Taylor violated restrictive covenants and misappropriated trade secrets when she left Fidelity to join Fairhaven. Fidelity also sued Taylor in this Court with the objective of obtaining a preliminary injunction, relief that was not available in the arbitration. After obtaining expedited discovery, Fidelity amended its complaint to join Fairhaven as a defendant for its alleged complicity in Taylor's breach of her restrictive covenants. Fairhaven counterclaimed alleging the breach of a contract between Fidelity and Fairhaven, and Taylor counterclaimed alleging age and sex discrimination. Despite initiating this case and receiving some discovery, Fidelity now seeks to stay this action and bar further discovery on the pending counterclaims until the arbitration between Fidelity and Taylor concludes. Because the arbitration and this action are not parallel proceedings under the *Colorado River* doctrine and a stay would prejudice the counterclaimants, Fidelity's motion to stay this action is denied.

## BACKGROUND

Fidelity filed this action in April 2020, originally against Taylor alone, seeking a preliminary injunction while it pursued injunctive relief before the Financial Industry Regulatory Authority (FINRA). The original complaint alleged that Taylor left Fidelity for a competing financial advisory firm, Fairhaven, taking "confidential trade secret information" and violating restrictive covenants in her employment contract. Compl. ¶¶ 7-8. Pursuant to FINRA rules, Fidelity and Taylor are required to arbitrate this dispute, so Fidelity filed a statement of claim with FINRA seeking expedited resolution, a procedure that was only available if Fidelity secured a preliminary injunction from a court. Compl. ¶ 13. Fidelity also sought and obtained an order authorizing expedited discovery. ECF No. 29. Additionally, the Court allowed Fidelity to serve a third-party subpoena on then-nonparty Fairhaven. The "expedited" nature of the discovery, however, soon became aspirational, as both parties filed motions to compel that received mixed verdicts from the Court. See ECF Nos. 53, 67.

Fairhaven's third-party discovery responses prompted Fidelity to seek leave to amend its complaint, adding Fairhaven as a defendant for, among other things, tortiously interfering in Fidelity's employment agreement with Taylor and misappropriating Fidelity's trade secrets. First Amended Complaint, ECF No. 61. At the time, the Court, focused on bringing the expedited discovery and preliminary injunction proceedings to a swift conclusion, stated its intention to stay further proceedings until concluding the expedited discovery, ruling on the motion for preliminary injunction, and sending Fidelity and Taylor off to arbitration.[1]

---

[1] Fidelity regards this statement by the Court as something like the law of the case—there should be no progress in this proceeding until the arbitration is over. See Mot. to Compel 3, ECF No. 114. But the Court made that statement before Fidelity withdrew its motion for a preliminary injunction, and before Taylor and Fairhaven filed counterclaims. It is fair to say that the circumstances have changed since this case began as a limited proceeding seeking an injunction before Fidelity and Taylor went to arbitration.

2

In November 2020, both Taylor and Fairhaven filed counterclaims. Ms. Taylor alleges that Fidelity discriminated against her based on her age and sex, in violation of the ADEA and Title VII, and that it retaliated against her for filing a charge with the EEOC. Fairhaven, which had a contract with Fidelity by which Fidelity served as the custodian of assets for all of Fairhaven's client accounts, alleges that Fidelity breached the parties' custodial agreement by terminating it in retaliation for Taylor's refusal to settle the lawsuit and agree to an injunction against her. Fidelity filed motions to dismiss both sets of counterclaims, ECF Nos. 76 and 78; the Court took the motions under advisement and stayed briefing "until completion of briefing on the pending motion for preliminary injunction.' ECF No. 75. Those motions remain pending and have not yet been fully briefed.

Fairhaven is not a FINRA member firm, and it has no relevant arbitration agreement with Fidelity, which would have been waived in any event when Fidelity opted to sue Fairhaven in this forum.[2] As for Taylor's counterclaims, under FINRA Rule 13201(a), statutory employment discrimination claims are "not required to be arbitrated under the Code" unless the parties so agree. Mot to Compel at 7, ECF No. 112. Taylor has not so agreed.

After the expiration of the restrictive covenants in Taylor's employment agreement, Fidelity withdrew its motion for preliminary injunction. ECF Nos. 107, 108. The arbitration is now in its preliminary stages. After briefing and a hearing on the effect of Fidelity's withdrawal of its

---

[2] Fidelity half-heartedly argues that Fairhaven might be required to arbitrate under an "Investment Advisor Representation and Indemnification" agreement, which includes an agreement to arbitrate before FINRA. Mot. for Stay at 3, ECF No. 114. Fairhaven responds that Fidelity waived any right to arbitration by suing it in federal court, and further that none of the claims in this lawsuit touch on that contract, which applies to "any order, instruction or representation" Fairhaven gives to Fidelity with respect to a client. Resp. at 3, ECF No. 119. Fidelity concedes that it has waived its ability to compel arbitration, Reply at 11, ECF No. 123, but argues that Fairhaven's willingness to arbitrate undermines its argument that it would be prejudiced by a delay: Fairhaven has had no problem agreeing to arbitrate in the past, Fidelity contends, so it should have no problem submitting to FINRA jurisdiction in this dispute. The Court finds this argument unpersuasive. The parties did not bargain for an arbitration clause in the custodial agreement, that they did so in a separate contract is irrelevant.

preliminary injunction motion, Fidelity was permitted to file a second amended complaint (the operative complaint) on April 12, 2022. ECF No. 118. The SAC dropped Fidelity's claims against Taylor, which will now be pursued solely in arbitration. Its claims against Fairhaven, as well as Taylor's and Fairhaven's counterclaims, remain. After withdrawing its motion for preliminary injunction, however, Fidelity continued to resist discovery requests on the grounds that this case should be stayed pending completion of the arbitration, prompting Taylor and Fairhaven to move to compel discovery responses. Fidelity responded to that motion by moving for a stay pending arbitration.

## DISCUSSION

The parties agree that Fidelity's original claims against Taylor, and several of Taylor's counterclaims in this action,[3] must be arbitrated before FINRA, but they dispute what should happen with Taylor's counterclaims and the dispute between Fidelity and Fairhaven while the arbitration proceeds. Fidelity does not seriously dispute that Taylor's statutory employment discrimination claims and Fairhaven's counterclaims are either not arbitrable or not required to be arbitrated, and the counterclaimants have no desire to take their claims before a FINRA panel. Fidelity contends that this action should be stayed because there are overlapping factual issues between the arbitrable and non-arbitrable claims, which creates a risk of inconsistent rulings as between the FINRA panel and this Court. Fairhaven and Taylor respond that due to the nature of the claims and how FINRA handles adjudications, there is no such risk, and moreover that this case is not parallel to the FINRA proceeding under *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976). Fairhaven also argues that it will be prejudiced by a stay because it could be subject to third-party discovery in the FINRA action—Fidelity has already sought a subpoena against it from the

---

[3] Taylor has dropped her federal counterclaims that are not based on age and sex discrimination. Resp. at 2 n.2.

FINRA panel—while being unable to pursue any discovery against Fidelity and being forced to wait years to litigate its own claims.

Federal courts have discretion to stay a case in which some parties and claims are bound for arbitration and others are not. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). "Parallel proceedings, one judicial, one arbitrable, are governed… by the normal rules for parallel-proceeding abstention." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996) (citing *Colorado River*). Under the *Colorado River* doctrine, courts ask whether the two proceedings are parallel; if they are, the Court proceeds to other factors that guide its judgment as to whether "exceptional circumstances" exist that would relieve the court of its "virtually unflagging obligation" to exercise jurisdiction. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

The parties disagree over the relevant legal standard. Their confusion is not unwarranted. The Seventh Circuit has also endorsed another test, drawn from the Eighth Circuit, to address whether an arbitration should take precedence over a court proceeding. In *Volkswagen of America, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007), the Seventh Circuit held that a district court may abuse its discretion if it refuses a stay pending arbitration, with these factors in mind: "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." 474 F.3d at 972. In light of *Volkswagen*, Fidelity argues that *Colorado River* analysis is inapposite because that doctrine deals with abstention from jurisdiction, whereas here, Fidelity is only asking for a temporary stay, and not for the Court to relinquish jurisdiction. But a stay in this context may well be the functional equivalent of dismissal where res judicata will operate to preclude federal reconsideration of issues. *See Moses H. Cone*, 460 U.S. 1 at 10. In fact, Fidelity argues this is exactly one of those situations. According to Fidelity, "nearly all the factual and legal issues that must be resolved to adjudicate the claims before this Court will be resolved through arbitration" so that

5

issue preclusion will attach and bar relitigation. Fidelity's Reply at 2, ECF No. 114. Fidelity contends that arbitration awards have the same res judicata effect as court judgments, and most of its reply brief is dedicated to arguing that issue preclusion will bar federal consideration of most issues that remain after the arbitration concludes. By the terms of Fidelity's own argument, then, staying this case pending arbitration would be equivalent to relinquishing jurisdiction. In any event, *Colorado River* "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. The plaintiff's concerns about inconsistent rulings and its arguments regarding issue preclusion go to the first part of the *Colorado River* inquiry—whether the two actions are parallel. Consistent with *Volkswagen*, it is also appropriate here to analyze whether a delay pending arbitration will prejudice either party.

**I.     The federal court action and the arbitration are not "parallel" under Colorado River**

Under *Colorado River*, actions in two tribunals are parallel if there is "a substantial likelihood that the [non-federal] litigation will dispose of all claims presented in the federal case." "If the actions are not parallel, the *Colorado River* doctrine does not apply and the court need not address the second part of the analysis." *Freed v. J.P. Morgan Chase Bank*, 756 F.3d 1013, 1018 (7th Cir. 2014). "[A]ny doubt regarding the parallel nature of the [arbitration] should be resolved in favor of exercising jurisdiction." *AAR Int'l Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).

**A.     Taylor's Statutory Employment Discrimination Claim**

FINRA rules do not require Taylor to arbitrate her Title VII claim, and she has no desire to do so. That does not quite settle the issue, though, because Fidelity contends that the arbitrator will have to consider the same set of facts while adjudicating the dispute between Taylor and Fidelity over whether she violated her employment agreement. In her federal counterclaim, Taylor claims that she suffered adverse action due to her age and gender; in her arbitration counterclaim, she presents this

claim as one for wrongful discharge, omitting facts that go to age and sex discrimination and emphasizing her former supervisor's financial motives for pushing her out. Taylor's FINRA counterclaim ¶¶ 48-55, Ex. A to Fidelity's Reply. It is likely, Fidelity asserts, that in adjudicating the employment contract dispute between Taylor and Fidelity, the arbitration panel will make findings that will have preclusive effect, so the Court would be better off waiting for the dust to settle in arbitration before going forward with Taylor's statutory employment discrimination claim and risking inconsistent findings. Fidelity argues, for example, that the fact sections in Taylor's briefs before the arbitration panel and those before this Court are substantially identical, indicating that "adjudication of Taylor's claims in each action requires consideration of and resolution of the same fact issues—such as the circumstances surrounding Taylor's departure from Fidelity; Taylor's possession and use of Fidelity's confidential customer information; and Taylor's solicitation of Fidelity's customers; Fairhaven's knowledge of and assistance in soliciting Fidelity's response to the same." Reply at 4, ECF No. 123. But Fidelity misses the mark, because an arbitrator's decision is not binding on a federal court hearing a Title VII claim.

In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), the Supreme Court considered whether an employee who had first brought his employment discrimination claim before "the grievance-arbitration machinery of [a] collective-bargaining agreement[]" was afterwards barred from his "statutory right to a trial de novo under Title VII" in federal court. *Id.* at 38.[4] The district court had found the employee was bound by the arbitral decision rejecting the discrimination claim,

---

[4] In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), however, the Supreme Court repudiated dicta in *Gardner-Denver* that implied that an agreement to arbitrate employment discrimination claims would operate as a waiver of those claims (and thus would likely be unenforceable). There is no waiver problem, the Supreme Court held in *Penn Plaza*, because such an arbitration clause "does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance." The Supreme Court in *Penn Plaza* also rejected "judicial policy concerns" expressed in *Gardner-Denver* regarding the relative competence of arbitrators versus federal judges. *Id.* at 270.

and the appeals court affirmed. *Id.* at 43. The Supreme Court reversed, reasoning that language of Title VII did not support a policy of deferring to arbitrators, and holding that "final responsibility for enforcement of Title VII is vested with federal courts." *Id.* at 44. An employee is permitted to pursue both arbitration and relief in federal court, but "the federal court should consider the employee's claim de novo.' *Id.* at 60. *See also UFT Commercial Finance, LLC v. Fisher*, 991 F.3d 854, 859-60 (7th Cir. 2021) (observing that "arbitration awards are not required by statute to have issue-preclusive effect in federal courts" and gathering authority holding that there is no issue preclusion with respect to arbitration of Title VII, section 1983, or Fair Labor Standards Act Claims.); *Mathews v. Denver Newspaper Agency LLC*, 649 F.3d 1199, 1201 (10th Cir. 2011) (reversing where district court gave preclusive effect to arbitrator's ruling on civil rights claim). While a federal court hearing a Title VII action is not bound by an arbitrator's decision, "it has discretion to admit an arbitration decision into evidence and to accord it such weight as is deemed appropriate." *Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir. 1994) (citing *Gardner-Denver*, 415 U.S. at 60.). Though Fairhaven and Taylor cited *Gardner-Denver* in their response, Fidelity ignored this line of cases and offered no response to Fairhaven's argument in its reply brief.

Accordingly, the arguments that Fidelity offers regarding preclusion are unpersuasive. If Taylor were to arbitrate her Title VII claim, the Court would be required to afford no deference to the arbitration panel's findings, though it could admit them into evidence. The same would be true of the arbitrator's decision regarding Taylor's legally distinct wrongful discharge counterclaim in arbitration—any findings regarding those things identified by Fidelity, such as the circumstances of her departure from her former employer, would not bind this Court as it considers Taylor's Title VII claim. Not only is Taylor not required to arbitrate her Title VII case, but the Court must hear her case in federal court if she wishes, and it cannot afford preclusive effect to the arbitration panel's findings as they relate to Taylor's Title VII claim. Thus, the arbitration will not dispose of Taylor's claims.

B.  **Fairhaven's Counterclaims**

Recall that Fairhaven counterclaimed in this lawsuit that Fidelity breached the parties' custodial contract by withdrawing from it altogether to pressure Taylor to settle this litigation. Taylor makes a similar claim in her FINRA action—she alleges that Fidelity tortiously interfered in her employment relationship with Fairhaven by threatening to terminate the custodial arrangement and then by following through with the threat. Arbitration Counterclaims at ¶¶ 74-94. She additionally claims that Fidelity used its control of the custodial platform to "refuse[] to accept applications for or open any new client accounts" for her, and further that it "referred Ms. Taylor's clients to an in-house Fidelity financial advisor." *Id.* at ¶¶ 88-99. Because of this, Fidelity says, both this Court and the arbitration panel must consider "whether Fidelity was required to have a good reason to terminate its custodial relationship with Fairhaven[.]" Reply at 12.

Responding to Fairhaven's argument that the arbitration will not dispose of all the claims (and thus that the two proceedings are not parallel under *Colorado River*) Fidelity argues that this overlap in facts—the arbitrators may have to consider issues surrounding the custodial agreement when considering Taylor's counterclaim, Arbitration Compl. at ¶¶ 74-94, and the Court will have to construe the agreement in considering Fairhaven's counterclaim in this action—creates a possibility that issue preclusion would attach and thus "nearly all of the factual and legal issues that must be resolved to adjudicate the claims before this Court will be resolved through arbitration." Reply at 3. The Court disagrees.

Issue preclusion applies to most arbitration awards outside of Title VII and the other statutes mentioned above. *See IDS Life Ins. Co. v. Royal Alliance Assoc., Inc*, 266 F.3d 645, 651 (7th Cir. 2001). Issue preclusion applies where 1) the party (or its privy) against whom issue preclusion is asserted was fully represented in the prior litigation; 2) the issue sought to be precluded is identical to an issue involved in the prior litigation; 3) the issue was actually litigated and decided on the merits;

and 4) the resolution of that issue was necessary to the tribunal's judgment. *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989). "As a matter of due process, collateral estoppel can be used to bind only those persons who were parties or who are in privity with parties to the prior proceeding." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995) (citing *Parklane Hosier Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979).

As an initial matter, even if the litigation of certain issues were barred by issue preclusion, that would not mean that the arbitration will "dispose of the entire claim" within the meaning of *Colorado River*. Fidelity does not argue that claim (as opposed to issue) preclusion would attach, and Taylor's claims against Fidelity, while involving some potential factual overlap with Fairhaven's claims against Fidelity, arise out of different contracts. The dispute between Taylor and Fidelity arises from her employment contract; the dispute between Fairhaven and Fidelity arises primarily from their custodial agreement. "Although res judicata and collateral estoppel usually attach to arbitration awards… they do so (if they do so) as a matter of contract rather than as a matter of law." *Royal Alliance Assoc., Inc.*, 266 F.3d at 652. Fairhaven's counterclaim in federal court is far from "completely dependent upon" Taylor's counterclaims in arbitration. *Volkswagen*, 474 F.3d at 972.

Closely related to the independence of Taylor's claims in arbitration from Fairhaven's counterclaims in federal court is the question of who would be bound by the arbitration. Fidelity says that Fairhaven would be bound by findings from the arbitration that touch upon its custodial agreement because it and Taylor, as employer and employee, are in privity with one another. Employers and employees, Fidelity argues, are in privity with one another as a rule. Reply at 6-7. Moreover, Taylor's interests "are so closely aligned with Fairhaven's," and the two are represented by the same counsel, so that Taylor will have a strong incentive to fully litigate issues material to Fairhaven's counterclaim. *Id.* at 7. But even by the terms of the authorities cited by Fidelity, the Court sees it as highly unlikely that Fairhaven would be bound by any conclusions made by the arbitrator.

Determining whether parties are in privity with one another centers on the identity between their respective interests, and not necessarily on the existence of an employment or other commercial relationship. "Under Illinois law, a party is in privity with a party to the prior adjudication when the parties represent the same legal interests." *Halliburton v. Hockaday*, 2019 WL 2270586 * 7 (N.D. Ill. 2019) (citing *Pedersen v. Village of Hoffman Estate*, 2014 IL App (1st) 123402 ¶ 45); *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 403 Ill.App.3d. 179, 190 ("There is no generally prevailing definition of 'privity' that the court can apply to all cases; rather, determining privity requires careful consideration of the circumstances of each case."); *Degironne v. Furlong*, 2010 WL 1978682 (N.D. Ill. 2010) (holding that officer defendant in § 1983 action who had testified in underlying criminal matter was not in privity with the state that prosecuted the § 1983 plaintiff, because although the officer and the state "presumably wanted the same result from the suppression hearing… their interests were not identical.").

Taylor's primary concern is the loss of her own clients, allegedly caused by Fidelity's threats to her and Fairhaven and the eventual termination of the custodial agreement. FINRA counterclaim at ¶¶ 138-140. That is not the only way that Taylor says Fidelity interfered with her client relationships—she says it also refused to open accounts on the custodial platform for Taylor, and that it used its control of the platform to refer her clients to an in-house Fidelity advisor. Thus, Taylor could win an arbitration award on this claim without proving that Fidelity breached the custodial agreement; the argument that Fidelity terminated the custodial agreement in bad faith is but one allegation among others, such as her allegation that Fidelity violated FINRA rules by refusing to provide her contact information to her clients. Fairhaven's claim that Fidelity breached the custodial agreement, on the other hand, forms the heart of its counterclaims, and forms the basis of very

different demands for damages.[5] While Taylor seeks compensation for the business she lost as a result of Fidelity's alleged retaliation and interference, Fairhaven seeks (among other things) compensation for all of the business it lost as a result of Fidelity's alleged breach of the custodial agreement, recovery for the fees it has paid under the agreement to date, and, should Fairhaven be forced to end its business due to being deprived of a custodial platform, "the value of Fairhaven as an entity." Taylor and Fairhaven, in other words, have vastly different amounts of skin in the game when it comes to the alleged breach of the custodial agreement. Fairhaven's incentive to fully litigate this claim is far greater than Taylor's, so it cannot be said that Fairhaven is fully represented by Taylor in the arbitration.

Further undermining Fidelity's speculative issue preclusion argument for staying this case is Fairhaven's demonstration that FINRA arbitration awards do not provide any reasoning behind their awards. This is likely to be a case in which the arbitrators' findings are not announced and thus are entitled to no preclusive effect. *Prnyer v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir. 1997). Fairhaven has attached many FINRA awards to its response brief, and all of them list the claims made by the parties and then simply identify the award to be given to each party without any explanation

---

[5] Fairhaven also brought counterclaims almost identical to Taylor's tortious interference claims. Those will almost certainly overlap with the arbitrators' work: Fairhaven claims that Fidelity unlawfully withheld Taylor's contact information from her former clients, lied to those former clients about her changing employers, and tortiously interfered with Fairhaven's employment arrangement with Taylor by using the custodial agreement as leverage. The Court intends no pretermission of preclusion arguments with respect to any of these claims, but sees no problem with allowing the parties to take discovery on these claims. Fairhaven, in responding to Fidelity's argument that the case must be stayed because there is too much factual overlap, only argues in terms of its breach of contract case and does not address these other claims that are nearly identical to Taylor's arbitration counterclaims. Indeed, it argues that "the claims between Fairhaven and Fidelity arise primarily out of the custodial relationship between Fidelity and Fairhaven." Resp. to Mot. to Stay 8, ECF No. 119. Fairhaven, it would seem, is primarily interested in litigating its breach of contract claim. Despite the possibility that Fairhaven's other counterclaims present a risk of inconsistent rulings, the arbitration will still not dispose of all Fairhaven's counterclaims, so the actions are not parallel under *Colorado River*. And given the conclusory nature of FINRA awards, it is distinctly possible that, despite the factual overlap, the arbitration between Fidelity and Taylor will have no preclusive effect whatsoever.

of the panel's findings on which the awards are based. Ex. B. to defendants' Resp., at 3 *et seq*, ECF No. 119-2[6]. Moreover, in most cases involving multiple claims, FINRA does not explain which claims it bases its award upon—likely ruling out a claim preclusive effect, not to mention an issue preclusive effect. *See, e.g.,* ECF No 119-2 at 10-12 (listing the various claims made by the parties—"breach of contract, misappropriation and misuse of trade secrets, breach of duty of loyalty and inducement" and several more—and finding respondents liable for $65,399 without explaining which claims were successful and which not). For those decisions in which FINRA does provide a basis for determining which claims it credited, it does so without explanation of the findings underlying the award. *See* ECF No. 119-2 at 60-61 (listing out the claims for which FINRA found the respondent liable but without findings of fact or conclusions of law). Thus, even if the FINRA panel were to expressly state how it views Taylor's various counterclaims on the merits—and according to the Court's review of the many decisions submitted by Fairhaven and Taylor, this possibility is remote—it would likely do so in an entirely conclusory manner, without specifying its views on the contract dispute between Fairhaven and Fidelity. This point is not meant to cast aspersions on the FINRA process—what Fairhaven and Taylor describe as its "rough justice" approach is no doubt part of FINRA's appeal to businesses seeking speedy resolutions of disputes. Resp. at 7.

      This is not to say that the Court necessarily agrees with Fairhaven that "the FINRA arbitration will have no effect on any of the claims currently pending in this Court." Mot. to Compel 13. The Court will consider arguments about issue preclusion if and when they have been squarely presented and fully developed—rather than here, where the parties and this Court can only speculate about the form and content of the arbitration award. As for any inconsistency related to the tribunals' different approaches to discovery—FINRA generally allows narrower discovery than the federal rules—the

---

[6] Page references to this exhibit refer to the ECF pagination in blue lettering at the top of the page because the filing is not otherwise paginated.

arbitrators are free to consider whatever materials obtained in this litigation that they decide is authorized under FINRA rules.[7]

Thus, the arbitration and this federal action are not parallel because there is not "a substantial likelihood that the [non-federal] litigation will dispose of all claims presented in the federal case." *Freed*, 756 F.3d at 1018. Nothing that happens in the arbitration will bind the Court or Taylor with respect to her Title VII claim. And while there are some overlapping factual issues between Fairhaven's counterclaims in this action and Taylor's in the arbitration, the Court finds it unlikely that any of the arbitrators' findings will bind Fairhaven in the federal action, given the differences between the claims advanced and the non-identity of the parties in the two actions. That ends the *Colorado River* inquiry. *Id.* The discussion above has also swept in two of the factors to be considered under Fidelity's preferred *Volkswagen* test: "the risk of inconsistent rulings" and "the extent to which parties will be bound by the arbitrators' decision[.]" 474 F.3d at 972. That leaves the question of prejudice.

## II. Fairhaven and Taylor would be prejudiced by a stay

While the Court need not consider prejudice under *Colorado River*, *Volkswagen* suggests that the Court consider the prejudice a stay would work against the parties. Fairhaven and Taylor argue that they would be prejudiced by any stay because 1) waiting for arbitration to conclude could delay these proceedings by years, and 2) a stay would likely encourage Fidelity to continue pursuing third-party discovery against Fairhaven in the arbitration, while preventing Fairhaven from taking discovery in this action, even though it was Fidelity who chose to bring Fairhaven into this federal action.

---

[7] The parties in this case are not precluded from disclosing materials produced in discovery in this case to the FINRA panel. See Agreed Confidentiality Order, ECF No. 52, at ¶¶ 5(b)(3) and 5(c)(6).

On March 23, 2022, before the parties fully briefed Fidelity's request for a stay, the Court held a motion hearing. There, it heard starkly divergent estimates for how long a stay would likely last. Counsel for Fidelity, citing her long experience with FINRA arbitrations, estimated that the arbitration would take about nine months. ECF No. 117 at 24:6-8. Fairhaven's counsel estimated that arbitration would last between two and three years. The Court finds Fairhaven's estimate far more likely. Indeed, it appears that Fidelity's counsel was off the mark even representing her own experience with FINRA arbitrations, which closely matches the estimate given by Fairhaven's counsel. Fairhaven demonstrated this by providing a list of FINRA arbitrations litigated by Fidelity's counsel showing that the average length of arbitrations she was involved in was eighteen months—twice as long as the estimate she provided—and that many actions extended up to two or three years. Ex. B to Resp. at 2, ECF No. 119-2.[8] Given the substantial likelihood that a stay would be in place for 18 months or more, the Court assesses that a delay of that magnitude would prejudice Fairhaven and Taylor's ability to prosecute their claims. For her part, Taylor has described one key witness, a former client, who now lives in a memory home. Mot to Compel 12-13, ECF No. 112.

Fairhaven also argues that, in seeking to stay this action, Fidelity is trying to have its cake (suing Fairhaven in this forum while resisting discovery) and eat it too (by seeking to stay this action while pursuing third-party discovery against Fairhaven in the arbitration). This sequence of events would be fundamentally unfair to both Fairhaven and Taylor. Fidelity chose to sue Fairhaven in federal court; faced with counterclaims by both parties, it now wants to put off discovery under the federal rules while being subject only to the more limited discovery available in the FINRA proceeding—which, it maintains, will preclude litigation of the claims asserted in this case. Given the metamorphosis of this case from in which the plaintiff was seeking only temporary relief to one

---

[8] Page numbers for this exhibit refer to the pagination in blue lettering at the top of the page because the exhibits are not otherwise paginated.

involving multiple defendants and counterclaims, the Court concludes that it is appropriate for Fidelity to live with the consequences of its litigation strategy—one of which is to engage in discovery regarding the claims at issue in the federal lawsuit that Fidelity initiated.

The Court notes as well that staying this action is unlikely to result in conservation of judicial resources. Were the Court to stay this action, the delay that follows would be compounded by having to conduct discovery twice. The parties would have the limited discovery authorized by FINRA, and after that matter is adjudicated and the stay is lifted, would likely want to conduct more discovery using the broader tools available under the federal rules. That approach made some sense in the context of limited and expedited discovery, but less so when considered with a view to the more expansive discovery the counterclaimants are likely to seek.

In sum, it was Fidelity that sued Fairhaven in federal court, and now it is Fidelity who wants to stay this litigation, potentially for years, thwarting both Taylor and Fairhaven from pursuing discovery in this forum while Fidelity pursues one-way discovery against Fairhaven in its preferred forum and indefinitely delays Taylor from prosecuting her claims of sex discrimination. Moreover, Fidelity seeks to bind Taylor with respect to her non-arbitrable Title VII claim, as well as Fairhaven, who has not agreed to arbitrate anything. Granting Fidelity's motion would thus entail significant prejudice to Fairhaven and Taylor, without any benefits in judicial efficiency.

\*   \*   \*

For the foregoing reasons, Fidelity's motion to stay is denied and Fairhaven and Taylor's motion to compel is denied as moot given that Fidelity's resistance was premised on seeking a stay. Further stay of the proceedings in this case having been denied, briefing on Fidelity's motions to dismiss the counterclaims will also proceed. Because briefing on those motions has been stayed, however, they do not reflect the current procedural posture of the case. Accordingly, Fidelity is

granted leave to amend its motions by August 12, 2022; responses are due by September 9, 2022; replies due by September 30, 2022.

Dated: July 15, 2022

John J. Tharp, Jr.
United States District Judge

17