IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> FAIRHAVEN WEALTH MANAGEMENT, LLC, <br><br> Defendant. <br> ──────────────────────────── <br> JENNIFER TAYLOR, FAIRHAVEN WEALTH MANAGEMENT, LLC, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> FIDELITY BROKERAGE SERVICES LLC, <br><br> Counter-Defendant. | Case No. 1:20-cv-2133 |

**MEMORANDUM OF LAW IN SUPPORT OF
FIDELITY BROKERAGE SERVICES LLC'S AMENDED MOTION TO DISMISS
<u>COUNTERCLAIMS OF DEFENDANT FAIRHAVEN WEALTH MANAGEMENT, LLC</u>**

Dated: August 12, 2022

Respectfully submitted,

FISHER & PHILLIPS LLP

/s/ *Susan M. Guerette*
Susan M. Guerette (admitted *pro hac vice*)
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
TEL: (610) 230-2133
FAX: (610) 230-2151
sguerette@fisherphillips.com

        Joel W. Rice
        Franklin Z. Wolf
        10 South Wacker Drive, Suite 3450
        Chicago, IL 60606
        TEL: (312) 346-8061
        FAX: (312) 346-3179
        jrice@fisherphillips.com
        fwolf@fisherphillips.com

*Attorneys for Plaintiff*

Plaintiff/Counter-Defendant Fidelity Brokerage Services LLC ("Fidelity"), moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Defendant Fairhaven Wealth Management, LLC's ("Fairhaven") Counterclaim Counts I-VI.[1]

## I.   INTRODUCTION

Fidelity filed this action because Jennifer Taylor ("Taylor") solicited Fidelity customers and misappropriated trade secrets in violation of the obligations she owed to Fidelity, when she resigned to join Fairhaven. When she resigned, Fidelity and Fairhaven had a business relationship through which Fairhaven custodied its customers' assets with Fidelity. This relationship was memorialized in the Investment Advisor Representation and Indemnification Letter Agreement ("Agreement") (Ex. **A**),[2] which provided that Fidelity could terminate the relationship at any time.[3]

Fidelity subsequently learned that Fairhaven was complicit with, aided and facilitated Taylor's breach of her contractual obligations and misuse of Fidelity's trade secret information. Once Fidelity learned that Fairhaven was engaging in misconduct directly aimed at soliciting Fidelity's clients and harming its business, it decided to terminate its contract with Fairhaven in an effort to protect its own business interests. Fidelity also added Fairhaven as a defendant in this action.

Fairhaven subsequently filed counterclaims against Fidelity, alleging that Fidelity breached the contract and alleged fiduciary duties purportedly owed to Fairhaven by terminating the

---

[1] In its Memorandum and Opinion on Fidelity's Motion for Stay Pending Arbitration, the Court granted Fidelity leave to amend this motion. *See* ECF No. 125 at 16-17.

[2] The Agreement is the subject of a separate motion for leave to file under seal. Fidelity has already produced the Agreement to Fairhaven's counsel.

[3] Fidelity requests that the Court take judicial notice of the Agreement. In support of this request, Fidelity notes that Fairhaven specifically referenced the Agreement in its Answer (ECF No. 72, ¶ 23). *See Shulman v. CRS Fin. Servs., Inc.*, 2003 WL 22400211, at *1 (N.D. Ill. Oct. 21, 2003) (taking judicial notice of contracts when a party relied on the contracts in court filings, but did not attach them to the filings).

1

business relationship and by tortiously interfering with the ability of Taylor's clients to transition their accounts from Fidelity to Fairhaven.

Each of Fairhaven's counterclaims should be dismissed because: (1) the Agreement between Fidelity and Fairhaven specifically provides that Fidelity could terminate its relationship with Fairhaven at any time, and does not require good cause or any other reason; (2) Fidelity never owed any fiduciary duty to Fairhaven; (3) Fairhaven lacks standing to assert its claims because its alleged injuries are completely speculative and insufficient to establish an injury-in-fact under Article III (Counterclaim Counts I-III and V-VI); (4) Fairhaven lacks standing to assert claims that are based on the rights and alleged injuries of its employee, Taylor (Counterclaim Counts I-III and VI); (5) Fairhaven has failed to state a claim upon which relief may be granted because it cannot establish that Fidelity breached any duty owed to Fairhaven (Counterclaim Counts IV and V); and (6) Fairhaven's unjust enrichment claim (Count VI) must also fail because it is based on Fairhaven's other counterclaims and it cannot stand on its own under Illinois law.

## II.   FACTUAL / PROCEDURAL BACKGROUND

On April 3, 2020, Fidelity filed its original Complaint (ECF No. 1), in which it asserted claims arising from Taylor's resignation from Fidelity and her violation of her employment agreement by her misuse of Fidelity's trade secret information and improper solicitation of Fidelity's clients.[4]  Through documents produced in the litigation and the limited expedited discovery permitted by the Court, Fidelity became aware that Fairhaven was complicit with, aided

---

[4] Financial Industry Regulatory Authority ("FINRA") Rule 13200 requires Fidelity and Taylor to arbitrate most disputes in FINRA Dispute Resolution.  However, pursuant to FINRA Rule 13804, a party may seek injunctive relief in court before proceeding in FINRA arbitration on the merits of the dispute.  Pursuant to the FINRA Rules, Fidelity sought injunctive relief against Taylor in this Court action, based on its claims that she solicited clients in breach of her contractual obligations and that she misappropriated trade secrets.  Fidelity then withdrew its request for injunctive relief because it became moot with the passage of time.  The merits of Fidelity's claims against Taylor are being decided in a pending FINRA arbitration action.

and facilitated Taylor's breach of her contract and misappropriation and misuse of Fidelity's trade secret customer information, and even had its own employees solicit and divert Fidelity's customers. Fidelity then sought and was granted leave of court to file an Amended Complaint, adding Fairhaven as a party and asserting claims against Fairhaven for tortious interference, misappropriation of trade secrets, unfair competition, unjust enrichment, and civil conspiracy. *See* ECF No. 61.

On November 18, 2020, Fairhaven filed its Counterclaim, Answer and Affirmative Defenses to Plaintiff's Amended Complaint ("Answer") (ECF No. 72).[5] In its Answer, Fairhaven includes a series of meritless accusations and claims against Fidelity that do not even relate to Fairhaven and about which it would have no knowledge. Fairhaven's Answer includes an almost verbatim repetition of the same factual allegations asserted by Taylor in her Answer to Fidelity's Amended Complaint (ECF No. 71) regarding Fidelity's alleged discriminatory treatment of Taylor based on her age and sex, and Fidelity's alleged retaliation against Taylor for her decision to file a charge with the Equal Employment Opportunity Commission. Fairhaven also asserts counterclaims for Tortious Interference/Unfair Competition (Count I); Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2) (Count II); Uniform Deceptive Trade Practices Act (815 ILCS 510/2) (Count III); Breach of Contract (Count IV); Breach of Fiduciary Duty (Count V); and Unjust Enrichment (Count VI). Many of the allegations in support of these purported counterclaims are simply repackaged from Taylor's separately asserted, and baseless, claims against Fidelity – which have nothing to do with Fairhaven and for which it has no standing.

Fidelity filed its Motion to Dismiss the Counterclaims of Fairhaven on December 9, 2020.

---

[5] On March 23, 2022, Fidelity was granted leave to file a Second Amended Complaint but Fairhaven was not required to re-assert or re-plead its counterclaims in its Answer to the Second Amended Complaint. *See* ECF No. 116.

*See* ECF No. 76. On March 22, 2022, Fidelity filed its Motion for Stay Pending Arbitration. *See* ECF No. 114. In its Memorandum and Opinion on Fidelity's Motion for Stay Pending Arbitration, the Court denied any further stay in favor of the pending arbitration but granted Fidelity leave to amend this motion. *See* ECF No. 125 at 16-17.

### III.   APPLICABLE LEGAL STANDARDS

#### A. Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May Be Granted

A counterclaim may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a counterclaim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 613 (N.D. Ill. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaimant does not need "detailed factual allegations," but must plead more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, a counterclaimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The counterclaim "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 668 (7th Cir. 2008) (emphasis in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil

4

Procedure 8 and 12(b)(6). *Id.*; *Iqbal*, 556 U.S.at 678.

### B. Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Standing

"The Supreme Court has characterized the doctrine of standing as an essential and unchanging part of the case-or-controversy requirement of Article III of the Constitution." *Perry v. Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (citation and quotation marks omitted). Fairhaven, as the party seeking to invoke this Court's jurisdiction over its counterclaims, has "the burden of establishing the elements of standing." *Id.; see also Mullen v. GLV, Inc.*, 488 F.Supp.3d 695, 703 (N.D. Ill 2020), *aff'd* 37 F.4th 1326 (7th Cir. 2022) (citing *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("A plaintiff bears the burden of showing that she has standing for each form of relief sought.")).

To meet this burden, Fairhaven must show that (1) it – and not some other party – has suffered an "injury-in-fact" that (2) is fairly traceable to the challenged conduct of Fidelity, and that (3) will likely be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To qualify as imminent, an alleged future injury must be "*certainly impending*", "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); italics and brackets in *Clapper*); *accord Black Bear Sports Grp., Inc. v. Amateur Hockey Ass'n of Illinois, Inc.*, No. 18 C 8364, 2019 WL 2060934, at *4 (N.D. Ill. May 9, 2019), *aff'd as modified*, 962 F.3d 968 (7th Cir. 2020).

When ruling on a motion to dismiss for lack of standing, this Court "must accept as true

5

all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). But "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44 (1976). *Warth* and *Eastern Kentucky* thus draw a distinction between "allegations of fact, either historical or otherwise demonstrable," and "allegations that are really predictions." *United Transportation Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989). "When considering any chain of allegations for standing purposes," a court credits factual links in the chain, but it "may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions—those types of allegations that are not normally susceptible of labeling as 'true' or 'false.'" *Id.*; *accord, e.g.*, *Alger v. Chicago*, 753 F. Supp. 228, 232 (N.D. Ill. 1990).

## IV. ARGUMENT

### A. Fairhaven's Breach of Contract Claim Must Be Dismissed.

Fairhaven's breach of contract counterclaim alleges that Fidelity breached a so-called "Custody Agreement," though it does not point to any specific contractual provision that Fidelity allegedly breached. Instead, Fairhaven vaguely claims that Fidelity breached its duty of good faith and fair dealing by terminating its business relationship with Fairhaven in bad faith, in an effort to "further retaliate against Ms. Taylor" and "improperly coerce Ms. Taylor to voluntarily enter into a stipulated injunction." *See* ECF No. 72, ¶ 179-181. This claim fails as a matter of law for several reasons.

First, Fidelity is not aware of any "Custody Agreement." Rather, the only contractual agreement governing the relationship between Fairhaven and Fidelity is the Agreement (Ex. **A**).

6

Fairhaven conspicuously fails to mention the Agreement in Count IV, let alone identify any particular provision of the Agreement that Fidelity allegedly breached. This failure was clearly intentional, because the express terms of the Agreement undermine Fairhaven's breach of contract claim in its entirety: pursuant to Paragraph 18 of the Agreement, Fidelity could terminate its relationship with Fairhaven at any time and for any reason:

> [W]e understand that Fidelity may terminate the provision of brokerage services at **anytime**.[6]

In other words, Fidelity had the right to terminate its relationship with Fairhaven at will. It was entitled to terminate for any reason at all, or for no reason at all. *See Alderman Drugs, Inc. v. Metro. Life Ins. Co.*, 161 Ill. App. 3d 783, 790, 515 N.E.2d 689, 694 (1987) ("Terminable at will contracts…are generally held to permit termination for any reason, good cause or not, or no cause at all."). There was no requirement stating that Fairhaven could only be terminated for good cause, and there was no restrictive list of permissible grounds for termination. Fidelity had the right to terminate at any time and for any reason, and therefore the reason for its termination decision is legally irrelevant. Even assuming Fairhaven's allegations are true (and they are not[7]), alleging an improper reason for Fidelity's termination decision cannot be the basis for a breach of contract claim, because there is no such thing as an improper reason for termination under the terms of the Agreement.

Second, Fairhaven cannot assert the implied duty of good faith and fair dealing to modify

---

[6] Ex. **A**, ¶ 18 (emphasis supplied).
[7] While not directly pertinent to this motion, Fairhaven's allegations in this regard are disingenuous when considered in the context that Fidelity only decided to terminate the relationship because Fairhaven refused for months to cooperate during expedited discovery in Fidelity's claims against Taylor and because discovery eventually made clear that Fairhaven was complicit with and integrally involved in Taylor's illegal activities. Thus, although the Agreement did not require good cause for terminating the relationship (or any reason at all), Fidelity had a compelling justification for its decision to terminate.

7

express terms of that contract. *See Northern Trust Co. v. VIII South Michigan Associates*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995) (parties to a contract are entitled to enforce the terms of the contract to the letter and the implied covenant of good faith and fair dealing cannot overrule or modify the express terms of a contract). As the Appellate Court of Illinois has repeatedly declared, "the duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will." *Jespersen v. Minnesota Min. & Mfg. Co.*, 288 Ill. App. 3d 889, 895, 681 N.E.2d 67, 71 (1997), *aff'd*, 183 Ill. 2d 290, 700 N.E.2d 1014 (1998); *see also Mid-W. Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 915 (2004). This is the exact right that Fidelity exercised when it chose to terminate the Agreement.

Third, even if Fairhaven could state a breach of contract claim by alleging bad faith termination (which it cannot), Fairhaven has alleged no facts demonstrating that Fidelity's decision to terminate the Agreement was actually made in bad faith. For instance, Fairhaven alleges that Fidelity terminated its contract to "improperly coerce Ms. Taylor to voluntarily enter into a stipulated injunction." *See* ECF No. 72, ¶ 179. But there is nothing improper or coercive about asking Taylor to enter into a stipulated injunction in the context of a dispute regarding Taylor's misappropriation of trade secret information and solicitation of Fidelity's customers. Nor is there anything improper about Fidelity making a business decision to discontinue its relationship with Fairhaven in light of this dispute — a decision that came after several months of efforts to resolve concerns regarding Fairhaven's complicity and participation in Taylor's solicitation of Fidelity customers, and Defendants' refusal to merely agree to stop soliciting Fidelity's clients and to return its confidential customer information, which is all that Fidelity asked. Fairhaven may disagree

8

with this decision, but it fails to allege facts showing that it was made in "bad faith."[8]

For all these reasons, Fairhaven has failed to sufficiently allege any breach by Fidelity and its counterclaim for breach of contract (Count IV) should be dismissed under Rule 12(b)(6).

### B. Fidelity Owed No Fiduciary Duty to Fairhaven.

Fairhaven's counterclaim for breach of fiduciary duty (Count V) must also fail because Fidelity never owed Fairhaven a fiduciary duty. To state a claim for breach of fiduciary duty, it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains. *See Neade v. Portes*, 739 N.E.2d 496, 502–03 (2000). A fiduciary relationship can arise either as a matter of law or as a matter of fact. *See Khan v. BDO Seidman, LLP,* 948 N.E.2d 132, 156 (2011). The existence of a fiduciary relationship is never presumed; rather, facts that constitute the existence of such a relationship must be clearly and explicitly alleged. *See Estate of Bontkowski,* 785 N.E.2d 126, 132 (2003).

Fairhaven does not allege that Fidelity is its fiduciary as a matter of law—a relationship reserved for (among others) trustees, lawyers, administrators, and agents. *See, e.g.*, *Hawkins v. Voss*, 29 N.E.3d 1233, 1238 (Ill. Ap. Ct. 2015). Instead, Fairhaven alleges that "Fairhaven has entrusted its clients' accounts—and thus, significant amounts of information concerning its clients—with Fidelity. Because Fairhaven placed its trust and confidence in Fidelity with respect to its client accounts and information, Fidelity owes fiduciary duties to Fairhaven." ECF No. 72, ¶ 184.

A fiduciary relationship as a matter of fact exists if "one party reposes special trust and confidence in another[,] who accepts that trust and confidence and thereby gains superiority and

---

[8] In fact, in a demonstration of good faith, Fidelity gave Fairhaven 60 days to transition its clients to a new custodian even though Fidelity could terminate at any time under the Agreement.

9

influence over the subservient party." *Tummelson v. White*, 47 N.E.3d 579, 583 (Ill. Appt. Ct. 2015) (internal quotation marks omitted). But trust and confidence alone are not enough to create a fiduciary relationship; rather, *superiority and influence* must *result* from the trust and confidence. *Id.* "[S]ignificant dominance and superiority [are] necessary to establish a fiduciary relationship." *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n,* 907 N.E.2d 903 (2009) (internal quotation marks omitted). "Dominance," in this context, means "the ability to exercise undue influence." *Tummelson* 47 N.E.3d at 583 (citing *Beach v. Wilton,* 244 Ill. 413, 423, 91 N.E. 492 (1910)) (internal quotation marks omitted).

Here, Fairhaven fails to allege that superiority, influence, or dominance on the part of Fidelity. Indeed, Fairhaven cannot make these allegations in good faith because no such relationship existed. Rather, as evidenced by the terms of their Agreement, Fairhaven and Fidelity were simply parties to an arm's length, mutually-beneficial business relationship—nothing more. As a result, Fairhaven has not and cannot plead the existence of a fiduciary relationship, and Fairhaven's counterclaim must fail as a matter of law.

### C. All of Fairhaven's Claims Fail for Lack of Standing

In order to establish Article III standing, Fairhaven must show an injury in fact that is fairly traceable to Fidelity's conduct and that is likely to be redressed by a favorable judicial decision. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 995 (N.D. Ill. 2017). Injury is the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547.

Fairhaven is simply unable to meet this standard because the allegations are completely insufficient to support a finding that it suffered any injury-in-fact. Fairhaven's allegations are nothing more than pure speculation and the vast majority of them are based on Taylor's alleged injuries — not injuries to Fairhaven.

10

### 1. Fairhaven's speculation that more of Taylor's clients at Fidelity would have transferred to Fairhaven is insufficient to establish an injury-in-fact.

Fairhaven's Counterclaim Counts I-III are entirely speculative and cannot establish an injury-in-fact. Simply put, these claims are based on the unsupported position that Fairhaven *might have* lost business from clients who allegedly did not or could not contact Taylor as a result of Fidelity's actions. *See* ECF No. 72, ¶¶ 121, 130, 155 and 167. Yet, there is no basis for this. Fairhaven cannot substantiate any claim here and even its own allegations show how purely speculative these claims are:

- "*It would be wrong* for Fidelity to use the client accounts and client information that Fairhaven entrusted to Fidelity in order to solicit clients..."[9]

- "*Were Fidelity to follow through on that threat* and attempt to solicit Fairhaven's clients, *it would* constitute tortious interference…"[10]

- "*If* any solicited clients left Fairhaven, that *would injure* Fairhaven."[11]

In support of its claimed damages, Fairhaven asserts only a vague and general allegation that it expected more of Taylor's clients to transfer their accounts to Fairhaven because "[w]hen RIAs hire financial advisors, it is expected that a certain percentage of the new hire's former client base will follow the advisor from firm to firm" (ECF No. 72, ¶ 119), but Fairhaven provides no concrete or particularized facts to support its claim that it had a "reasonable expectancy of entering into a valid business relationship" with any of these clients. *Simons v. Ditto Trade, Inc.*, 63 F. Supp. 3d 874 (N.D. Ill. 2014).

Indeed, Fairhaven *cannot* plead any particularized facts to support its claim that it has or had any reasonable expectation that any of Taylor's former clients would transfer their accounts

---

[9] *See* ECF No. 72, ¶ 141 (emphasis supplied).
[10] *See* ECF No. 72, ¶ 142 (emphasis supplied).
[11] *Id.*

to Fairhaven because each of the clients potentially at issue was already a *Fidelity* client, not a client of Taylor's. The clients entered into client agreements with Fidelity, not with Taylor, and they paid fees to Fidelity, not to Taylor. Moreover, Taylor was contractually prohibited from soliciting Fidelity clients to transfer their business to Fairhaven. Even assuming *arguendo* that Taylor could establish the existence of an economic relationship between her and the Fidelity clients that she serviced (which she cannot), it would be Taylor, and not Fairhaven, who would have standing to assert the claim.

Illinois courts require more than a "hope" or "opportunity" for future business—a plaintiff must provide specific facts to substantiate a reasonable expectation. *Kiebala v. Boris*, 2017 WL 4339947, at *4 (N.D. Ill. Sept. 29, 2017) (granting motion to dismiss because the plaintiff had not demonstrated an expectation of success in obtaining business opportunities despite describing the specific opportunity). Fairhaven cannot provide specific facts to demonstrate why it had a reasonable expectation that *any* of Fidelity's clients would transfer to Fairhaven, but did not because of alleged actions by Fidelity.

Without any concrete and particularized factual support, Fairhaven's alleged damages for its tortious interference, ICFA, and UDTPA counterclaims (Counts I-III) are too speculative and conclusory to establish an injury-in-fact. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Accordingly, Fairhaven lacks Article III standing to pursue its Counterclaim Counts I-III and these counterclaims should therefore be dismissed with prejudice.

### 2. Fairhaven's alleged damages for its claims of breach of fiduciary duty and unjust enrichment also fail to meet Article III requirements.

The breach of fiduciary duty (Count V) and unjust enrichment (Count VI) should also be dismissed because Fairhaven's claimed damages are inherently speculative and unsupported, and because they are based on allegations that are nothing more than hypothetical predictions.

Fairhaven claims that Fidelity's decision to terminate its business relationship with Fairhaven *might* lead to Fidelity soliciting Fairhaven's clients, *might* lead to reputational harm for Fairhaven, and *might* lead to an unknown number of Fairhaven's clients transferring their accounts to Fidelity or other RIAs. *See, e.g.*, ECF No. 72, ¶¶ 191, 194. Fairhaven further alleges that "[w]ere any of Fairhaven's clients to transfer their accounts to advisors at Fidelity, Fidelity's retention of any benefits from those clients would violate the fundamental principle of justice, equity, and good conscience." ECF No. 72, ¶ 195.

Fairhaven has not substantiated these hypothetical claimed damages because it has no evidence that any of its clients have transferred or plan to transfer their accounts as a result of any actions taken by Fidelity. The chain of allegations that would have to come to fruition for Fairhaven to establish any concrete damages for these claims is far too speculative and unsubstantiated to constitute an injury-in-fact, especially when the links in Fairhaven's chain are predictions of future events to be taken by third parties. In fact, even the complained of conduct is speculative because Fairhaven itself acknowledges it would only have potential damages "if" Fidelity solicited its clients, which it has not even alleged happened. Fairhaven has not alleged any facts to show that any Fairhaven clients have transferred their accounts to advisors at Fidelity or that Fairhaven has suffered any reputational harm due to Fidelity. Fairhaven even agreed that following the termination of its relationship with Fidelity, a client could transfer to Fidelity:

> In the event of termination, [Fairhaven] acknowledge[s] that Fidelity, in the event the Client does not otherwise transfer the account, may transfer [Fairhaven's] Client accounts to Fidelity's retail brokerage unit subject to its acceptance and approval of [Fairhaven's] Client accounts.[12]

Fairhaven is simply conjecturing about a risk of future damages that cannot be described as imminent.

---

[12] Ex. **A**, ¶ 18.

### 3. Fairhaven Also Lacks Standing to Pursue Its Counterclaim Counts I-III Because They Are Based On Taylor's Rights and Alleged Injuries.

Along with the constitutional prerequisites discussed above, the United States Supreme Court has adopted several "prudential restraints" on standing. Among these court-fashioned limitations is that a party must assert its own rights, rather than resting on the rights of others. *Warth*, 422 U.S. at 499. Therefore, assuming *arguendo* that Fairhaven has satisfied the constitutional elements of standing (which it has not), Fairhaven must nevertheless overcome the hurdle that prohibits a plaintiff from basing a claim on the rights of others. *See Warth*, 422 U.S. at 499. This axiom is codified by Federal Rule of Civil Procedure 17(a), which requires that all federal actions must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a).

In addition, most of Fairhaven's alleged damages are actually based on injuries and claims that belong to Taylor. For example, Fairhaven repeatedly bases its claims and damages on allegations that: (1) Fidelity is retaliating against Taylor (*See, e.g.*, ECF No. 72, ¶¶ 13, 59, 74-75, 118, 127, 144, 179, 193); (2) Fidelity is straining Taylor's relationship with her new employer and causing emotional distress to Taylor (ECF No. 72, ¶¶ 75, 110, 125, 127); and (3) Fidelity harmed Taylor's reputation in the industry (ECF No. 72, ¶¶ 5, 74, 99, 111, 129, 155, 164). These allegations, if true, would have harmed Taylor and not Fairhaven. Fairhaven cannot seek redress for Taylor's purported injuries, nor can Fairhaven base its own claims for damages on Taylor's rights. In short, Fairhaven lacks standing and this Court should accordingly dismiss Fairhaven's Counterclaims Counts I-III for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### D. Fairhaven's Unjust Enrichment Claim Also Fails Because It Is Based On Fairhaven's Other Failed Claims.

Unjust enrichment is not a separate cause of action. *See Mullen*, 488 F.Supp.3d at 713. Therefore, Fairhaven's claim must be dismissed for this reason alone.

Rather, unjust enrichment is a condition brought about by fraud or other unlawful conduct, including violations of the ICFA. *Mullen*, 488 F.Supp.3d at 713 (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739-40 (7th Cir. 2019)). This means that, in this case, this request for relief is "tied to the fate" of the claims based on fraud. *See Vanzant*, 934 F.3d at 740. Because the other claims are deficient, the unjust enrichment claim also fails. *Cleary v. Phillips Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) (recognizing that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Accordingly, Count VI should also be dismissed.

### V.   CONCLUSION

Wherefore, Fidelity Brokerage Services LLC respectfully requests that the Court enter an order dismissing each count of Fairhaven's Counterclaims with prejudice.

Dated: August 12, 2022

Respectfully submitted,

FISHER & PHILLIPS LLP

/s/ *Susan M. Guerette*
Susan M. Guerette (admitted *pro hac vice*)
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
TEL: (610) 230-2133
FAX: (610) 230-2151
sguerette@fisherphillips.com

Joel W. Rice
Franklin Z. Wolf
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
TEL: (312) 346-8061
FAX: (312) 346-3179
jrice@fisherphillips.com
fwolf@fisherphillips.com
*Attorneys for Plaintiff*

15

CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of August, 2022, the foregoing document was filed via the Court's electronic filing system, which sent notice to the following:

Christopher Griesmeyer
Zachary Mulcrone
Greiman, Rome & Griesmeyer, LLC
Two N. LaSalle, Suite 1601
Chicago, Illinois 60602

COUNSEL FOR DEFENDANTS

*/s/ Susan M. Guerette*
Attorney for Plaintiff